# SUPPLEMENTAL PLAINTIFFS' EXHIBIT 4

# Federal Election Commission Advisory Opinion Number 2003-3

Back to Federal Election Commission Advisory Opinions Search Page

Federal Election Commission Main Page

April 29, 2003

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

ADVISORY OPINION 2003-3

Mr. Jan Witold Baran
Wiley, Rein & Fielding, LLP
1776 K Street, N.W.
Washington, D.C. 20006

Dear Mr. Baran:
This responds to your letter of March 7, 2003, requesting an advisory opinion on behalf of State Senator Bill Boling, State Delegate Bill Janis, Chesterfield County School Board Member Beth Davis, and Eric Cantor, a Member of the United States House of Representatives (collectively, "Requestors"). Your request focuses on the application of the Federal Election Campaign Act of 1971, as amended ("the Act"), to fundraising that Representative Cantor wishes to undertake on behalf of the other requestors in State elections in Virginia.
Background
While there are no Federal candidates to be elected this year (i.e., 2003) in Virginia, there will be hundreds of State and local candidates on the ballot. You report that there is a long and established history of Federal candidates and officeholders being politically involved in these races.
State Senator Boling, Delegate Janis, and Board Member Davis would like, as in past campaigns, the participation and support of Republican Federal candidates and officeholders including Representative Cantor. Specifically, they would like Representative Cantor to: (1) attend campaign events, including fundraisers, (2) solicit financial support, and (3) do so orally or in writing. Congressman Cantor would like to participate in their campaigns in this manner. Requestors ask for guidance from the Commission about the degree to which Representative Cantor, as a Federal officeholder and candidate, may engage

in State and local election activities.

Questions presented

You ask the following general question: Given that Virginia law permits donations to State and local candidates without amount limitation and from sources that are prohibited from contributing to Federal candidates, to what extent may Representative Cantor, a Federal candidate and officeholder, raise funds on behalf of the other Requestors who are State and local candidates? You also ask the following, more specific questions about fundraising:

1. a. May Representative Cantor solicit or direct donations to the other Requestors either orally or in writing, provided he does so within the Federal contribution limits and source restrictions?

b. Are general solicitations of funds that do not request specific amounts permissible?

c. Are oral or written limitations in conjunction with the solicitation appropriate, and if so, what should they say?

2. Will Representative Cantor have violated the Act if, in response to a lawful solicitation by him, a State or local candidate receives a donation in excess of the Federal amount limitations or from a Federally prohibited source?

3. a. May Representative Cantor attend a fundraising event sponsored by one or more of the other Requestors at which funds in excess of the Federal amount or source restrictions are raised?

b. If no, how can the fundraising event be structured to allow him to attend?

c. If yes, may his attendance at the fundraising event be publicized?

d. If yes, may he participate in the fundraising event as a featured guest or speaker, provided that he does not solicit or direct funds in excess of the Federal amount or source limitations?

4. May Representative Cantor attend a fundraising or campaign event for one or more of the other Requestors if the event is paid for with funds lawful under Virginia law but in excess of the Federal amount or source restrictions?

5. May Representative Cantor's name appear on written fundraising solicitations that are not signed by him, for example, on a solicitation stating that he is an "honorary chairperson" of one of the other requestor's campaign committee, or that he is a member of the "host committee" of one of the other requestor's fundraising event that he will not attend?

6. May Representative Cantor ask individuals who are not Federal candidates or officeholders to raise money on behalf of one or more of the other Requestors as candidates for State or local office?

Analysis and conclusions

On November 6, 2002, the Bipartisan Campaign Reform Act

of 2002 (Pub. L. 107-155 (Mar. 27, 2002)) (BCRA) took effect. As amended by BCRA, the Act regulates the conduct of Federal candidates1 and officeholders2, their agents,3 and entities directly or indirectly established, financed, maintained, or controlled by them (collectively, "covered persons")4 when they raise or spend "funds in connection with any election other than an election for Federal office." 2 U.S.C. 441i(e) (emphasis added). Specifically, section 441i(e)(1) provides,

(e) Federal candidates.

(1) In general.

A candidate, individual holding Federal office, agent of a candidate or an individual holding Federal office, or an entity directly or indirectly established, financed, maintained or controlled by or acting on behalf of 1 or more candidates or individuals holding Federal office, shall not--

(A) solicit, receive, direct, transfer, or spend funds in connection with an election for Federal office, including funds for any Federal election activity, unless the funds are subject to the limitations, prohibitions, and reporting requirements of this Act; or

(B) solicit, receive, direct, transfer, or spend funds in connection with any election other than an election for Federal office or disburse funds in connection with such an election unless the funds--

(i) are not in excess of the amounts permitted with respect to contributions to candidates and political committees under paragraphs (1), (2), and (3) of section315(a) (2 U.S.C. 441a(a)); and

(ii) are not from sources prohibited by this Act from making contributions in connection with an election for Federal office.[5]

The Commission's regulations at 11 CFR 300.62, which took effect on November 6, 2002, implement this statutory provision. Section 300.62 provides that covered persons "may solicit, receive, direct, transfer, spend, or disburse funds in connection with any non-Federal election, only in amounts and from sources that are consistent with State law, and that do not exceed the Act's contribution limits or come from prohibited sources under the Act." 6

Although the Act, as amended by BCRA, does not define the terms, the Commission's regulations define the terms "to solicit" and "to direct." 11 CFR 300.2(m) and (n). To solicit "means to ask that another person make a contribution, donation, transfer of funds, or otherwise

provide anything of value," whether done so directly or through a conduit or intermediary. 11 CFR 300.2(m) (emphasis added). A solicitation does not include "merely providing information or guidance as to the requirement of particular law." Id. To direct "means to ask a person who has expressed an intent to make a contribution, donation, or transfer of funds, or to provide anything of value, to make that contribution, donation, or transfer of funds, or to provide that thing of value . . . ." 11 CFR 300.2(n) (emphasis added). As with the definition of "to solicit," "to direct" does not include merely providing guidance or information about the law. Id.

By defining "to solicit" and "to direct" as "to ask," the regulations establish that a Federal candidate will not be held liable for soliciting funds in violation of section 441i(e) or section 300.62 of the regulations merely by virtue of attending or participating in any manner in connection with a fundraising event at which non-Federal funds are raised. Nor will a Federal candidate or officeholder be held liable based on private conversations that would require an examination to infer the Federal candidate's or officeholder's intent. "The Commission was concerned that imputing intent when a private conversation is not clear on its face could lead to finding a violation when the candidate involved had no intention of soliciting contributions. Such a result is not dictated by BCRA's statutory language and would raise constitutional concerns." "Prohibited and Excessive Contributions: Non-Federal Funds or Soft Money; Final Rule," 67 Fed. Reg. 49064, 49086-87 (July 29, 2002). To be liable, the Federal candidate must "ask" for non-Federal funds. Id., see also, "Prohibited and Excessive Contributions: Non-Federal Funds or Soft Money; Proposed Rule," 67 Fed. Reg. 35654, 35660, 35681 (May 20, 2002). Thus, the scope of a covered person's potential liability under section 441i(e)(1) and section 300.62 must be determined by his or her own speech and actions in asking for funds or those of his or her agents,[7] but not by the speech or actions of another person outside his or her control.

The Commission is also mindful of relevant constitutional principles. Restrictions on core political speech by covered persons must be narrowly tailored to serve a substantial governmental interest. Buckley v. Valeo, 424 U.S. 1, 25 (1976). Here, the substantial governmental interest is to prevent opportunities for actual and apparent corruption that arise when Federal candidates and officeholders risk incurring political debts by soliciting large monetary contributions and funds from prohibited sources. Congress has made the judgment that this interest is served by banning the solicitation of funds in excess of the Federal contribution limits and from

sources prohibited from contributing under the Act. 2 U.S.C. 441i(e)(1).8 The Commission notes, however, that section 441i(e) does not forbid a covered person from making any solicitation of funds in connection with a non-Federal election. The Commission understands section 441i(e) to provide that a covered person may make solicitations, but may not solicit funds that are outside the amount limitations and source prohibitions of the Act.

1. a. May Representative Cantor, a Federal candidate or officeholder, solicit or direct donations to the other Requestors, as State or local candidates, either orally or in writing, provided he does so within the Federal contribution limits and source restrictions?
Yes. Representative Cantor may ask for funds in connection with a State election or direct funds in connection with such an election as long as he does not ask for funds that are in excess of the amounts permitted with respect to contributions to candidates under 2 U.S.C. 441a(a), or that are from sources prohibited by the Act from making contributions in connection with an election for Federal office. 2 U.S.C. 441i(e)(1). Specifically, such Federally permissible funds include contributions by individuals and non-multicandidate committees to candidates of up to $2,000 per election, by multicandidate committees of up to $5,000 per election, and by national, state, and local party committees of up to $5,000 per election.
1. b. Are "general solicitations" of funds that do not request specific amounts permissible?
Yes, provided that written notices are clearly and conspicuously displayed9 at state candidate fundraising events at which Federally impermissible funds are raised indicating that the covered person is only soliciting federally permissible funds.10 If written notices are provided the covered person may legally make general requests for financial support at state candidate fundraising events without any oral disclaimer that only Federal permissible funds are being requested. Alternatively, if written notices are not provided at the event, the covered official may make the following public oral disclaimer: "I am only asking for up to $2,000 from individuals and I am not asking for corporate, labor or minors' funds." If such a public oral disclaimer is made at the event it only need be made once, and is not required to be made during a covered person's one-on-one discussions with donors or other people at the event. This should not, however, be construed to permit a covered person to inoculate a solicitation of non-Federal funds by reciting a rote limitation, but then encouraging the potential donor to disregard the limitation.
1. c. Are oral or written limitations on the

solicitation appropriate, and if so, what should they say? Yes. As a general matter, a covered person asking for funds in connection with a non-Federal election in a State that permits donations that would not be lawful if in connection with a Federal election must expressly qualify or limit his or her request so that it is clear that he or she is asking only for funds that comply with the Act's amount limitations and source prohibitions. 2 U.S.C. 441i(e)(1)(B); 11 CFR 300.62. The Commission would find the following language to be an adequate disclaimer: I am asking for a donation of up to $2000 per election from an individual's own funds [or up to $5,000 per election from a multi-candidate political committee or a political party committee]. I am not asking for funds from corporations, labor organizations or minors. When it is clear from the presence of adequate disclaimers that a covered person is not soliciting funds in violation of the Act, it is not necessary for a disclaimer to be repeated at every point in a written solicitation at which a general request for funds is made or orally in the course of every individual conversation at a fundraising event. This should not, however, be construed to permit a covered person to inoculate a solicitation of non-Federal funds by reciting a rote limitation, but then encouraging the potential donor to disregard the limitation.

2. Will Representative Cantor, a Federal candidate or officeholder, violate the Act if, in response to a lawful solicitation by him, a State or local candidate receives a donation in excess of the Federal amount limitations or from a Federally prohibited source?
No. If Representative Cantor by his own speech and conduct complies with the law, he will not have violated the Act if, in response to a lawful solicitation, a person who is not his agent acting on his behalf or an entity directly or indirectly established, financed, maintained, or controlled by him, makes a donation to a non-Federal candidate in excess of the Federal amount limitations or from a Federally prohibited source.

3. a. May Representative Cantor attend a fundraising event sponsored by one or more of the other Requestors, as State or local candidates, at which funds that do not comply with the Federal amount or source restrictions are raised?
Yes, mere attendance at a fundraiser where non-Federal funds are raised cannot in and of itself give rise to a violation of section 441i(e)(4) or section 300.62. A covered person may participate in any activities at such a fundraising event provided the covered person does not solicit funds outside the Act's limitations and prohibitions.

3. b. If no, how can the fundraising event be

structured to allow him to attend?

This question is moot, given the answer to question 3.a., above.

3. c. If yes, may his attendance at the event be publicized and may he participate in the event as a featured guest?

Section 441i(e)(1) and section 300.62 do not apply to publicity for an event where that publicity does not constitute a solicitation or direction of non-Federal funds by a covered person, nor to a Federal candidate or officeholder merely because he or she is a featured guest at a non-Federal fundraiser.

In the case of publicity, the analysis is two-fold: First, whether the publicity for the event constitutes a solicitation for donations in amounts exceeding the Act's limitations or from sources prohibited from contributing under the Act; and, second, whether the covered person approved, authorized, or agreed or consented to be featured or named in, the publicity. If the covered person has approved, authorized, or agreed or consented to the use of his or her name or likeness in publicity, and that publicity contains a solicitation for donations, there must be an express statement in that publicity to limit the solicitation to funds that comply with the amount limitations and source prohibitions of the Act. 2 U.S.C. 441i(e)(1)(B); 11 CFR 300.62.

3. d. If yes, may he participate in the event by speaking, provided that he does not solicit or direct funds not in compliance with the Federal amount or source limitations?

Yes, Representative Cantor may speak at such an event, provided that by his own speech and conduct he complies with section 441i(e)(1)(B) and section 300.62 in the course of his participation in a fundraiser. The answers to questions 1.a., 1.b., 1.c., and 2. also apply in answer to this question.11

4. May Representative Cantor attend a fundraising or campaign event for one or more of the other Requestors, as State or local candidates, if the event is paid for with funds lawful under Virginia law but not in compliance with the Federal amount or source restrictions?

Yes. The reasons underlying the answer to question 3.a., above, apply here as well. The fact that a fundraiser is paid for with funds lawful under Virginia law but not in compliance with the Federal amount restrictions or source prohibitions does not, in and of itself, place Representative Cantor in violation of section 441i(e)(1) or section 300.62 if he attends the fundraising or campaign event.

5. May Representative Cantor's name, as a Federal candidate or officeholder, appear on written fundraising

solicitations that are not signed by him, for example, on a solicitation stating that he is an "honorary chairperson" of a State candidate's campaign committee, or that he is a member of the "host committee" of a State candidate's fundraising event that he will not attend?

Yes, within the limits of section 441i(e)(1) and section 300.62. As explained above, Representative Cantor may ask for funds in connection with a non-Federal election or direct funds in connection with such an election as long as he does not ask for, or spend or direct, funds that are in excess of the amounts permitted with respect to contributions to candidates under 2 U.S.C. 441a(a), or are from sources prohibited by the Act from making contributions in connection with an election for Federal office. 2 U.S.C. 441i(e)(1). This is true with regard to written as well as verbal solicitations.

The Commission concludes that agreement to serve in a position specifically related to fundraising, such as serving on the "host committee" for a fundraising event would constitute a solicitation by a covered person.12 Any such solicitation must include an express statement to limit it to funds that comply with the amount limitations and source prohibitions of the Act. The Commission could not agree on whether the use of a covered person's name in a position not specifically related to fund raising, such as "honorary chairperson," on a solicitation not signed by the covered person, is prohibited under the Act.

6. May Representative Cantor, as a Federal candidate or officeholder, ask individuals who are not Federal candidates or officeholders to raise money on behalf of a candidate for State or local office?

Although your question does not so specify, the Commission interprets your question to ask whether Representative Cantor, as a covered person, may ask individuals who are not covered persons to raise funds in connection with a non-Federal election that would comply with State law, but that would be in excess of the Act's contribution amounts limits or from sources that would be prohibited from contributing under the Act.

In the context of this question, it is important to note that section 441i(e)(1) and section 300.62 expressly apply to an "agent" of a Federal candidate or officeholder. The Commission defined "agent" for the purpose of this analysis in 11 CFR 300.2(b), (b)(3) to mean any person who has actual authority (see footnote 7, above), either express or implied, to solicit, receive, direct, transfer, or spend funds in connection with any election on behalf of the Federal candidate or officeholder. Id. The Commission also made clear that a principal may only be held liable under BCRA for the actions of an agent when the agent is acting on

behalf of the principal. Explanation and Justification, 67 Fed. Reg. 49063, 49083 (July 29, 2002). "[I]t is not enough that there is some relationship or contact between the principal and agent; rather, the agent must be acting on behalf of the principal to create potential liability for the principal. This additional requirement ensures that liability will not attach due solely to the agency relationship, but only to the agent's performance of prohibited acts for the principal." Id.

The regulatory definition of an "agent" of a Federal candidate or officeholder explicitly applies in "any election." 11 CFR 300.2(b), (b)(3) (emphasis added). Thus, the plain language of the regulation expressly contemplates that an agent of a Federal candidate or officeholder may solicit funds on behalf of the Federal candidate or officeholder in an election other than one in which the Federal candidate or officeholder is himself or herself running. This interpretation is consistent with the most obvious legislative purpose behind the explicit scope of section 441i(e)(1): By explicitly extending the restrictions of section 441i(e)(1) to not just Federal candidates and officeholders but also to their agents acting on their behalf (and to entities directly and indirectly established, financed, maintained, or controlled by them), Congress intended to prevent a Federal candidate or officeholder from accomplishing through another person what he or she cannot do himself or herself under section 441i(e)(1).

Therefore, the Commission concludes that a covered person, such as Representative Cantor, may ask another individual to raise funds in connection with a non-Federal election, but when that individual is doing so as the agent of Representative Cantor, he or she must comply with the provisions of section 441i(e)(4) and section 300.62 requiring the raising of money in compliance with the amount limitations and source prohibitions of FECA. 11 CFR 300.2(b), (b)(3). Absent any other factors relevant to establishing an agency relationship, a request that a person raise funds in connection with a non-Federal election does not in and of itself create an agency relationship. The generalized nature of the question, however, does not allow the Commission to advise you as to whether specific persons Representative Cantor might wish to ask to raise funds have actual authority, express or implied, under the Regulations. This response constitutes an advisory opinion concerning the application of the Act and Commission regulations to the specific transaction or activity set forth in your request. See 2 U.S.C. 437f. The Commission emphasizes that, if there is a change in any of the facts or

assumptions presented, and such facts or assumptions are material to a conclusion presented in this opinion, then the requestor may not rely on that conclusion as support for its proposed activity.

Sincerely,

(signed)

Ellen L. Weintraub
Chair

CONCURRENCE IN ADVISORY OPINION 2003-03

Vice Chairman Smith, and Commissioners Mason and Toner

This Advisory Opinion presented the Commission with its first significant opportunity to apply the Bipartisan Campaign Reform Act's (BCRA) solicitation restrictions to specific fact situations. The Commission determined in this Opinion that under BCRA federal officeholders and candidates may attend state and local candidate fundraising events in which funds outside the federal limits are raised. The Commission also ruled that federal candidates and officeholders may speak and be featured guests at such events provided, if federally impermissible funds are raised, that appropriate disclaimers are given. The Commission also made clear that federal candidates and officeholders may legally participate in any and all event activities.

We strongly support these unanimous Commission rulings and believe that today's Opinion will go a long way toward clarifying what covered persons (such as federal officeholders and candidates) can and cannot do under BCRA. We write separately here to explain why we support the Commission's rulings, to identify a few issues on which there remains disagreement, and to outline the scope and application of the Opinion.13

As a start, we understand that the Commission must interpret the Act and its Regulations to comport with the constitutional liberties of affected individuals and groups. A solicitation ban, prohibiting speech on the basis of its content, burdens both speech and association freedoms at the core of the First Amendment, and must be narrowly tailored to serve a compelling state interest. Republican Party of Minnesota v. White, 122 S.Ct. 2528, 2534 (2002); Village of Schaumburg v. Citizens for a Better Environment, 100 S.Ct. 826, 833 (1980). That the covered persons at issue are

public officials is also important: "The role that elected officials play in our society makes it all the more imperative that they be allowed freely to express themselves on matters of current public importance." Republican Party of Minnesota, 122 S.Ct. at 2538 (quoting Wood v. Georgia, 370 U.S. 375, 395 (1962)).

Prohibitions on speech must also be clear. This Commission cannot set standards - exposing respondents to potential criminal sanctions - based upon a listener's perception, intuition or inference that a covered person's statements amount in some way to a solicitation. Liability cannot rest upon the "varied understanding" of members of an audience. "In these conditions it blankets with uncertainty whatever may be said. It compels the speaker to hedge and trim." Buckley v. Valeo, 424 U.S. 1, 43 (quoting Thomas v. Collins (1945) 323 U.S. 516, 535 (1945)).

The Commission correctly ruled in the Opinion that, under BCRA, covered persons may express their political support for a state or local candidate at state and local candidate fundraising events. For example, a federal officeholder under BCRA is free to declare "I hope you will re-elect Delegate Bill Janis this fall" or, "I hope we can count on your vote in November." Such political expressions of support are not solicitations and are in no way restricted by BCRA.

The Commission also correctly ruled that, under BCRA, covered persons are free to solicit federally permissible funds for state and local candidates. The Commission provided safe harbor disclaimer language for covered persons who intend to solicit only federally permissible funds. Solicitors are not required to use that language. However, if the safe harbor language is used, it will serve to insulate the covered person from liability.

The Requestors sought advice on whether general solicitations that mention no dollar amount would be lawful under BCRA. Our preferred view would be to presume that covered persons who make unqualified solicitations intend to comply with the law, while prohibiting overt solicitations of impermissible funds. Otherwise, we believed the Commission is essentially assuming that a solicitor who makes no mention of a specific amount meant to violate the solicitation restrictions. The Opinion as released instead requires that general solicitations contain disclaimers that recite the federal restrictions. For written solicitations that contain a "general pitch" (which, under Virginia law could be a solicitation for any amount from any source) a

disclaimer such as that provided in 1.c of the Opinion should be included.

The more difficult situation, both from the perspective of the solicitor and from our perspective as enforcers of this law, is an oral solicitation at an event. Here, a covered person such as Rep. Cantor, making general statements to elicit financial support, now shall only so speak if a disclaimer is provided informing attendees that he may only ask for donations that meet the amount and source limitations of federal law. The Commission has provided clear and concise language, and including this requirement satisfied our colleagues that BCRA's solicitation limits were being properly interpreted.

We observe that the disclaimer can be communicated in a variety of ways - for instance displayed at an event, offered on response devices, or announced by the federal official during his public comments. The disclaimer will be adequate using one of these methods - officeholders or event organizers need not do them all. For the speaker's part, one publicly announced disclaimer such as "I am only asking for up to $2,000 from individuals. I am not asking for corporate or labor funds, or funds from minors" is enough.

Written disclaimers at these events should be "clear and conspicuous," a concept that exists in another context in our regulations at 11 CFR 110.11(c)(1). That is, a disclaimer should not be difficult to read or hear, or its placement easily overlooked. We hasten to add, however, that the specific requirements of 110.11(c)(2)-(4) should not be understood to apply, and a failure to abide by these specific requirements will not by itself be deemed a violation of the Act. We also note that a rote recitation of a disclaimer shall not shield a covered person if that solicitor then encourages potential donors to disregard the limits.

Under the Commission's Opinion, a covered person, such as Rep. Cantor, may participate in other ways at state and local political events, including fundraisers. He may, for example, speak individually with attendees, he may have his photo taken with guests, and he may greet people in a reception line. The Commission will not require that general statements he makes during these private one-on-one encounters contain disclaimers. The general event-level disclaimer discussed in the previous paragraph will suffice.

One other difficult issue involves the use of a covered person's name by a state or local candidate, raised by the Requestor in question 5. We understand that covered persons

such as Rep. Cantor often show support for state and local candidates by, for instance, serving as an "Honorary Chair" of a campaign, appearing as an endorser on a list, or taking a publicity photo with the candidate for the campaign's use in its materials. Our preferred approach to these issues, and the one contained in the alternative draft we supported, would be to find that the use for subsequent solicitations of general letterhead that lists a covered person as, for instance, "Honorary Chair," would not impute the content of the solicitation to the covered person. We would rule the same as to the use of a covered person's brochure photo or a list of endorsers including his name in a solicitation. However, using a covered person's name on a specifically fundraising-related piece - such as an invitation host committee for a fundraising event - would require a disclaimer if the solicitation sought donations of impermissible funds.

In the final Opinion released by the Commission, the result is not so definitive. The Commission voted 6-0 that covered persons may be listed as an "Honorary Chair" on letterhead, so long as the letterhead is not used for solicitations of funds beyond those legal under federal law. It also concluded that if the covered person's name appeared in a specific fundraising context for an event that solicited impermissible funds, those materials would require a disclaimer. The Commission could not agree whether the covered person's name could appear on campaign letterhead as Honorary Chair when that letterhead is used for a solicitation, without the campaign also remembering to include the federal disclaimer.

We could not support imputing the solicitation to the covered person, merely because his name appears as one of many on general letterhead. We believe this creates such uncertainty for that person that they will be discouraged from publicly participating in state and local campaigns, or even in other kinds of groups. We also could not support a precedent that might imply that, merely by having a covered person as one of many people involved in an organization, the otherwise nonfederal election activities of that organization could be subject to federal limits and restrictions. This potential extension of the Commission's authority has implications in a number of other contexts. We could not agree to an interpretation of the law of such breadth, and it was not adopted. We hope the Commission will have the opportunity at a later date to revisit these issues and resolve them definitively.

Even so, we believe that this Opinion has provided critical practical guidance to federal officeholders and

candidates so that they can order their affairs without undue fear of liability under BCRA. We are pleased that the Commission was able to act unanimously on these important issues. As we are presented with additional requests asking the Commission to apply BCRA to new situations, we look forward to working productively with our colleagues to clarify the new law.

Dated: April 29, 2003

_____(signed)_____
_____(signed)_____
Bradley A. Smith, Vice Chairman Michael E. Toner, Commissioner

_____(signed)_____
David M. Mason, Commissioner

_____

1 2 U.S.C. 431(2).
2 Under 2 U.S.C. 431(3) and 11 CFR 100.3, "Federal office" means the office of President or Vice President, or of Senator or Representative in, or Delegate or Resident Commissioner to, the Congress."
3 11 CFR 300.2(b)(3).
4 11 CFR 300.60.
5 Paragraph (e)(1) of section 441i does not apply to the solicitation, receipt or spending of funds by a Federal candidate or officeholder who is also a candidate for State or local office if permitted by State law and if the solicitation refers only to a candidate for that State or local office. 2 U.S.C. 441i(e)(2).
6 Under the Act, the following persons may not contribute in connection with a Federal election: National banks, corporations, and labor organizations (2 U.S.C. 441b); Federal government contractors (2 U.S.C. 441c); foreign nationals (2 U.S.C. 441e); and minors, although a minor may contribute to a Federal PAC (2 U.S.C. 441k). It is unlawful for the following persons to contribute in connection with any election: National banks and corporations organized by authority of Congress (2 U.S.C. 441b); Federal government contractors (2 U.S.C. 441c); and foreign nationals (2 U.S.C. 441e).
7 In implementing BCRA, including section 441i(e)(2), the Commission defined "agent," as "any person who has actual authority, either express or implied," to act on behalf of a covered person. See 11 CFR 300.2(b). The Commission made clear that under BCRA, an agent "does not apply to individuals who do not have any actual authority to act on their [principal's] behalf, but only `apparent authority'" to do so. Explanation and Justification, 67 Fed. Reg.

49063, 49082 (July 29, 2002). The Commission also made clear that a principal may only be held liable under BCRA for the actions of an agent when the agent is acting on behalf of the principal. Id. at 49083. "[I]t is not enough that there is some relationship or contact between the principal and agent; rather, the agent must be acting on behalf of the principal to create potential liability for the principal. This additional requirement ensures that liability will not attach due solely to the agency relationship, but only to the agent's performance of prohibited acts for the principal." Id.

8 The Commission is also mindful of the principle that one person's free speech rights may not be measured or determined by another person's subjective understanding of what was said. Thomas v. Collins, 323 U.S. 516, 535 (1945).

9 See 11 CFR 110.11(c) for the Commission's interpretation of clear and conspicuous in related contexts.

10 Written solicitations which are not limited to Federally permissible amounts or which are directed to impermissible sources must include a written disclaimer. See 1.c., below.

11 It should be noted that BCRA contains a statutory exclusion from BCRA's fundraising prohibitions that permits Federal candidates and officeholders to attend, speak, and appear as featured guests at state and local party committee fundraising events in which funds are raised outside the amount limitations and source prohibitions of the Act. See Section 441i(e)(3). The Commission implemented this statutory exclusion at 11 CFR 300.64 and made clear that Federal candidates and officeholders may freely speak at state and local party committee fundraising events "without restriction or regulation" (id.), even if the funds raised at such events are outside of the Act's limits and prohibitions. The Commission also made clear that state and local party committees may "publicize featured appearances of Federal candidates and officeholders at these events, including [making] references to these individuals in invitations." "Prohibited and Excessive Contributions: Non-Federal Funds or Soft Money; Final Rule," 67 Fed. Reg. 49064, 49108 (July 29, 2002).

12 This is consistent with the Commission's explanation and justification (E&J) for 11 CFR 300.64. 67 Fed. Reg. 49064, 49108 (July 29, 2002). In the E&J for 11 CFR 300.64, the Commission stated "that Federal candidates and officeholders are prohibited from serving on `host committees' for a party fundraising event or from personally signing a solicitation in connection with a State, district, or local party fundraising event, on the basis that these pre-event activities are outside the permissible activities described [in 11 CFR 300.64] flowing from a Federal candidate's or officeholder's appearance or attendance at the event."

13 We supported an alternative draft offered by Commissioner

Smith and continue to believe that the interpretation of the law in that draft is a better approach. Nevertheless, understanding the importance of providing binding advice to the regulated community, we came to a bipartisan majority on most of the issues raised.