# SUPPLEMENTAL PLAINTIFFS' EXHIBIT 5

# Federal Election Commission Advisory Opinion Number 2003-5

Back to Federal Election Commission Advisory Opinions Search Page

Federal Election Commission Main Page

July 14, 2003

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

ADVISORY OPINION 2003-5

E. Mark Braden, Esq.
William H. Schweitzer, Esq.
Baker & Hostettler, LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5304

Dear Messrs. Braden and Schweitzer:

This responds to your letters dated January 17, February 27, and April 23, 2003 requesting an advisory opinion on behalf of the National Association of Home Builders of the United States ("NAHB"), a non-profit incorporated trade association. Your request concerns the application of the Federal Election Campaign Act of 1971, as amended ("FECA"), the Bipartisan Campaign Reform Act of 2002 ("BCRA") (collectively "the Act"), and Commission regulations, to activities of NAHB and its separate segregated fund, BUILD-PAC, that entail appearances by Federal officeholders or candidates.

Background

You state that NAHB is a Washington-based trade association representing more than 205,000 members. It is a Nevada non-profit corporation, organized as a trade association under the Internal Revenue Code, 26 U.S.C. 501(c)(6). NAHB is exempt from taxation under section 501(a) of the Internal Revenue Code of 1986. You describe NAHB as a membership organization whose bylaws specifically provide for a number of classes of members. You state that NAHB does not make contributions to, or expenditures for, Federal candidates or political committees.

NAHB sponsors a separate segregated fund, BUILD-PAC. NAHB created BUILD-PAC to make contributions to, and expenditures on behalf of, Federal candidates. NAHB uses its general treasury funds for the operating and fundraising costs of BUILD-PAC, pursuant to the Act and Commission regulations. BUILD-PAC makes contributions to federal candidates and political committees, and accepts only contributions that are subject to the limits and prohibitions of the Act.

You state that NAHB has for a number of years conducted an issue "Voter Mobilization" program. You explain that this program consists of partisan communications to NAHB individual members and their families, and communications to the general public regarding public policy issues in order to encourage an understanding of issues of significance to the home building industry. The program focuses on the importance of individual participation in the American democratic process through registration, voting, and direct communication with candidates and elected officials. This activity is funded from the general operating accounts of NAHB, which do not limit their receipt of funds to monies that are subject to the amount limits and source prohibitions of the Act.

NAHB has engaged in the past, and anticipates engaging in the future, in activities described in 2 U.S.C. 431(20) and 11 CFR 100.24 (which defines "Federal election activity") and 11 CFR 300.65(a)(1) (which references certain Federal election activities). You state that the Federal election activities described in 11 CFR 300.65(c)1 are not the principal purpose of NAHB.

With respect to events held in conjunction with your annual convention, you have stated that the convention consists of two primary components, a business component and a trade show component. The business component consists of business meetings within the NAHB organization such as government affairs, public affairs, membership and budget. Social events are held in conjunction with the business component of the convention. You state that these meetings and social events are attended by NAHB members and their families, and by speakers and limited special guests. The Commission assumes that NAHB members fall within the definition of "member" in 11 CFR 114.1(e)(2). Thus, in the situations you describe in your various questions where the audience is limited to NAHB "members" or its "membership,"2 the Commission presumes that covered persons would be addressing only NAHB's restricted class, which includes its members, executive and administrative personnel, and their families, and that any special guests in attendance would be

"other guests of the corporation . . . who are being honored or speaking or participating in the event," as described in 11 CFR 114.3(c)(2)(i).

You then proffer five different scenarios, and ask questions regarding the application of the Act and the Commission's regulations to each one. The scenarios are described and analyzed below.

Legal analysis and conclusions
The Act has long restricted fundraising by corporations, including incorporated membership organizations such as NAHB, for their separate segregated funds ("SSFs"). With the passage of BCRA, new restrictions now exist on the roles that Federal candidates and officeholders[3] or their agents[4] (collectively "covered persons") can play in raising funds. See 2 U.S.C. 441i(e). Both sets of restrictions must be examined to properly respond to your request.

Question 1. NAHB sponsors a convention, forum or meeting for all NAHB members to discuss national policy issues of importance to the home-building industry. May a covered person attend? If yes, may a covered person be a speaker at such
an event, and be listed as a "featured guest" in pre-event invitation materials? May a covered person solicit contributions to BUILD-PAC at the event?

As clarified in your April 23, 2003 letter and a subsequent telephone discussion with Commission staff, this question relates to a covered person's attendance and participation at events to be attended by NAHB members where the covered person's fundraising activity is limited to solicitations of funds for BUILD-PAC only, and not of funds for NAHB or for NAHB's "Voter Mobilization" program.

A covered person who is either a Federal candidate or a Federal officeholder may be listed as a "featured guest" in pre-event invitation materials produced by NAHB and distributed to its restricted class, unless those materials constitute a solicitation or direction of non-Federal funds by the covered person. See 11 CFR 114.3(a) and (c)(1), (2).

As explained below, the Commission concludes that covered persons may solicit NAHB's members for contributions to BUILD-PAC if the solicitations meet the requirements of 11 CFR 114.5(a)(3), (a)(4) and (a)(5). Because such solicitations, according to your request, would be for contributions that comply with the source prohibitions, amount limitations and reporting requirements of the Act,

these solicitations are permissible under 2 U.S.C. 441i(e)(1).

The Act and Commission regulations permit covered persons to attend these NAHB events. See AO 2003-3 (which addressed, inter alia, the appearance of a covered person at an event intended to raise funds for a state candidate, and in which the Commission held that "mere attendance at a fundraiser . . . cannot in and of itself give rise to a violation of section 441i(e)(1) or section 300.62").

Covered persons may also speak at these NAHB events, within the following parameters. If the covered person's communication includes express advocacy, the communication is subject to the provisions of 11 CFR 104.6 (governing reporting of internal communications by corporations and member organizations). See also the rules on communications to the restricted class at 11 CFR 114.3.

Oral as well as written solicitations by covered persons on behalf of separate segregated funds (SSFs) are subject to 11 CFR parts 114 and 300. With certain exceptions not applicable here, Federal candidates and officeholders cannot solicit monies that do not meet the source prohibitions and amount limitations of the Act. See 2 U.S.C. 441i(e) and 11 CFR 300.61.5 Further, solicitations made to the members of an incorporated membership organization seeking contributions to its SSF must contain certain information. First, the solicitation must inform the persons being solicited of the political purposes of the fund. 2 USC 441b(b)(3)(B); 11 CFR 114.5(a)(3). Second, those being solicited must be informed of their right to refuse to contribute without any reprisal. 2 USC 441b(b)(3)(C); 11 CFR 114.5(a)(4). Third, the solicitations for BUILD-PAC must comply with the requirements of 11 CFR 114.3(c) and 114.7. Specifically, any solicitation for BUILD-PAC made to an audience that includes persons outside of NAHB's restricted class must inform the audience that contributions are being sought only from NAHB's restricted class, and that contributions from anyone outside of the restricted class will not be accepted. The audience may include only a de minimis number of persons outside of NAHB's restricted class. See AO 1994-21.

Question 2. NAHB sponsors a forum or meeting to discuss national policy issues of importance to the industry, and invites only representatives of firms or individuals who have made donations to the NAHB "Voter Mobilization" effort. May a covered person attend the event? If yes, may a covered person speak at the event, and be listed as a featured guest in pre-event invitation

materials?

A covered person may attend an NAHB-sponsored forum or meeting to discuss national policy issues of importance to the industry, where invitees comprise only persons who are representatives of firms or individuals that have made donations to the NAHB "Voter Mobilization" effort.6 For the reasons stated in response to Question 1, a covered person may speak at the event. Mere attendance, or speaking, does not constitute solicitation, and you have stated that solicitations will not occur at the event.

A covered person may also be listed as a "featured guest" in pre-event invitation materials, provided that the materials do not constitute solicitations outside the restricted class, or a solicitation or direction of non-Federal funds. See AO 2003-3.

Question 3. NAHB invites the Secretary of Housing and Urban Development to a NAHB membership meeting or reception in the Secretary's honor for efforts on behalf of housing. May the Secretary attend the event if invitations are provided only to those who have made prior donations to NAHB at a certain level? If so, may the Secretary speak at the reception? If the reception is a ticketed fundraising event for any general account of NAHB or BUILD-PAC, could the Secretary attend and/or speak? Could a Secretary attend and/or speak at a reception if the event was specifically designated as a fundraising event for NAHB's "Voter Mobilization" program?

Under 11 CFR 100.3 and 100.4, the Secretary of Housing and Urban Development is neither a Federal candidate nor a Federal officeholder. Therefore, FECA's and BCRA's provisions regarding participation at events and solicitations only apply if the Secretary is a representative of a Federal candidate for purposes of 11 CFR 114.3(c)(2), or an agent of a Federal candidate or officeholder. Nothing in your request suggests that you would be inviting the Secretary of Housing and Urban Development to appear as a representative of a Federal candidate.7 Accordingly, the Secretary would be able to participate in any and all of the events in the manner you describe.

The Commission expresses no opinion regarding applicability of the Ethics in Government Act or any departmental ethics regulations to the participation of the Secretary in these events, because these questions are outside the Commission's jurisdiction.

Question 4. NAHB organizes a sporting event for its membership, such as a golf event. Does BCRA limit the ability of a covered person to participate in such a sporting event? Can a covered person be listed as a featured player? Does the analysis change if a sporting event is a fundraiser rather than a social event?

For the reasons stated in response to Question 1, a covered person may participate in an NAHB-sponsored sporting event for its members that is a social event and not a fundraiser. NAHB may produce and distribute materials to its members listing a covered person as a featured player.

Pursuant to your June 4, 2003 telephone conversation with Commission staff, the Commission understands that NAHB wishes to use such sporting events to raise funds from its members for either BUILD-PAC or NAHB's Voter Mobilization program, but for no other purpose. Thus, the response below is limited to these two fundraising scenarios.

If the fundraiser is for BUILD-PAC, see the response to Question 1. If the fundraiser is for NAHB's Voter Mobilization program, covered persons may also attend.

NAHB is organized under section 501(c) of the Internal Revenue Code of 1986, specifically 26 U.S.C. 501(c)(6), and is exempt from taxation under section 501(a) of the Internal Revenue Code of 1986. While NAHB does engage in Federal election activity, such activity is not its principal purpose. A covered person may solicit funds on behalf of any organization that is described in section 501(c) of the Internal Revenue Code of 1986 and that is exempt from taxation under section 501(a) of the Internal Revenue Code of 1986, in the following manner.

If the organization's principal purpose is not to conduct election activities (e.g. certain voter registration, get-out-the-vote ("GOTV") or generic campaign activity described in 11 CFR 300.65(c)), a covered person may make a "general solicitation" of funds on behalf of the organization, even if it conducts such election activity from time to time. Such a solicitation may be made without regard to source prohibitions or amount limitations, but must not be used to obtain funds for use in connection with an election or any such activities. 2 U.S.C. 441i(e)(4)(A); 11 CFR 300.65(a)(2)(i) and (ii).

A covered person may make a "specific solicitation" to obtain funds for an organization's voter registration, GOTV or generic campaign activity as described in 11 CFR

300.65(c), or for an organization whose principal purpose is to conduct such activity, if the solicitation is made only to individuals, and the amount solicited from any individual does not exceed $20,000 during any calendar year. 11 CFR 300.65(b)(1) and (2).

The Commission concludes that, to the extent that solicitations for the Voter Mobilization program would constitute solicitations for activities that fall within 2 U.S.C. 431(20)(A)(i) and (ii), including certain types of voter registration activity, such solicitations would constitute "specific solicitations" as covered by 2 U.S.C. 441i(e)(4)(B). Thus, a covered person may make these "specific solicitations" to individuals for no more than $20,000 per individual. 2 U.S.C. 441i(e)(4)(B); 11 CFR 300.65.

Question 5. Would the Commission's analysis and opinion change in any of the circumstances set forth above if NAHB specifically and expressly requests or directs any covered person not to solicit, receive or direct any funds or financial support for its "Voter Mobilization" activities in any remarks at any event?

No, the Commission's analysis would not change. If the event involves solicitations of funds for the Voter Mobilization activities, the restrictions found at 11 CFR 300.65(b) must be followed by the participating covered persons. If the covered person does not make solicitations for Voter Mobilization activities, the covered person may participate in the event as described above. The Commission's analysis and opinions turn on the conduct of covered persons and would not be affected by any advice or instruction from NAHB.

The Commission expresses no opinion as to possible Federal tax ramifications of the activities described in your request because those issues are outside the Commission's jurisdiction.

This response constitutes an advisory opinion concerning the application of FECA and Commission regulations to the specific transaction or activity set forth in your request. See 2 U.S.C. 437f. The Commission emphasizes that, if there is a change in any of the facts or assumptions presented and such facts or assumptions are material to a conclusion presented in this advisory opinion, then the requester may not rely on that conclusion as support for its proposed activity.

The Commission notes that this advisory opinion

analyzes FECA, as amended by BCRA, and Commission regulations, including those promulgated to implement the BCRA amendments, as they pertain to your proposed activities. On May 2, 2003, a three-judge panel of the United States District Court for the District of Columbia ruled that a number of BCRA provisions are unconstitutional and issued an order enjoining the enforcement, execution, or other application of those provisions. McConnell v. FEC, 251 F.Supp.2d 176 (D.D.C 2003); stay granted by 253 F.Supp.2d 18 (D.D.C. 2003); prob. juris. noted, 123 S.Ct. 2268 (U.S. June 5, 2003). Subsequently, the District Court stayed its order and injunction. Id. The District Court ruling has been appealed to the United States Supreme Court. Id. The Commission cautions that the legal analysis in this advisory opinion may be affected by the eventual decision of the Supreme Court.

Sincerely,

(signed)

Ellen L. Weintraub
Chair

Enclosures (AOs 1994-21, 1996-11 and 2003-03)

---

1 Such Federal election activities include voter registration activity during the period that begins on the date that is 120 days before the date a regularly scheduled election is held and ends on the date of that election; or voter identification, get-out-the-vote activity, or generic campaign activity, as defined in the Commission's regulations. See 11 CFR 300.65(c)(1) and (2)(i)-(iii).
2 See 11 CFR 114.1(j). In addressing your questions, the Commission understands that the situations described in your advisory opinion request are distinguishable from those in AO 1996-11, where a membership organization intended to invite Federal candidates to appear at its convention, and where the intended audience for the candidate appearances was to include members of the general public, and was not restricted to its members.
3 Under 2 U.S.C. 431(3) and 11 CFR 100.4, "Federal office" means "the office of President or Vice President, or of Senator or Representative in, or Delegate or Resident Commissioner to, the Congress."
4 For the definition of "agent," see 11 CFR 300.2(b)(3).
5 Because BUILD-PAC is a multicandidate political committee, see 2 U.S.C. 441a(a)(4), the limit on individual contributions that it may accept is $5,000 per calendar

year. 2 U.S.C. 441a(a)(1)(C) and (f).
6 The Commission assumes that the covered person's participation is not a candidate appearance subject to 11 CFR 114.4(b)(1) and 114.3(c)(2).
7 You also do not suggest that the Secretary of Housing and Urban Development would be an agent of any political party committee or non-Federal candidate, and this advisory opinion does not reach such situations. See 11 CFR 300.2(b).