# SUPPLEMENTAL PLAINTIFFS' EXHIBIT 6

# Federal Election Commission Advisory Opinion Number 2003-36

Back to Federal Election Commission Advisory Opinions Search Page

Federal Election Commission Main Page

FEDERAL ELECTION COMMISSION
Washington, DC 20463

January 12, 2004

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

ADVISORY OPINION 2003-36

Edward T. Tobin, III
Executive Director
Republican Governors Association
555 11th Street, N.W,
Suite 700
Washington, D.C. 20004

Dear Mr. Tobin:

This responds to your letters dated October 16 and November 12, 2003, on behalf of the Republican Governors Association ("RGA"), requesting an advisory opinion concerning the application of the Federal Election Campaign Act of 1971, as amended ("the Act"), and Commission regulations to the participation of Federal candidates and officeholders in fundraising activities on behalf of RGA.

Background

You state that RGA is an independent, unincorporated association that is the official political and public policy organization of the Republican State Governors. It was established in 1963 and was an "auxiliary" organization of the Republican National Committee. You assert that, prior to November 6, 2002, the effective date of the Bipartisan Campaign Reform Act of 2002 ("BCRA"), RGA severed its ties to the RNC. In October 2002, RGA established itself as a "political organization" under 26 U.S.C. 527. You assert that RGA is not affiliated with a national, State, or local political party committee, is not a Federal political committee, "does not raise funds pursuant to [the Act]," does not participate in Federal

elections, and is operated and governed independently of any Federal political committee, candidate, or officeholder. You state that RGA has not engaged, and does not anticipate engaging, in "Federal election activity" ("FEA") as defined in 2 U.S.C. 431(20) and 11 CFR 100.24.
RGA's mission is to aid Republican Governors, gubernatorial candidates, and other State candidates by: (1) assisting in their elections as permitted by the laws of the different States through direct contributions and participation in the discussion of State and local issues; (2) providing policy assistance through conferences, debates, and public messages, and (3) providing a platform for the Governors to express, develop, and promote their governing philosophies.

You state that RGA raises "exclusively non-federal funds" through a series of fundraising events. It deposits these funds into several accounts that allow it to participate in elections under the laws of the 50 States.

RGA also maintains a segregated Conference Account. You state that funds in the Conference Account are not used to influence any election but rather to pay for the administrative and event costs associated with the RGA's Annual Conference and its series of Governors Forums that are conducted throughout the country. The large majority of Conference Account expenses pay for hotel fees, catering, and meeting space usage. You state that the events funded by the Conference Account are policy discussions and not political events, and do not include planning for campaigning or fundraising, or the solicitation of funds for Federal or non-Federal candidates or political committees. Conference speeches and presentations are not made by RGA staff. They center on State and local public policy issues, and not elections, and do not include advocacy of the election or defeat of Federal candidates. You state that, if any speaker includes advocacy of the election or defeat of State candidates, such advocacy is beyond the purpose for which the speaker is invited. Funds received and disbursed by the Conference Account are not incorporated into RGA's reports filed with the States in which it conducts its activities. However, funds received and disbursed by the Conference Account are included in RGA's filings with the IRS and are not separated out from the other activities of RGA in those filings.

Your request presents questions about fundraising for both RGA and for RGA's Conference Account by Federal candidates, Federal officeholders, and their agents ("covered individuals") in a variety of activities. In addition to the facts presented above, you have indicated that the following predicate assumptions apply with respect to the first question (1.a., 1.b., and 1.c.).

- First, the funds raised will be either explicitly solicited for the purpose of assisting only in the election of State candidates or in messages on State issues mentioning only State officials; or solicited only for RGA and not to support any specific State candidates.

- Second, donations that exceed the Federal contribution limits or come from prohibited sources will be solicited, but, in solicitations by covered individuals, notice will be given to the solicitees that the covered individual is not raising funds outside the Act's amount limits or from sources prohibited by the Act.

- Third, the solicitations by the covered individuals, whether oral or in writing, will refer to non-Federal candidates (particularly the candidates in the States where the solicitation is sent or aired) but will not refer to any Federal candidates (other than the covered individual in the context of the solicitation).

- Fourth, funds solicited "only for the RGA and not to support any specific State candidates" will be used for RGA's administrative and overhead expenses. They may also be used to pay for public communications that would include a mass mailing fundraising letter not mentioning any Federal candidate and signed by the RGA Chair, or an issue message concerning a State issue.

With respect to your second question, pertaining to proposed solicitations by Federal candidates, officeholders, or their agents specifically for the Conference Account, you state that neither Federal nor non-Federal candidates will be mentioned (other than the covered individual in the context of the solicitation).

Legal Analysis and Conclusions

1. May a covered individual participate (a) as a featured guest at an RGA fundraising event; (b) by having his name appear on a written solicitation for an RGA fundraising event as the featured guest or speaker; or (c) by signing a written fundraising solicitation for RGA?

On November 6, 2002, BCRA took effect. As amended by BCRA, the Act regulates certain actions of Federal candidates and officeholders,1 their agents,2 and entities directly or indirectly established, financed, maintained, or controlled by them3 when they raise or spend funds in connection with either Federal or non-Federal elections. 2 U.S.C. 441i(e)(1). 4 Both BCRA and the Commission's rules implementing BCRA prohibit

covered individuals from soliciting, receiving, directing, transferring, or spending: (A) funds in connection with an election for Federal office, including funds for any Federal election activity,5 unless the funds are subject to the limitations, prohibitions, and reporting requirements of the Act, and (B) funds in connection with any election other than an election for Federal office unless the funds are not in

excess of the amounts permitted with respect to contributions to candidates and political committees under 2 U.S.C. 441a(a)(1), (2), and (3), and are not from sources prohibited by the Act from making contributions in connection with an election for Federal office. 2 U.S.C. 441i(e)(1)(A) and (B); 11 CFR 300.61 and 300.62.6

Commission regulations state that to "solicit" means "to ask that another person make a contribution, donation, transfer of funds, or otherwise provide anything of value," whether done so directly or through a conduit or intermediary. 11 CFR 300.2(m) (emphasis added). Similarly, "to direct means to ask a person who has expressed an intent to make a contribution, donation, or transfer of funds, or to provide anything of value, to make that contribution, donation, or transfer of funds, or to provide that thing of value . . . ." 11 CFR 300.2(n) (emphasis added). See also McConnell v. Federal Election Commission, _ U.S_, 124 S. Ct. 619, 670 (2003). Neither "to solicit" nor "to direct" includes merely providing guidance or information about the law. 11 CFR 300.2(m) and (n). See Advisory Opinion 2003-03.
By defining "to solicit" and "to direct" as "to ask," the regulations establish that a Federal candidate will not be held liable for soliciting funds in violation of 2 U.S.C. 441i(e) or 11 CFR 300.62 merely by virtue of attending or participating in any manner in connection with a fundraising event at which non-Federal funds are raised. Nor will a Federal candidate or officeholder be held liable based on private conversations that would require an examination to infer the Federal candidate's or officeholder's intent. The Commission was concerned that imputing intent when a private conversation is not clear on its face could lead to finding a violation when the candidate involved had no intention of soliciting contributions. "Such a result is not dictated by BCRA's statutory language and would raise constitutional concerns." "Prohibited and Excessive Contributions: Non-Federal Funds or Soft Money; Final Rule," 67 Fed. Reg. 49064, 49086-87 (July 29, 2002). To be liable, the Federal candidate must "ask" for non-Federal funds. Id., see also, "Prohibited and Excessive Contributions: Non-Federal Funds or Soft Money; Proposed Rule," 67 Fed. Reg. 35654, 35660, 35681 (May 20, 2002). Thus, the scope of a covered individual's potential liability under 2 U.S.C. 441i(e)(1) and 11 CFR 300.62 must be determined by his or her own speech and actions in asking for funds or those of his or her agents, but not by the speech or

actions of another person outside his or her control. 7

See Advisory Opinions 2003-03 and 2003-05.
One of the factual predicates of questions 1.a., 1.b., and 1.c. is that explicit notice will be given that the covered individual is not soliciting funds outside the limits and prohibitions of the Act. In Advisory Opinion 2003-03, the Commission addressed appearances, speeches, and solicitations by a Federal candidate or officeholder at fundraising events for non-Federal candidates where Federally impermissible funds were being raised. The Commission interpreted the Act and regulations to permit oral solicitations, and signatures on written solicitations, by a covered individual, so long as the solicitations included or were accompanied by a message adequately indicating that the covered individual is only asking for Federally permissible funds. See 2 U.S.C. 441i(e)(1)(B); 11 CFR 300.62. The following is considered to be an adequate disclaimer:
I am asking for a donation of up to $5,000 per year. I am not asking for funds from corporations, labor organizations, or other Federally prohibited sources.
1.a. May a covered individual participate as a featured guest at an RGA fundraising event?

Your description of RGA's activities (other than those of the Conference Account) indicates that they are in connection with the election of gubernatorial and other State candidates. Hence, 2 U.S.C. 441i(e)(1)(B) applies to the proposed activities described in questions 1.a., 1.b., and 1.c.
A covered individual may, subject to certain conditions, appear as a featured guest or speaker at the events you describe. The mere attendance of the covered individual at a fundraiser where non-Federal funds are raised does not, in and of itself, give rise to a violation of 2 U.S.C. 441i(e)(1) or 11 CFR 300.62, and the covered individual may participate in any activities at such an event provided that he or she does not solicit, direct, receive, transfer, or spend funds outside the Act's limits and prohibitions.

If the covered individual makes a speech without asking for donations to RGA, he does not need to issue a disclaimer stating that he is not raising funds outside the limitations or prohibitions of the Act, even though speeches by others solicit such funds. If the covered individual gives a speech soliciting funds generally without mentioning specific amounts, sources, or limitations, he may do so if written notices are clearly and conspicuously displayed at the event indicating that the covered individual is soliciting only Federally permissible funds.8 Alternatively, if no written notices are so displayed, the covered individual must make an oral disclaimer similar to the

one described above and referred to in your request. If such a public oral disclaimer is made, it need only be made once, and it is not required that it be made during a covered individual's one-on-one discussions with donors or other people at the event. This should not, however, be construed to permit a covered individual to inoculate a solicitation of non-Federal funds by reciting a rote limitation, but then encouraging the potential donor to disregard the limitation. See generally Advisory Opinion 2003-03.

The requirements of 2 U.S.C. 441i(e)(1), as interpreted in Advisory Opinion 2003-03, apply regardless of whether funds are solicited for the purposes of assisting only in the election of State candidates or in messages on State issues mentioning only State officials; or solicited only for the RGA and not to support any specific State candidates.

1.b. May a covered individual participate by having his name appear on written solicitations for an RGA fundraising event as the featured guest or speaker?

Yes, he may so participate under certain conditions.

Section 441i(e)(1) and section 300.62 do not apply to publicity for an event where that publicity does not constitute a solicitation or direction of non-Federal funds by a covered individual, nor to a Federal candidate or officeholder merely because he or she is a featured guest at a non-Federal fundraiser. Whether characterized as "publicity" or as a solicitation, the applicable analysis as to the covered individual is two-fold: (1) whether the writing or publicity constitutes a solicitation for funds; and (2) whether the covered individual approved, authorized, or agreed or consented to be featured, or named in, the writing or publicity (e.g., through the use of his name or likeness).

A Federal candidate may not solicit funds in excess of the amount limitations or in violation of the source prohibitions of the Act. If the covered individual approves, authorizes, or agrees or consents to be named or featured in a solicitation, the solicitation must contain a clear and conspicuous express statement that it is limited to funds that comply with the amount limits and source prohibitions of the Act. The mere mention of a covered individual in the text of a written solicitation does not, without more, constitute a solicitation or direction of non-Federal funds by that covered individual. See generally Advisory Opinion 2003-03.9

Complying with these requirements regarding the written solicitation or publicity does not relieve the covered individual of the requirements as to his or her actual appearance at the

subsequent event as a featured guest or speaker, set out in the response to question 1.a. The requirements set out in that response as to the speech and disclaimer by the covered individual, clear and conspicuous written notices, and conversations by the covered individual are still applicable.

For the reasons stated above in response to question 1.a., the requirements apply regardless of whether the funds are solicited for the purposes of assisting only in the election of State candidates or in messages on State issues mentioning only State officials; or solicited only for the RGA and not to support any specific State candidates.

1.c. May a covered individual participate by signing a written fundraising solicitation for RGA?

Yes, a covered individual may sign a written fundraising solicitation for RGA provided that the covered individual complies with the requirements stated in response to question 1.b.

2. With respect to the RGA Conference Account, may a covered individual sign or appear on written solicitations, such as signing invitation letters, or appear as a featured guest or speaker at a fundraising event, where the donations solicited exceed the Act's amount limits or are from prohibited sources but the solicitation does not include a notice that the covered individual is not raising funds outside the amount limits and source prohibitions of the Act?

No, the covered individual may not so participate under those circumstances. The requirements described above in response to questions 1.a, 1.b, and 1.c are applicable to the situations described in question 2, including the need for the notice that the covered individual is asking for funds only up to the applicable limits of the Act, and is not asking for funds outside the limitations or prohibitions of the Act.

As recognized by the Supreme Court in McConnell v. Federal Election Commission,

> [s]ection 527 political organizations are, unlike 501(c) groups, organized for the express purpose of engaging in partisan political activity. They include any "party, committee, association, fund, or other organization (whether or not incorporated) organized and operated primarily for the purpose of directly or indirectly accepting contributions or making expenditures" for the purpose of "influencing or attempting to influence the selection, nomination, or

appointment of any individual for Federal, State, or local public office. 26 U.S.C. 527(e).

McConnell, 124 S.Ct., at 678, n.67. In contrasting 527 organizations with 501(c) organizations, the Court, in McConnell, further noted that the former are organizations "which by definition engage in partisan political activity." Id, at 679.

In October 2002, the RGA filed a Form 8871 with the Internal Revenue Service by which it registered as a section 527 organization. On the form, RGA states its purpose as follows: "The Republican Governors Association supports the election of Republican Governors and other nonfederal candidates, promotes Republican policies, and engages in other state and local election activities." Additionally, the requestor may have claimed that Conference Account income is exempt function income under 26 U.S.C. 527. In the absence of other legal or factual considerations, the Commission would accept this characterization of the requestor's Conference Account activities. As such, donations or "contributions" to the Conference Account must be treated in the same manner as donations for other purposes of RGA. Therefore, the solicitation of funds for the Conference Account constitutes fundraising in connection with an election other than an election for Federal office under 2 U.S.C. 441i(e)(1)(B) and 11 CFR 300.62.

3. May RGA's Conference Account accept donations from corporations organized by authority of Congress, such as the Federal Home Loan Mortgage Corporation and the Federal National Mortgage Association?

The Act, at 2 U.S.C. 441b(a) prohibits "any corporation established by authority of any law of Congress" from making a contribution in connection with any election to any political office. As indicated above, contributions or donations to RGA's Conference Account would be in connection with an election other than an election to Federal office. Therefore, the Conference Account may not accept contributions or donations from the Federal Home Loan Mortgage Corporation and the Federal National Mortgage Association.

This response constitutes an advisory opinion concerning the application of the Act and Commission regulations to the specific transaction or activity set forth in your request. See 2 U.S.C. 437f. The Commission emphasizes that, if there is a change in any of the facts or assumptions presented and such facts or assumptions are material to a conclusion presented in this advisory opinion, then the requester may not rely on that conclusion as support for its proposed activity.

Sincerely,

(signed)

Bradley A. Smith
Chairman

Enclosures (AOs 2003-05 and 2003-03)

---

1 Under 2 U.S.C. 431(3), "Federal office" means "the office of President or Vice President, or of Senator or Representative in, or Delegate or Resident Commissioner to, the Congress." See also 11 CFR 100.4.

2 11 CFR 300.2(b)(3).

3 11 CFR 300.60.

4 The Act, as amended by BCRA, and Commission regulations also prohibit national committees of political parties, its officers and agents, and any entities established, financed, maintained or controlled by such committees from soliciting, receiving, spending, or directing to another person, non-Federal funds (i.e., funds that that are not subject to the limitations, prohibitions, or reporting requirements of the Act. 2 U.S.C. 441i(a); 11 CFR 300.10. For the purposes of this opinion, the Commission accepts your representation that RGA has severed its ties to the RNC and is not an entity that is established, financed, maintained, or controlled by the RNC, but does not make a determination as to this issue.

5 2 U.S.C. 431(20); 11 CFR 100.24.

6 Under the Act, the following persons may not contribute in connection with a Federal election: National banks, corporations, and labor organizations (2 U.S.C. 441b); Federal government contractors (2 U.S.C. 441c); and foreign nationals (2 U.S.C. 441e). It is unlawful for the following persons to contribute or donate in connection with any election: National banks and corporations organized by authority of Congress (2 U.S.C. 441b); and foreign nationals (2 U.S.C. 441e).

7 In implementing BCRA, including section 441i(e)(1), the Commission defined "agent," as "any person who has actual authority, either express or implied," to act on behalf of a covered person. See 11 CFR 300.2(b). The Commission made clear that under BCRA, an agent "does not apply to individuals who do not have any actual authority to act on their [principal's] behalf, but only `apparent authority'" to do so. Explanation and Justification, 67 Fed. Reg. 49064, 49082 (July 29, 2002). The Commission also made clear that a principal may only be held liable under BCRA for the actions of an agent when the agent is acting on behalf of the principal. Id. at 49083. "[I]t is not enough that there is some relationship or contact between the principal and agent; rather, the agent must be acting on behalf of the principal to create potential liability for the principal. This additional requirement ensures that liability will not attach due solely to the agency relationship, but only to the

agent's performance of prohibited acts for the principal." Id.
8 See 11 CFR 110.11(c) for the Commission's interpretation of "clear and conspicuous" in related contexts.
9 Although Advisory Opinion 2003-03 might be read to mean that a disclaimer is required in publicity or other written solicitations that explicitly ask for donations "in amounts exceeding the Act's limitations and from sources prohibited from contributing under the Act," that was not the Commission's meaning. The Commission wishes to make clear that the covered individual may not approve, authorize, agree, or consent to appear in publicity that would constitute a solicitation by the covered person of funds that are in excess of the limits or prohibitions of the Act, regardless of the appearance of such a disclaimer. However, the Commission could not agree whether the use of a covered person's name in a position not specifically related to fundraising, such as "honorary chairperson," on a solicitation not signed by the covered person, is prohibited under the Act.