# SUPPLEMENTAL PLAINTIFFS' EXHIBIT 10

The PRESIDING OFFICER. Without objection, it is so ordered.

The amendment is as follows:

(Purpose: To provide a study of the effects of State laws that provide public financing of elections)

On page 37, between lines 14 and 15, insert the following:

**SEC. 305. STUDY AND REPORT ON CLEAN MONEY CLEAN ELECTIONS LAWS.**

(a) CLEAN MONEY CLEAN ELECTIONS DEFINED.—In this section, the term "clean money clean elections" means funds received under State laws that provide in whole or in part for the public financing of election campaigns.

(b) STUDY.—

(1) IN GENERAL.—The Comptroller General of the United States shall conduct a study of the clean money clean elections of Arizona and Maine.

(2) MATTERS STUDIED.—

(A) STATISTICS ON CLEAN MONEY CLEAN ELECTIONS CANDIDATES.—The Comptroller General of the United States shall determine—

(i) the number of candidates who have chosen to run for public office with clean money clean elections including—

(I) the office for which they were candidates;

(II) whether the candidate was an incumbent or a challenger; and

(III) whether the candidate was successful in the candidate's bid for public office; and

(ii) the number of races in which at least one candidate ran an election with clean money clean elections.

(B) EFFECTS OF CLEAN MONEY CLEAN ELECTIONS.—The Comptroller General of the United States shall describe the effects of public financing under the clean money clean elections laws on the 2000 elections in Arizona and Maine.

(c) REPORT.—Not later than 1 year after the date of enactment of this Act, the Comptroller General of the United States shall submit a report to the Congress detailing the results of the study conducted under subsection (b).

Mr. DODD. Mr. President, this is an amendment that has been agreed to by both sides. It is one of these amendments we can move out of the way very quickly. I gather the majority has seen it and approves as well.

Mr. McCONNELL. We have no objection to it.

Mr. DODD. Mr. President, I urge adoption of the amendment.

The PRESIDING OFFICER. Without objection, the amendment is agreed to.

The amendment (No. 160) was agreed to.

Mr. DODD. I move to reconsider the vote.

Mr. McCONNELL. I move to lay that motion on the table.

The motion to lay on the table was agreed to.

The PRESIDING OFFICER. The Senator from Kentucky.

Mr. McCONNELL. Mr. President, the next amendment will be by Senator LEVIN and Senator ENSIGN.

The PRESIDING OFFICER. The Senator from Michigan.

AMENDMENT NO. 161

Mr. LEVIN. Mr. President, I send an amendment to the desk and ask for its immediate consideration on behalf of myself and Senators ENSIGN, CLINTON, DORGAN, and BEN NELSON.

The PRESIDING OFFICER. The clerk will report.

The legislative clerk read as follows:

The Senator from Michigan [Mr. LEVIN], for himself, Mr. ENSIGN, Mrs. CLINTON, Mr. DORGAN, and Mr. NELSON of Nebraska, proposes an amendment numbered 161.

Mr. LEVIN. I ask unanimous consent reading of the amendment be dispensed with.

The PRESIDING OFFICER. Without objection, it is so ordered.

The amendment is as follows:

(Purpose: To amend the definition of Federal election activity as it applies to State, district, or local committees of political parties)

Beginning on page 3, strike line 12 and all that follows through page 4, line 4, and insert the following:

"(b) STATE, DISTRICT, AND LOCAL COMMITTEES.—

"(1) IN GENERAL.—Except as provided in paragraph (2), an amount that is expended or disbursed for Federal election activity by a State, district, or local committee of a political party (including an entity that is directly or indirectly established, financed, maintained, or controlled by a State, district, or local committee of a political party and an officer or agent acting on behalf of such committee or entity), or by an entity directly or indirectly established, financed, maintained, or controlled by or acting on behalf of 1 or more candidates for State or local office, or individuals holding State or local office, shall be made from funds subject to the limitations, prohibitions, and reporting requirements of this Act. Nothing in this subsection shall prevent a principal campaign committee of a candidate for State or local office from raising and spending funds permitted under applicable State law other than for a Federal election activity that refers to a clearly identified candidate for election to Federal office.

"(2) APPLICABILITY.—

"(A) IN GENERAL.—Notwithstanding clause (i) or (ii) of section 301(20)(A), and subject to subparagraph (B), paragraph (1) shall not apply to any amount expended or disbursed by a State, district, or local committee of a political party for an activity described in either such clause to the extent the costs of such activity are allocated under regulations prescribed by the Commission as costs that may be paid from funds not subject to the limitations, prohibitions, and reporting requirements of this Act.

"(B) CONDITIONS.—Subparagraph (A) shall only apply if—

"(i) the activity does not refer to a clearly identified candidate for Federal office; and

"(ii) the costs described in subparagraph (A) are paid directly or indirectly from amounts donated in accordance with State law, except that no person (and any person established, financed, maintained, or controlled by such person) may donate more than $10,000 to a State, district or local committee of a political party in a calendar year to be used for the costs described in subparagraph (A).

Mr. LEVIN. Mr. President, this amendment will allow the use of some non-Federal dollars by State parties for voter registration and get out the vote, where the contributions are allowed by State law, where there is no reference to Federal candidates, where limited to $10,000 of the contribution which is allowed by State law, and where the allocation between Federal and non-Federal dollars is set by the Federal Election Commission.

This bill that is before us is about limits. We have set limits on contributions by individuals, by PACs, by national parties to State parties. It is all about trying to restore some limits to a law where that law has really been completely subverted in terms of contribution limits by the so-called soft money loophole.

I think it is perfectly appropriate that the bill set limits. The bill has also put some restrictions which are excessive on the use of non-Federal dollars by State parties for voter registration and get out the vote.

I think in our efforts over the last couple weeks we have really done the right thing in establishing the limits that we have. We have focused on trying to restore something which was always intended, which is contribution limits, but we have also, in our review, done some fine tuning. We have done some adjustments.

This amendment provides some fine tuning in an area where State parties are using non-Federal dollars, dollars allowed by State law, for some of the most core activities that State parties are involved in; that is, voter registration and get out the vote.

Now the bill does not restrict State parties when it comes to using non-Federal dollars for things such as salaries and rent and utilities, nor should it. But it does prohibit altogether—unless this amendment is adopted—the use by State parties of non-Federal dollars. These are dollars not raised through any effort on the part of Federal officeholders, Federal candidates, or national parties. These are non-Federal dollars allowed by State law.

The bill, as it is currently written, would prohibit the use of any of those dollars for those core activities of State parties that we all know and call by get out the vote, registration activities, and voter identification.

In this regard, I believe and our cosponsors believe that the bill has gone too far, that we ought to allow State parties using non-Federal dollars, under very clear limits, where there is not an identification of a Federal candidate, where there is a limit as to how much of those contributions they can use, and where the contributions are allowed by State law—that we ought to allow, with the proper Federal match, determined by the Federal Election Commission, State parties to use these non-Federal dollars in some of the most core activities in which State parties are involved.

There is nothing much more basic to State parties than identifying voters who agree with their causes and to try to get those voters to the polls.

That is about as core an effort as you can get. Yet unless we make this modification in the bill, we would tell State parties they can't use the non-Federal dollars in any year where there is a Federal election, which is every other year, for those core activities.

This amendment, I believe, now has the support of the managers of the bill.

They will speak for themselves, of course. But we have worked very hard to make sure there are still some limits. We are not eliminating the limits on this spending, nor should we, because if it is unlimited, we then have a huge loophole again where State parties would become the funnel for the Federal campaign money to be poured into. So we keep reasonable restrictions, but what we do is, we pull back from the total elimination of the use of these non-Federal dollars by State parties for their fundamental basic activity.

Mr. DORGAN. Will the Senator from Michigan yield for a question?

Mr. LEVIN. I am happy to yield.

Mr. DORGAN. I am pleased to support this with Senator LEVIN, Senator CLINTON, and others.

I ask the Senator from Michigan, isn't it the case that, as currently written, a Governor and a mayor could not use non-Federal money to conduct their own activities for get out the vote, for example, in an election in which there might have been a Federal candidate, and would that not be the case?

Mr. LEVIN. The Senator is correct.

Mr. DORGAN. Secondly, there are roughly 160 democracies in the world. I wonder if the Senator knows—I didn't know until a few minutes ago—where we rank in the democracies around the world in voter participation. Before asking whether he knows the right answer, I will say we rank 139th among the democracies in the world in voter participation. It seems to me we ought to encourage in every conceivable way activities that get out the vote, that encourage voter participation. Is it not the case, that is exactly what this amendment does?

Mr. LEVIN. This amendment is aimed at restoring the appropriate use by parties of non-Federal funds which are obtained by those parties in compliance with their own State laws in those very activities which the Senator has identified. These are the fundamental activities in a democracy. We want State parties to be involved in those activities, as the Senator pointed out. We don't want that to become the loophole, however, for unlimited Federal dollars. That is why this amendment is crafted the way it is.

Mr. DORGAN. Finally, if the Senator from Michigan will yield one additional time, let me say the proposal of the Senator from Michigan is a modest one. We could have done more, perhaps should have done more. This represents a compromise, a modest compromise, however. It does the right thing. We don't want to pass campaign finance reform and then produce impediments to those very activities that would encourage voter participation. That would be a step in the wrong direction.

I, again, say how pleased I am at the effort tonight and the sponsorship by Senator LEVIN. I am very proud to be a cosponsor. I am pleased this is going to be accepted.

Mr. LEVIN. I thank Senator DORGAN for his cosponsorship, all of our cosponsors. I acknowledge the principal cosponsorship of the Senator from Nevada. I wasn't going to yield the floor to him, but I was going to acknowledge him as my principal cosponsor. I am happy to yield to the Senator from Connecticut.

Mr. DODD. Let me say to Senator LEVIN and Senator ENSIGN and others, I want to be considered a cosponsor as well, Mr. President. I appreciate the efforts of Senator LEVIN and Senator ENSIGN to work this out. This is an important provision that is going to make a difference. It is done in a very thoughtful way, a very responsible way. I think it adds again to the value of this piece of legislation. I thank our colleagues for their efforts.

Mr. LEVIN. Before I yield the floor, I want to add as a cosponsor Senator HARRY REID and to thank him for the efforts behind the scenes, as is so often true with Senator REID, making things happen in the Senate which otherwise simply would not happen, but doing it in a very self-effacing way, a very critically important way. I thank him as we ask unanimous consent that he be added as a cosponsor, and Senator CORZINE as well.

I yield the floor.

The PRESIDING OFFICER. Without objection, it is so ordered.

The Senator from Nevada.

Mr. ENSIGN. Mr. President, I first thank the Senator from Michigan for the work we have done together. He started this work and I joined him in it some time ago. We had a few differences on the amendment, but we were able to work those out. I thank the managers of the bill for also working with us to make sure we would be able to include this amendment in the bill. It is a very important amendment.

We look at our turnout of voters today, and we see a continual decline each and every year. The people who have brought the underlying bill to the floor are doing it partially because of that decreasing turnout. People out there in America are increasingly turned off from elections because of negative ads. A lot of those negative ads have been funded by some of the independent expenditures as well as some of the soft money that has been run through the parties.

What this bill, I don't think, intended to do, however, was to limit the activities of actually getting people to the polls, of first signing people up to register to vote and then encouraging them to go to the polls.

When I was running against Senator HARRY REID back in 1998, the labor unions put about 300 people on the ground to get out the vote for Senator REID. It was perfectly within their right to do that. This bill would have limited, though, State parties from doing similar activities. We want to encourage more people to go to the polls, not discourage people from going to the polls. Let's face it, if more people are not interested in our government, if they are not participating in this form of government we call a Republic, then our Republic will be doomed. We have to encourage people to go to the polls, and part of that is through the State parties.

This amendment is going to allow State parties to be funded to the point where they will have the resources to be able to get people to the polls on election day because they will be allowed to spend money for voter ID, for voter registration, and then for what is called get-out-the-vote efforts, things that are very important for increasing the number of people who get to the polls.

I thank the Senator from Michigan for working together on this amendment. It is a very important amendment. I also thank Senator MCCONNELL for allowing us to bring this amendment up.

I yield the floor.

The PRESIDING OFFICER. The Senator from Kentucky.

Mr. MCCONNELL. I think it is a good amendment. We should move to final passage, unless there are others who want to speak on it.

The PRESIDING OFFICER. The Senator from New York.

Mrs. CLINTON. Mr. President, I add my words of support and thank Senator LEVIN and the other cosponsors who have worked hard on this matter.

I wish to reiterate the point that, while we are working so hard to reform our campaign finance system, we cannot undermine our ability to reform the way elections are conducted. For all of the reasons Senator LEVIN and Senator ENSIGN and others have pointed out, registering voters, getting voters out to the polls is a critical role of parties. From my perspective, we need to be doing even more to try to promote what parties used to do, which was that kind of grassroots outreach activity.

In reforming the way campaigns are financed, we must not hurt out ability to reform the way elections are conducted. This amendment would ensure that State, district or local committees of a political party would be able to continue to provide vital services to our citizenry during Federal elections, from voter registration activities to assisting individuals in getting out to vote on Election Day.

The 2000 election taught us many things. One of the most important was the significance of having an informed electorate. Too many citizens in the last election were provided with too little information about where and how to vote. Too many citizens experienced unwarranted obstacles to registration and voting. As a result, fewer votes were counted, and in the next election fewer people may turn out to vote.

The solution to these problems cannot be in the province of Government alone. America's political parties must play an important role in helping people register to vote, helping them learn