# SUPPLEMENTAL PLAINTIFFS' EXHIBIT 12

for Federal office, regardless of whether a State candidate is also mentioned. This restriction, however, only applies to communications that promote, support, attack or oppose the Federal candidate, regardless of whether the communication expressly advocates a vote for or against a candidate.

Thus, it is not our intention to prohibit State candidates from spending non-Federal money to run advertisements that mention that they have been endorsed by a Federal candidate or say that they identify with a position of a named Federal candidate, so long as those advertisements do not support, attack, promote or oppose the Federal candidate, regardless of whether the communication expressly advocates a vote for or against a candidate. The test for whether a communication is covered by §323(f)(1) will be whether the advertisement supports or opposes the Federal candidate rather than simply promoting the candidacy of the State candidate who is paying for the communication. That will be up to the FEC to determine in the first instance, but I believe that State candidate will be able to fairly easily comply with this provision. All we are trying to prevent with this provision is the laundering of soft money through State candidate campaigns for advertisements promoting, attacking, supporting or opposing Federal candidates.

SECTION 212

Mr. LEVIN. Madam President, section 212 of the bill modifies reporting requirements for independent expenditures. Can the sponsors discuss the changes to current law that they intend to make in this section?

Mr. McCAIN. I would be happy to explain this provision. Section 212 is intended to increase the disclosures of independent expenditures. Current law require such reports to be filed within 24 hours of the making of expenditure aggregating $1,000 or more, if the threshold amount of expenditures is reached within the last 20 days before an election. We add a provision requiring disclosure within 48 hours if independent expenditures totaling $10,000 or more are made prior to the 20th day before the election.

As part of the Department of Transportation appropriations bill for 2001, Public Law No. 106–46, Congress required that these ''24 hour reports'' be received by the Commission within 24 hours, rather than simply mailed within that time, which is the standard interpretation of the term ''filing'' in the law. We do not intend in §212 to change that requirement. Because these reports are very time sensitive, we believe they should be received by the Commission within the time period specified. Indeed, we believe that the Commission should have the authority to require any other time sensitive report required by this bill, such as the 24 hours reports required under §§ 304 and 319 also to be received within 24 hours. The ready availability of fax machines and other forms of electronic communications should make it fairly easy to comply with this requirement.

HOUSE-PASSED CAMPAIGN FINANCE LEGISLATION

Mr. FEINGOLD. Madam President, as my colleagues are aware, the House passed the McCain-Feingold/Shays-Meehan campaign finance reform bill in the early morning hours of February 14, 2002. The bill that we are debating today, and that we will pass and send to the President this week, is the exact bill that the House passed. During the debate on the bill, Congressman CHRISTOPHER SHAYS of Connecticut spoke on the floor at some length about the compelling need for the Congress to ban soft money. He related the enormous growth of soft money over the last decade and the appearance of corruption that these unlimited contributions from unions, corporations, and wealthy individuals cause. Using examples such as the Enron debacle, the Hudson Casino controversy, the tobacco industry, and the infamous Roger Tamraz, Congressman SHAYS illustrated how soft money damages public confidence in the legislative process. He includes statements from former Members of Congress of the power of money in providing access to lawmakers and the public cynicism that results when these stories become known.

Mr. SHAYS' remarks appear in the CONGRESSIONAL RECORD of February 13, 2002 at pages H351–H353. I entirely agree with Mr. SHAYS' statement. In my view, it explains very well the appearance problem that soft money creates and provides an excellent justification for the action we are about to take in this bill.

Mr. McCAIN. I agree with my friend from Wisconsin, and I endorse Mr. SHAYS' discussion on the reasons that Congress must act to ban soft money. Let me also call to my colleagues' attention a statement that Mr. SHAYS made on February 13, 2002, concerning the functioning of the soft money ban, and in particular, the Levin amendment. The Levin amendment concerning state parties' use of nonfederal funds was added to the bill here on the floor last year. It was modified, and in my view improved, on the House side. My colleague from Wisconsin and I participated in the negotiations that yielded the final terms of the Levin amendment contained in the House bill. Mr. SHAYS explains quite well the way that the Levin amendment in the final bill is supposed to function, and the restrictions, or what some have called ''fences,'' that we hope and believe will prevent the Levin amendment from becoming a new soft money loophole. Mr. SHAYS' discussion appears in the RECORD on pages H408–H410 on February 13, 2002.

Mr. FEINGOLD. I thank the senior Senator from Arizona for highlighting that particular part of the legislative history. I also believe Mr. SHAYS does an excellent job of explaining how the Levin amendment is supposed to work. In addition, Mr. SHAYS discussed how the provisions of the bill dealing with electioneering communications permit the FEC to promulgate regulations to exempt certain communications that are clearly not related to an election and do not promote or attack candidates. I also endorse that discussion, which appears in the RECORD of February 13, 2002, at pages H410–411.

Mr. McCAIN. I agree with my friend from Wisconsin that these statements express our intent in this bill quite well.

SECTION 301

Mr. LIEBERMAN. Madam President, can the sponsors clarify section 301 of the bill concerning the conversion of campaign funds to personal use, and in particular whether any change from current law was intended concerning the ability of candidates to transfer excess campaign funds to their parties?

Mr. FEINGOLD. Section 301 of the bill amends 2 U.S.C. section 439a to specify which candidate expenditures from campaign funds would be considered an unlawful conversion of a contribution or donation to personal use. The language continues to allow candidates to use excess campaign funds for transfers to a national, State or local committee of a political party. It is the intent of the authors that—as is the case under current law—such transfers be permitted without limitation. Furthermore, while the provision is intended to codify the FEC's current regulations on the use of campaign funds for personal expenses, we do not intend to codify any advisory opinion or other current interpretation of those regulations.

SOFT MONEY FINANCING OF STATE PARTY OFFICE BUILDINGS

Mr. THOMPSON. Madam President, I note that the bill deletes a provision of current law that permits national party committees to raise soft money to pay for their office buildings. Can the sponsors discuss the intent of the law concerning the raising of non-Federal money by State parties for their office buildings?

Mr. FEINGOLD. The Senator is correct that as part of the soft money ban, the legislation deletes language in current law expressly excluding donations to a national or state party committee specifically to finance the purchase or construction of a party office building from the definition of ''contribution.'' Accordingly, a national party committee may no longer receive non-Federal donations for the purpose of purchasing or constructing any party office building, or for any other purpose.

Likewise, Federal law will no longer allow a State or local party committee to receive non-Federal donations to purchase or construct a State or local party office building where such donations would violate that State's laws relating to permissible sources and amounts of non-Federal donations to such a party committee.

The bill does not, however, regulate State or local party expenditures of non-Federal donations received in accordance with State law on purchasing