# Federal Election Commission Advisory Opinion Number 1988-22

[Back to Federal Election Commission Advisory Opinions Search Page](#)

[Federal Election Commission Main Page](#)

    July 5, 1988
    CERTIFIED MAIL
    RETURN RECEIPT REQUESTED
    ADVISORY OPINION 1988-22
    J. Miles Reid
    McCormick, Barstow, Sheppard, Wayne a Carruth
    P.O. Box 24013
    Fresno, California 93779-4013
    Dear Mr. Reid:
    This responds to your letters of March 31 and May 4, 1988, requesting an advisory opinion on behalf of the San Joaquin Valley Republican Associates ("Republican Associates") concerning application of the Federal Election Campaign Act of 1971, as amended (the "Act"), and Commission regulations to proposed activities involving operation of a library, publication of a newsletter, and sponsorship of debates and luncheons.
    Your letters explain that Republican Associates is a non-profit, non-member, mutual benefit corporation under California law, and is prohibited by its charter from engaging in "business activities." You state that Republican Associates is a tax exempt "political organization" under section 527 of the Internal Revenue Code, and that all of its income has been for tax-exempt functions, but that its charter does not permit it to endorse or financially contribute to political candidates.1/ You also state that Republican Associates may eventually seek to change its status from a section 527 organization to a section 501(c)(4)

    1/ The term "Political organization" is defined by the Code as "a party, committee, association, fund, or other organization (whether or not incorporated) organized and operated primarily for the purpose of directly or indirectly accepting contributions or making expenditures, or both, for an exempt function"; "exempt function" is defined as "influencing or attempting to influence the selection, nomination, election, or appointment of any individual to any Federal, State, or local public office or office in a political organization ..." 26 U.S.C. SS 527(e)(1) and (2).

    organization under the Code. As a 501(c)(4) organization, Republican Associates would be precluded by the general prohibitions of 2 U.S.C. SS 441b from financing activity "in connection with" Federal elections from its general corporate

treasury. A section 501(c)(4) organization may, however, make expenditures and contributions to influence Federal elections through a separate segregated fund. 2 U.S.C. SS 441b(b)(2). See Advisory Opinion 1984-17.

You state that Republican Associates was formed for the express purpose of promoting political ideas, that it has "no ties" to any political party and, as previously noted, that it is "unable to endorse or make financial contributions to any political candidate." Republican Associates' "Articles of Incorporation" describe its "specific purpose" as being "to help elect more Republicans to office by enhancing significantly the visibility of the Republican Party, Republican ideas, Republican thought and Republican personalities within the San Joaquin Valley of California."

You propose to engage in four types of activities that, as discussed below, may involve the providing of some benefit to candidates for Federal office: publication and distribution of a Periodical newsletter, sponsorship of luncheons, sponsorship of debates and operation of a "campaign" library. You ask whether, under the Act and regulations, the financing of such activities by Republican Associates would constitute "contributions" to or "expenditures" on behalf of any candidates for Federal office, and, if it finances such activities, whether receipts of Republican Associates would constitute "contributions" to it.

Under the Act and Commission regulations, the term "contribution" means any gift, subscription, loan, advance, or deposit of money or anything of value made by any person for the purpose of influencing any election for Federal office. 2 U.S.C. SS 431(8)(A); 11 CFR 100.7(a)(1). Similarly, the term "expenditure" is defined to include any purchase, payment, distribution, loan, advance, deposit, or gift of money or anything of value, made by any person for the purpose of influencing any election for Federal office. 2 U.S.C. SS 431(9)(A); 11 CFR 100.8(a)(1). Contributions to candidates, whether made in monetary form or "in-kind," are subject to limitation under 2 U.S.C. SS 441a(a). Moreover, expenditures by any person in cooperation, consultation or concert with a candidate are considered contributions to that candidate. 2 U.S.C. SS 441a(a)(7)(B)(i).

Your questions necessarily raise another issue: if the proposed activities or any other activities engaged in by Republican Associates are considered to involve contributions or expenditures "for the purpose of influencing any election for Federal office" under the Act and are made or received in amounts in excess of $1000 in a calendar year, Republican Associates would then be subject to registration and reporting requirements as a "political committee" under the Act. 2 U.S.C. SS 431(4)(a); 11 CFR 100.5(a).2/ For purposes of this opinion, the Commission is not treating Republican Associates as a subordinate committee of a State committee of a political party (see 2 U.S.C. SS 441a(d)) or a local committee of a political party (see 2 U.S.C. SS 431(4)(C); 431(8)(B)(v), (x), (xii); 431(9)(B)(iv), (viii), (ix)). See also

11 CFR 110.7(b), (c); 100.5(e)(4); 2 U.S.C. SS 441a(a)(5) ; 11 CFR 100.5(g).

Your request also broadly raises the question of whether Republican Associates falls within the exemption from the Act's prohibition against corporate contributions or expenditures "in connection with" federal elections prescribed by the U.S. Supreme Court for independent spending by certain incorporated political organizations. FEC v. Massachusetts Citizens for Life, Inc., 107 S.Ct. 616 (1986) ("MCFL"). See 2 U.S.C. SS 441b. Your description of Republican Associates generally tracks the three features" of MCFL that the Court found "essential" to its holding: 1) formed for the express purpose of promoting political ideas and not engaged in business activities, 2) having no shareholders or other' persons affiliated so as to have a claim on

2/ Commission regulations permit a political committee that finances political activity in connection with Federal, State and local elections to either establish a separate Federal account that is used for all its receipts and disbursements in Federal elections or to establish a political committee that will receive only contributions subject to the prohibitions and limitations of the Act. 11 CFR 102.5(a)(1). Where a political committee establishes a separate Federal account, such an account shall comply with the registration and reporting requirements of the Act. See generally 11 CFR Parts 102 and 104. Only funds subject to the prohibitions and limitations of the Act shall be deposited in such separate Federal account. 11 CFR 102.5(a)(2). All disbursements, contributions, expenditures, and transfers by the committee in connection with any Federal election shall be made from its Federal account. Moreover, no transfers may be made to the Federal account from any other account maintained by such organization for the purpose of financing activity in connection with non-federal elections. 11 CFR 102.5(a)(1). Pursuant to 11 CFR 106.1(c) ,administrative expenses shall be allocated between the Federal account and any other account maintained by the political committee for the purpose of financing activity in connection with non-federal elections. 11 CFR 102.5(a)(1)(i).

its assets or earnings and 3) not established by nor accepting donations from, business corporations or labor unions (under one of two hypothetical "alternatives" that your request proposes for your sources of funding). MCFL, 107 S.Ct. at 631.

The Commission concludes, however, that Republican Associates would not be entitled to the exception drawn in MCFL that exempts "independent" spending of voluntary political organizations from either the prohibitions of SS 441b or the requirements of registering and reporting a "political committee." First, the Commission observes that some of Republican Associates' proposed activity on behalf of candidates would not be "independent expenditures," but rather would involve coordination with candidates and result in "in-kind contributions" to candidates.

Second, and more importantly, the Court in MCFL was addressing political organizations "that only occasionally engage in independent spending on behalf of candidates." Id. at 630. The Court stated:

> [S]hould MCFL's independent spending become so extensive that the organization's major purpose may be regarded as campaign activity, the corporation would be classified as a political committee ... As such, it would automatically be subject to the obligations and restrictions applicable to those groups whose primary objective is to influence political campaigns.

Id. Therefore, Republican Associates will be required to register a political committee, or register itself as a political committee, if its proposed activity, or any other political activity it conducts, constitutes contributions or expenditures under the Act and crosses the $1000 per year threshold.3/

1. Republican Associates Newsletter

Republican Associates proposes to publish and distribute a monthly or quarterly newsletter that will discuss political events and activity that may be of interest to supporters of the Republican party, including discussions of candidates and campaigns for Federal office and opportunities for involvement in such campaigns. As your request suggests, and the newsletter examples you provided indicate, discussions of candidates may

---

3/ The Commission notes that its regulations specifically allow political committees to incorporate "for liability purposes only." 11 CFR 114.12(a). See 26 U.S.C. SS 527(e)(1).

---

not, or need not necessarily, include statements of actual endorsement or explicit advocacy, but may include statements generally supporting or promoting Republican candidates or criticizing their Democratic opponents. The newsletter will also regularly feature a calendar which lists meetings and events sponsored by various candidates for Federal and other elective offices, by political party organizations, and by Republican Associates itself. Republican Associates will distribute the newsletter to persons who are contributors, who have attended previous Republican Associates' events, and who are prospects for contributing or attending in the future.

Preliminarily, the Commission notes that the proposed newsletter would not appear to fall within the exception to the definition of "expenditure" known as the "press exemption." 2 U.S.C. SS 431(9)(B)(i). It does not seem from your description that the newsletter would be a regularized periodical deriving revenues from subscriptions or advertising, but rather a free communication that Republican Associates will send out to

encourage continued or potential financial and organizational support from among the general public. See Advisory Opinion 1980-109. Furthermore, if Republican Associates' activities trigger registration and reporting requirements as a political committee under the Act, the express statutory language of the "press exemption" excludes publications of political committees. Also, Commission regulations state that expenditures made on behalf of more than one candidate shall be attributed to each candidate in proportion to, and shall be reported to reflect, the benefit reasonably expected to be derived. 11 CFR 106.1(a). In previous advisory opinions involving political party committee newsletter activities, the Commission concluded that a reasonable allocation basis would be the percentage of column inches or space in the newsletter which pertained to Federal elections or candidates for Federal office. Advisory Opinions 1981-3 and 1978-46. Accordingly, payment for costs associated with those candidate-related statements or references in Republican Associates' newsletters that should be attributed to Federal candidates as "contributions" or "expenditures" under the Act should be allocated to those candidates or to a Federal "account," as discussed below, based on column inches in the newsletter or on some other reasonable basis that reflects the benefit reasonably expected to be derived.

The Commission concludes that differing legal consequences will result under the Act and regulations for candidate-related statements or references appearing in the proposed newsletters, depending upon the nature of the statement and whether such statement is made in coordination with the Federal candidate to whom the statement refers. As described below, those consequences determine whether the costs incurred in publishing the newsletters containing such statements or references will be considered to be contributions to or expenditures on behalf of, and, therefore, allocable to, candidates for Federal office, and further determine if or how such costs must be reported to the Commission and whether those costs count toward the threshold for incurring political committee obligations.

a. Independent expenditures.

If statements, comments or references regarding clearly identified candidates appear in the newsletter and expressly advocate their election or defeat, or solicit contributions on their behalf, and such communications are not made with the cooperation, consultation or prior consent of, or at the request or suggestion of, the candidates or their agents, then the payments for the allocable costs incurred in making the communications will constitute "independent expenditures" on behalf of the identified candidates. 2 U.S.C. SS 431(17); 11 CFR 109.1. See Advisory Opinion 1979-80. All such payments count toward the $1000 political committee threshold for registration and reporting requirements, since they constitute "expenditures" on behalf of candidates under the Act.

If such expenditures on behalf of any one candidate exceed

$250 and Republican Associates has not otherwise qualified or does not thereby qualify for reporting obligations as a political committee, then the payments must be reported by letter or other communication to the Commission as an "independent expenditure" on behalf of that candidate or candidates; if such expenditures on behalf of any one candidate do not exceed $250, and Republican Associates does not qualify for reporting obligations as a political committee, then no reporting obligation is incurred on the basis of that activity alone. 2 U.S.C. SS 434(c)(1) and (2); 11 CFR 105.4 and 109.2.

If Republican Associates qualifies for reporting obligations as a political committee, such payments to any person aggregating in excess of $200 in a calendar year must be reported on Schedule E as itemized "independent expenditures" on behalf of that candidate or candidates, and such payments to any person not exceeding $200 in a calendar year must be reported on Schedule E as unitemized. 2 U.S.C. SS 434(b)(6)(B)(iii); 11 CFR 104.3(b)(3)(vii).

b. In-kind contributions.

If statements, comments or references regarding clearly identified candidates appear in the newsletter and are made with the cooperation, consultation or prior consent of, or at the request or suggestion of, the candidates or their agents, regardless of whether such references contain "express advocacy" or solicitations for contributions, then the payment for allocable costs incurred in making the communications will constitute "expenditures" by Republican Associates and "in-kind contributions" to the identified candidates. 2 U.S.C. SS 441a(a)(7)(B) . All such payments count toward the $1000 "political committee" threshold for registration and reporting requirements.

As presented by your proposed and sample newsletters, reportable "in-kind contributions" to candidates would include those instances where," in coordination with candidates, newsletters contained substantive statements generally favoring a candidate or criticizing his opponent or contained references to a candidate's campaign events in a scheduling feature. The Commission bases its conclusion on the presumption that the financing of a communication to the general public, not within the "press exemption," that discusses or mentions a candidate in an election-related context and is undertaken in coordination with the candidate or his campaign is "for the purpose of influencing a federal election." See Advisory Opinion 983-12. Such a communication made in coordination with a candidate presumptively confers "something of value" received by the candidate so as to constitute an attributable "contribution," even though the value of the benefit so conferred may be relatively minor. Given the nature and purposes of your organization as described in your request, it is unlikely that such a presumption of a "purpose of influencing a Federal election" could be rebutted with reference to newsletter activity undertaken in coordination with Federal

candidates. Compare Advisory Opinions 1982-56 and 1978-56.

c. Expenditures lacking express advocacy or coordination.

If statements, comments or references regarding clearly identified candidates appear in the newsletter and do not expressly advocate their election or defeat, nor solicit contributions on their behalf, and such communications are not made with the cooperation, consultation or prior consent of, or at the request or suggestion of, the candidates or their agents, then the payment for allocable costs incurred in making these types of communications will constitute operating expenses generally allocable to federal political activity. Payments for such communications are not specifically allocable to candidates, since they lack "express advocacy" or a solicitation for contributions so as to constitute "independent expenditures," and lack coordination with a candidate in their making, or any other indicia of receipt, so as to constitute "in-kind contributions."4/ Expenses associated with these communications nevertheless constitute "expenditures" for federal political activity within the meaning of the Act, so as to count toward the political committee threshold and to require reporting if made by a political committee.

Payments for these communications that are allocable to federal political activity must be made from funds raised permissibly under the Act and regulations. 11 CFR 102.5(a). If Republican Associates has qualified as a political committee, or crosses the $1000 threshold by engaging in this activity, payments for these communications must be made from a separate federal account or from a political committee which has accepted only contributions subject to the prohibitions and limitations of the Act. 11 CFR 102.5 (a)(1). If Republican Associates does not qualify as a political committee and does not maintain a federal account, it must be able to demonstrate through a reasonable accounting method that sufficient funds permissible under the Act were received by it to permit payments for these communications. 11 CFR 102.5(b)(1)(ii).

Republican Associates Sponsored Luncheons

You state that Republican Associates will sponsor monthly luncheons for those persons who receive the newsletter. Republican Associates will charge attendees an amount that covers the cost of the lunch and the facilities and will keep any excess revenue. The luncheons will feature speakers, some of whom may be candidates for Federal office. Candidates will be permitted to make their literature available, but no campaign posters or other political decorations will be permitted in the facility. Additionally, Republican Associates will request that candidates not solicit contributions, but will permit requests for campaign volunteers.

A payment of costs to sponsor and finance public appearances by candidates for Federal office that are "campaign-related" is considered made "for the purpose of influencing Federal elections"

4/ The previously cited opinions regarding allocation of newsletter expenses to candidates, Advisory Opinions 1981-3 and 1978-46, involved political party committees, for which coordination with candidates is presumed and "independence" precluded. See FEC v. Democratic Senatorial Campaign Committee, 454 U.S. 27, 28, n.1, (1981).

and to constitute a "contribution" to or "expenditure" on behalf of such candidates, unless such payment is specifically exempted by the Act or regulations. See Advisory Opinions 1986-37 and 1986-26. As sponsor of these luncheons, Republican Associates appears to be responsible for payment of the costs associated with the event and will keep any profits and, presumably, cover any shortages arising out of the receipts from luncheon attendees. The Commission has considered the nature and purposes of an event sponsored by a group and involving the active participation of a candidate for Federal office to determine if such an event is campaign-related. The Commission has stated that if an event involves (i) the solicitation of political contributions or (ii) the express advocacy of a candidate's election or defeat, then the event would be viewed as a campaign event for the purpose of influencing a Federal election; the Commission has also concluded that the absence of express advocacy or solicitations will not preclude a determination that public appearances are campaign-related. See Advisory Opinions 1986-37, 1984-13, 1982-50, and 1982-16.

The active participation by candidates for Federal office as featured speakers at luncheons sponsored by Republican Associates would involve coordination with the candidate in the providing to and receipt of a benefit for the candidate. Payment of the costs of such an appearance would presumptively constitute a "contribution" by Republican Associates to the candidate. Given the nature and purposes of your organization as described in your request, it is unlikely that such a presumption of a "purpose of influencing a Federal election" could be rebutted with reference to your sponsoring of candidate appearances. Compare Advisory Opinions 1931-37, 1981-26, 1930-89 and 1978-4. Payments for luncheon expenses constituting "contributions" to candidates would, of course, count toward the $1000 threshold for qualifying as a political committee and be reportable.

Republican Associates Sponsored Debates

Republican Associates proposes to sponsor and finance debates between candidates for Federal office. In advance of the debates, you will request that candidates not make any solicitation for contributions, but candidates will be permitted to make requests for campaign volunteers.

Commission regulations provide that payments made by a qualified non-profit corporation to finance a nonpartisan candidate debate are exempted from the definition of "contribution" or "expenditure" under the Act. 11 CFR 100.7(b)(21) and 100.3(b)(23). See also 11 CFR 110.13 and

114.4(e). Your request indicates that you are "contemplating seeking status as a 501(c)(4) organization" but are not presently a qualified nonprofit corporation within this exemption. Therefore, sponsorship by Republican Associates of debates involving candidates for Federal office would be considered in the same manner asسponsorship of candidate appearances (discussed above), with an increased likelihood that such appearances would be viewed as campaign-related and that payments to fund such appearances would constitute "contributions" to the participating Federal candidates.

Republican Associates Library

Republican Associates proposes to maintain a library composed of publications concerning "campaign management" and clippings from newspapers and other periodicals related to political events, personalities and issues. Republican Associates will also obtain lists of campaign contributors and registered voters from public records and make those lists available to interested persons. Although use of library materials will be free of charge to all registered Republicans, persons using the library must pay for all copies requested, and Republican Associates will not conduct any research activities on behalf of candidates.

The Commission concludes that funding of a "campaign" library by Republican Associates would constitute general administrative expenses, incurred in the context of its day-to-day operation, and not "contributions" or "expenditures" attributable to any particular Federal candidate. See 11 CFR 106.1(c). If Republican Associates meets the threshold for "political committee" reporting obligations, the operating expenses incurred by Republican Associates to maintain the library would require allocation between federal and non-federal functions on a reasonable basis, and must be so reported. See 11 CFR 106.1(e). The allocable federal share of such expenses must be paid from funds raised permissibly under the Act and regulations for financing federal political activity, and made from a separate federal account or as a political committee which has accepted only contributions subject to the prohibitions and limitations of the Act. See 11 CFR 102.5. Furthermore, the Commission concludes that if Republican Associates provides additional library services for a federal candidate that result from the request of or coordination with such candidate, any additional expenses incurred in providing such services would be attributable to that candidate as an in-kind contribution. See 11 CFR 106.1(a) and 106.1(c).

This response constitutes an advisory opinion concerning application of the Act, or regulations prescribed by the Commission, to the specific transaction or activity set forth in your request.