# Federal Election Commission Advisory Opinion Number 1990-5

[Back to Federal Election Commission Advisory Opinions Search Page](#)

[Federal Election Commission Main Page](#)

April 27, 1990

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

ADVISORY OPINION 1990-5

Margaret R. Mueller
8848 Music Street
Novelty, Ohio 44072

Dear Ms. Mueller:

This responds to your letters dated March 12, 1990, and March 24, 1990, requesting an advisory opinion concerning the application of the Federal Election Campaign Act of 1971, as amended ("the Act"), and Commission regulations to publication of a newsletter discussing public policy issues during your campaign for Federal office.

You state that you are a Republican candidate for the U.S. House of Representatives in the 11th District of Ohio, and that you also ran for that seat in 1986 and 1988.1/ Since March of 1989, Music Street Publishing Company, which you own, has been publishing a monthly newsletter called "SPEAKOUT!" You state the newsletter is intended to provide a non-partisan forum for persons whom you met during the 1988 campaign for Congress to speak out on community and governmental problems and issues of general public interest.

Articles appearing in the newsletter have included opinion pieces (including many written by you) dealing with different issues of public concern, such as drug use, taxes, toxic waste cleanup and other environmental matters, and, in particular, Congressional term limitation. Some articles specifically refer to problems in the 11th Congressional District or the northeast corner of Ohio.2/ You write

----------
1/ Your Statement of Candidacy and a Statement of Organization for the 1990 election campaign were received by the Clerk of the House on March 27, 1990. It appears from your filings that your principal campaign committee for the 1986 and 1988 elections will continue to function

as your principal campaign committee for 1990.

2/ For example, the February, 1990, issue contains an article on the growing of marijuana in the district entitled "11th District Shocker," and a questionnaire which includes a question making reference to toxic waste dumps in the 11th District.

monthly editorials expressing your views that are intended to encourage differing responses. Newsletters also contain humor pieces, lists of little known facts, investment advice and other miscellaneous information, and most issues have also included a notice of a SPEAKOUT! meeting to be held each month.

The newsletter has contained several articles regarding Congressional term limitation that were reprinted from other sources and headlined with the title of an organization named "Coalition to End the Permanent Congress."3/ You have also published an article soliciting donations to the group and an editorial written by you endorsing the group's positions on issues. You say you wish to continue to use the name of the organization in the newsletter.

You state that newsletter publication has been funded by your personal funds and through the sale of advertisements.4/ According to the newsletters' masthead, a subscription may be purchased at a price of $20 for 12 monthly issues.

You say you "want to keep the paper going because it is just catching on after a year," and that you would continue publishing the newsletter regardless of whether you are elected to Congress. You state that, during the present campaign, you will "keep it nonpartisan and probably emphasize local and state issues so the paper does not get clouded with federal issues which might be related to my running." It appears, therefore, that you wish to continue your publication as an activity unrelated to the campaign.

You ask whether you may continue publishing the newsletter during your 1990 campaign for Congress. Your request raises the question of whether the Commission considers operating expenses of publishing your newsletter to be expenditures for the purpose of influencing a Federal election under the Act and, therefore, whether payments for such expenses by any person constitute contributions to a Federal candidate under the Act. 2 U.S.C. Sc431(8)(A)(i) and Sc431(9)(A)(i); 11 CFR

----------

3/ You describe the organization, of which you are a board member, as a bipartisan group advocating the limiting of Congressional tenure to 12 years, outlawing political action committees and cutting the franking privilege. You state that the Coalition "has no money to support any candidate"

but "would favor anyone who would End the Permanent Congress." The Commission assumes from your description that the Coalition is not engaged in supporting the election or defeat of specific Federal candidates and is not a "political committee" under the Act.

4/ You state that "no big corporations" have placed ads and that the advertisers have been small businesses. A review of the newsletters submitted by you indicates that a number of advertisements have been paid for by corporations.

100.7(a)(1) and 100.8(a)(1).5/ Your inquiry presents the Commission with the difficult task of reconciling your status as a candidate for Federal office with the assertedly nonpartisan nature of your proposed newsletter publication and distribution activity.

The Commission has frequently considered whether particular activities involving the participation of a Federal candidate, or communications referring to a Federal candidate, result in a contribution to or expenditure on behalf of such a candidate under the Act. The Commission has determined that financing such activities will result in a contribution to or expenditure on behalf of a candidate if the activities involve (i) the solicitation, making or acceptance of contributions to the candidate's campaign, or (ii) communications expressly advocating the nomination, election or defeat of any candidate. Advisory Opinions 1988-27, 1986-37, 1986-26, 1982-56, 1981-37, 1980-22, 1978-56, 1978-15, 1977-54 and 1977-42. The Commission has also indicated that the absence of solicitations for contributions or express advocacy regarding candidates will not preclude a determination that an activity is "campaign-related." Advisory Opinions 1988-27, 1986-37, 1986-26, 1984-13 and 1983-12.

In prior opinions, the Commission has concluded that contributions or expenditures for Federal candidates would not result in circumstances involving candidates serving as chairpersons of political, charitable and issue advocacy organizations (Advisory Opinions 1978-56, 1978-15, and 1977-54, respectively), a candidate appearance endorsing a candidate for local office in television advertisements (Advisory Opinion 1982-56), and a candidate hosting a radio public affairs program (Advisory Opinion 1977-42). The Commission has rarely faced the question of whether candidate involvement is campaign-related, however, in the factual context of activity sponsored or funded by the candidate personally.6/

----------
5/ The publication of a newsletter or small newspaper raises the issue of application of the exemption from treatment as an expenditure or contribution for newspapers, magazines or other regularly published periodicals ("press exemption"). 2 U.S.C. Sc431(9)(B)(i); 11 CFR 100.7(b)(2) and 100.8(b)(2). See

Advisory Opinion 1980-109. The express statutory language of the exemption, however, excludes publications owned by the candidate. By its own terms, the "press exemption" would not be applicable to your newsletter under the facts you have presented.

6/ Advisory Opinion 1978-72 involved a candidate who proposed to publish and sell pamphlets, on a nationwide basis, that set out his views on several philosophical questions. The Commission concluded that receipts from sales of the pamphlets would not constitute contributions under the Act, nor would payments by the candidate be expenditures, as long as the contents of the pamphlets, and advertising for them, did not include solicitations for the candidate's campaign or express advocacy of the election or defeat of any clearly identified

In Advisory Opinion 1983-12, the Commission reviewed a group's proposal to produce and air television commercials that included footage of particular U.S. Senators, comments about a Senator's record in office and a message congratulating the citizens of the appropriate state for having elected their Senator. The Commission observed in that opinion:

... the Commission has recognized that even though certain appearances and activities by candidates may have election related aspects and may indirectly benefit their election campaigns, payments by non-political committee entities to finance such activity will not necessarily be deemed to be for the purpose of influencing an election.

The Commission distinguished its prior opinions to conclude, however, that the portion of the proposed activity involving participation of candidates or their campaigns in providing the film footage would render advertisements produced and aired in cooperation with the candidates contributions for the purpose of influencing those candidates' elections under the Act. Several factual elements presented in that request were signficant in the Commission reaching its conclusion: the requestor was a political committee actively engaged in making contributions to or expenditures on behalf of candidates; the content of the proposed advertising messages made reference to the Senators' previous election and the voters' role in electing a praiseworthy officeholder; the ads were to be run during the time period preceding the 1984 elections; and the activity in question "[did] not appear to have any specific and significant non-election related aspects that might distinguish it from election influencing activity." Compare Advisory Opinion 1984-13 (Congressional candidates of one political party invited to speak at a meeting of an incorporated trade association).

The significance of candidate involvement in activity for which an
inference of campaign purpose could be drawn was also noted by the
Commission in Advisory Opinion 1988-22, involving proposed newsletter
activities by a partisan organization. The Commission described the
following legal consequences of activity undertaken in coordination
with a candidate's campaign:

If statements, comments or references
regarding clearly identified candidates appear
in the newsletter and are made with the

----------
(Footnote 6 continued from previous page)
candidate. The Commission viewed receipts from the endeavor
as "earned business income," and noted the requestor's
assertion that "very little of the proceeds or political
effect would be applicable to [his] local campaign."

cooperation, consultation or prior consent of,
or at the request or suggestion of, the
candidates or their agents, regardless of
whether such references contain "express
advocacy" or solicitations for contributions,
then the payment for allocable costs incurred
in making the communications will constitute
"expenditures" by [the organization] and
"in-kind contributions" to the identified
candidates. 2 U.S.C. Sc441a(a)(7)(B) ...
As presented by your proposed and sample
newsletters, reportable "in-kind
contributions" to candidates would include
those instances where, in coordination with
candidates, newsletters contained substantive
statements generally favoring a candidate or
criticizing his opponent or contained
references to a candidate's campaign events in
a scheduling feature. The Commission bases
its conclusion on the presumption that the
financing of a communication to the general
public, not within the "press exemption," that
discusses or mentions a candidate in an
election-related context and is undertaken in
coordination with the candidate or his
campaign is "for the purpose of influencing a
federal election." See Advisory Opinion
1983-12. Such a communication made in
coordination with a candidate presumptively
confers "something of value" received by the
candidate so as to constitute an attributable
"contribution," even though the value of the
benefit so conferred may be relatively minor.

Given the nature and purposes of your
organization as described in your request, it
is unlikely that such a presumption of a
"purpose of influencing a Federal election"
could be rebutted with reference to newsletter
activity undertaken in coordination with
Federal candidates. Compare Advisory Opinions
1982-56 and 1978-56.

Here, publication of the newsletter has been originated,
sponsored, implemented and funded by you, a current candidate for
Federal office. SPEAKOUT! was apparently inspired by your experiences
as a previous candidate for Congress. It is sent primarily to persons
whom you encountered during your prior campaign, many of whom may be
potential supporters of your candidacy. Persons involved in your
campaign for Congress are also apparently involved in publishing your
newsletter. The contents of the newsletters include articles
concerning public policy issues that may broadly be related to local
and national political concerns, including the makeup of Congress.
Therefore, any reference to or discussion of your candidacy or
campaign in the newsletter, or presentation of policy issues or
opinions closely associated with you or your campaign, would be
inevitably perceived by readers as promoting your candidacy, and
viewed by the Commission as election-related and subject to the Act.

Editions of the newsletters that you have distributed thus far do
not mention your candidacy or campaign for Congress, and, taken alone,
may not reveal an apparent or objectively recognizable "purpose to
influence" your Congressional race or any particular election to
Federal office.7/ The content of the newsletters does suggest other
significant purposes of informing the public about current issues of
public interest and encouraging discussion of such issues.8/ Although
these purposes are not inherently election-related activity and
publication of your newsletter is an ongoing enterprise, continued
publication of the newsletter since you have become a candidate could
potentially be used to advance your candidacy.

The Commission concludes that the expenses incurred in the
publication and distribution of your proposed newsletters would be
considered expenditures for the purpose of influencing your election
to Congress if: (1) direct or indirect reference is made to the
candidacy, campaign or qualifications for public office of you or your
opponent; (2) articles or editorials are published referring to your
views on public policy issues, or those of your opponent, or referring
to issues raised in the campaign, whether written by you or anyone

----------

7/ You submitted a copy of a March, 1990, issue which was
printed but not distributed. This issue contained a front
page article announcing your 1990 candidacy for Congress and
featuring your picture, and a full-page article written by

your husband advocating your candidacy. The article
announcing your candidacy contains a statement of your
platform that refers to the Coalition to End the
Permanent Congress. You state that you had 10,000 copies
of this issue printed, but that you sent none out and threw
them away. Instead, you sent out an issue that contained
no references to your candidacy.

8/ Disseminating information and expressing viewpoints
about issues of public policy and community interest are, of
course, strongly protected elements of free speech under
the First Amendment. Buckley v. Valeo, 424 U.S. 1,
42, n. 50 (1976). The U.S. Supreme Court has upheld the
jurisdiction of the FECA in regulating the financing of
similar speech when engaged in by candidates for Federal
office, or groups supporting Federal candidates, "for the
purpose of influencing a Federal election." 2 U.S.C.
Sc431(9)(A)(i); see Buckley, supra, at 46-7, n. 53.
Although the Commission cannot ignore a campaign-related
purpose for types of activity for which no other purpose is
plausible, neither can it impute such purpose to
Constitutionally protected activity lacking an identifiable
nexus to support of a candidate.

else;9/ or (3) distribution of the newsletter is expanded
significantly
beyond its present audience, or in any manner that otherwise indicates
utilization of the newsletter as a campaign communication. The
Commission concludes that each edition of the newsletter should be
viewed separately and in its entirety in determining whether a
newsletter would be considered an expenditure for your campaign. Any
campaign-related content within a particular edition would render
expenses of publishing that edition a campaign expenditure.10/

Publication and distribution of issue content newsletters on an
ongoing basis, and absent the elements described above, would not be
viewed as conferring recognizable benefit or value upon your campaign
for Congress sufficient to invoke the jurisdiction of the Act. The
Commission would not necessarily view continued distribution of this
type of newsletter as campaign-related activity, constituting
expenditures under the Act, however, simply because you have been
identified with its creation or serve as its editor, or because your
name continues to be identified on its masthead as its editor.
Advisory Opinions 1978-56, 1978-15 and 1977-54. See also Advisory
Opinion 1985-38.

You may, of course, publish campaign-related editions of the
newsletter as an activity of the campaign. Your committee would then
assume the costs for that newsletter edition, either directly making
the payments to the providers of goods and services for the newsletter
or paying the Music Street Publishing Company for the expenses in

publishing that issue. In order to avoid a prohibited corporate contribution by the publishing company, the committee must make its payments to the publishing company within a commercially reasonable time. Payments for the production and circulation of the newsletter would be operating expenditures of your campaign committee and reported as such. In addition, payments for advertising space in campaign-related newsletters would be contributions to the campaign and, if made from a corporate source, would be prohibited. 2 U.S.C. Sc441b; 11 CFR 114.2. See Advisory Opinion 1985-39.

This response constitutes an advisory opinion concerning

----------
9/ For example, publication of articles or editorials about the issue of Congressional term limitation or related to the Coalition to End the Permanent Congress would be considered campaign-related, due to your focus upon that issue in your campaign for Congress and your candidacy's association with that organization.

10/ The Commission considered an alternative analysis under which only those portions of a particular newsletter issue that might be viewed as campaign-related would be allocable as a campaign expenditure. The Commission distinguished that allocation approach, due to your involvement in the entirety of the newsletter operation. Compare Advisory Opinions 1988-22, 1981-3 and 1978-46 (publishing of newsletters by partisan organization or party committees).

application of the Act or regulations prescribed by the Commission to the specific transaction or activity set forth in your request. See 2 U.S.C. Sc437f.

Sincerely,

(signed)

Lee Ann Elliott
Chairman for the
Federal Election Commission

Enclosures (AOs 1988-27, 1988-22, 1986-37, 1986-26, 1985-39, 1985-38, 1984-13, 1983-12, 1982-56, 1981-37, 1981-3, 1980-109, 1980-22, 1978-72, 1978-56, 1978-46, 1978-15, 1977-54, and 1977-42)