# Federal Election Commission Advisory Opinion Number 1983-12

Back to Federal Election Commission Advisory Opinions Search Page

Federal Election Commission Main Page

June 13, 1983
CERTIFIED MAIL
RETURN RECEIPT REQUESTED
ADVISORY OPINION 1983-12
J. Curtis Herge, Esq.
Sedam & Herge
8300 Greensboro Drive
McLean, Virginia 22102
Dear Mr. Herge:
This responds to your letter of March 23, 1983, supplemented
by your letter of April 12, 1983, requesting an advisory opinion
on behalf of your client, the National Conservative Political
Action Committee ("NCPAC"), concerning application of the Federal
Election Campaign Act of 1971, as amended ("the Act"), to a
proposed Constituent Congratulations Program.
According to your request, NCPAC proposes to produce and
broadcast a series of thirty second television messages about
incumbent U.S. Senators. These TV spots will be shown in 1983
and 1984. You state that the scripts of the proposed messages
will be substantially similar to the following:

Visual                          Voice
Footage of Member's             In (year of election), (name
Inaugural                       of state) elected (name of
                                Member) to be its represen-
                                tative in Washington, D.C. as
                                (name of state) United States
                                Senator.
Footage of Member               Since (year of election), U.S.
at Desk Working                 Senator (name of Member) has
                                supported legislation to help
                                (name of state).
Footage of Working              (Name of Member) has helped
Laborers                        bring defense contracts to
                                (name of state) ... This means
                                jobs for (name of state) and a
                                better military for America.
Footage of Member               (Name of Member) has fought to
                                make government more efficient
                                and less wasteful...saving
                                the people of (name of state)

tax dollars.
Congratulations (name of state),
you've elected a winner.
(Name of Member) works...for
(name of state).

You further state that film footage of the Senators to be used in the proposed messages will be obtained from various sources, including archives, television stations, and the Senators themselves.1/ You indicate that when film footage is obtained from the Senator, or when the Senator cooperates in the shooting of the film, the Senator will be advised as to the intended use of the film, will be provided a copy of the script of the proposed message, and will have the right to refuse to participate in the program.

In addition, you state that the Constituent Congratulations Program will be administered without respect to the candidacy or prospective candidacy of its subjects, although you decline to state how many of the proposed messages will have as their subjects Senators whose current terms of office expire in 1985.2/ You note that the Senators will be selected on the basis of whether, in NCPAC's view, "their records in Congress have been commendable." Based on this factual situation, you state your view that the cost of producing and broadcasting the messages would not constitute a contribution or an expenditure under the Act, and that any such costs should be considered only as disbursements and reported by NCPAC as such.

1/ With respect to film footage secured from archives or television stations, it is not clear from your request whether any coordination, consultation, or contact with the Senator would be necessary in order to use such film in the NCPAC program. Nor does the request indicate whether, even if not obligatory, such coordination would nevertheless occur.

2/ In your letter of April 12, 1983, responding to questions posed by the Office of General Counsel by letter of April 4, you declined to state the number of Senators, and the expiration dates of their current terms, who will be featured in the described NCPAC program.

The Commission notes initially that all of the subjects of the proposed broadcasts are incumbent members of the U.S Senate.3/ In addition, on the basis of your request, as supplemented, the Commission further assumes that the principal if not sole focus of the program will be Senators whose terms of office expire in 1985. (See footnote two.) Of the 33 Senators whose seats are up in 1984, two have publicly announced that they will not be seeking reelection. The remaining 31 have either filed statements of their 1984 candidacy pursuant to 2 U.S.C. SS 432(e) and (g), or have raised contributions or made expenditures with respect to 1984 which, in the aggregate, exceed

$5,000, thereby triggering 1984 candidate status. Thus, for purposes of this opinion the Commission will assume that all of the subjects of the proposed broadcasts are currently candidates under the Act.4/

Under the Act and Commission regulations, the term "contribution" means any gift, subscription, loan, advance, or deposit of money or anything of value made by any person for the purpose of influencing any election for Federal office. 2 U.S.C. SS 431(8); 11 CFR 100.7(a)(1). Similarly, the term "expenditure" is defined to include any purchase, payment, distribution, loan, advance, deposit, or gift of money or anything of value, made by any person for the purpose of influencing an election for Federal office. 2 U.S.C. SS 431(9) and 11 CFR 100.8(a)(1). Contributions to candidates whether made in monetary form or in kind are subject to limitation under 2 U.S.C. SS 441a(a). Moreover, under SS 441a(a) (7) (B) (i), expenditures by any person in cooperation, consultation, or concert with a candidate are considered contributions to that candidate and accordingly limited as contributions under SS 441a(a)(1) or (a)(2) to either $1,000 or $5,000 respectively.

The question presented by your request is whether payments by NCPAC for the proposed Constituent Congratulations Program

---

3/ In your letter of April 12, 1983, you state that NCPAC presently proposes that only members of the United States Senate be featured in the program.

4/ In view of the assumed 1984 candidate status of the Senators to be included in the NCPAC program, the Commission does not reach or address, either explicitly or by implication, any issues with respect to whether expenditures for the proposed programs would in other circumstances result in candidate status, or be attributed to the $5,000 thresholds for candidate status, under 2 U.S.C. SS 431(2) and 11 CFR 100.3(a).

---

would be considered as having been made for the purpose of influencing a Federal election and would therefore constitute both expenditures and contributions in-kind under the Act if made in coordination or consultation with a candidate. To the extent that coordination or consultation with the subject Senators will take place in order to obtain film footage for use in the broadcasts or for other purposes incident to the subject program, and in light of the facts presented in your request, the Commission concludes that any payments for the proposed messages would constitute expenditures by NCPAC and contributions in-kind to the featured candidates. See 2 U.S.C. SS 441a(a)(7)(B). On the other hand, to the extent film footage for the program does not consist of "campaign materials" and is obtained from, "archives" or "television stations"5/ without any cooperation, consultation, or contact with the subject Senator or any of his or her agents, and to the further extent the program is otherwise implemented without such involvement by the subject Senator or any of his or

her agents, then payments for the subject program would not come within 2 U.S.C. SS 441a(a)(7)(B) and thus would not be contributions in kind. Such payments would, however, be reportable disbursements by NCPAC. 2 U.S.C. SS 434(b)(4) and (b)(6)(B), 11 CFR 104.3(b)(3).
The Commission reaches this conclusion for a number of reasons. First, NCPAC's status as a political committee within the purview of the Act, and as a "political organization" for Federal income tax purposes, see 26 U.S.C. SS 527(e), support the inference that its payments to produce and broadcast the proposed messages are for the purpose of influencing the 1984 Senate elections. The purpose and functions of an organizational entity are material and relevant to the Commission's characterization of the underlying purpose of a specific activity or program of that entity. See Advisory Opinion 1978-56, copy enclosed, in which the Commission held that a national organization's expenses incident to the activities of a candidate, which he pursued in his capacity as chairman of the organization that did not participate in Federal elections, would not be considered contributions to the candidate or expenditures by the organization to influence his nomination.

5/ Since your request, as supplemented, neither describes nor explains the circumstances under which NCPAC may obtain film footage from "archives" or "television stations," nor gives the original source and content of such footage, the Commission does not reach any issues and expresses no opinion concerning the application of 2 U.S.C. SS 441a(a)(7)(B)(ii) to the subject program.

In addition, the content of the proposed messages indicate that an election influencing purpose undergirds the program. Each 30 second spot will prominently feature video footage of a Senator with mention of his or her name five times. The spots include eight verbal references to the State represented by the Senator and make explicit, complimentary comments congratulating the electorates in those states for electing the Senator in a prior election. The fact of a previous election is mentioned three times. These specific references to the Senator's identity, home state, past election, and commendable service to the state are in marked contrast to the cryptic, generalized mention of issues that occurs in the spots. Compare Advisory Opinion 1977-54 (copy enclosed), in which the Commission held that funds contributed by corporations (and others) to advocate opposition to ratification of the Panama Canal treaties would not be considered contributions, even though the issue advocacy campaign was headed by a Congressional candidate, because the focus of the issue advocacy was not limited to the candidate's electorate, and the issue advocacy campaign was not combined with electioneering by the candidate. For other examples of activities held not to be for the purpose of influencing an

election, even though involving the participation of an individual who was a candidate at the time, see Advisory Opinions 1978-4 and 1982-56, copies enclosed. Moreover, the timing of the proposed broadcast, which will be shown during the eighteen months prior to the 1984 general election, is another feature of the program supporting the view that the messages will be for the purpose of influencing a Federal election.

Finally, the Commission notes that the activity in question does not appear to have any specific and significant non-election related aspects that might distinguish it from election influencing activity. No such characteristics have been identified by the requestor. This contrasts sharply with situations considered by the Commission in several prior advisory opinions. For example, in Advisory Opinion 1981-37 (copy enclosed), the Commission held that where the purpose of an activity (in that case a public discussion program moderated by a Congressman) was not to influence the nomination or election of a candidate for Federal office but rather was in connection with the duties of a Federal officeholder, payments for advertising or sponsorship would not result in a contribution or expenditure under the Act. Similarly, in Advisory Opinion 1978-88 (copy enclosed), the fact that the purpose of a candidate's appearance was to make an appeal for funds for a charitable, nonpolitical purpose was central to the Commission's holding that no contribution to the candidate resulted from such an appearance. See also Advisory Opinion 1977-42 (copy enclosed), which recognized that an individual who was also a candidate could, under certain conditions, pursue employment with a broadcast station that would not be viewed as having an election influencing purpose.

Thus, the Commission has recognized that even though certain appearances and activities by candidates may have election related aspects and may indirectly benefit their election campaigns, payments by non-political committee entities to finance such activity will not necessarily be deemed to be for the purpose of influencing an election. The instant case is, however, distinguishable from the cited opinions. The Commission concludes that the proposed messages to be financed by NCPAC are designed to influence the viewers' choices in an election, and therefore the payments to produce and broadcast such programs must be considered to be for the purpose of influencing a Federal election. See Advisory Opinion 1980-106 (copy enclosed). Moreover, to the extent the stated coordination and consultation occurs in obtaining the film clips for NCPAC's use, the expenditures will also result in contributions by NCPAC to the respective Senate candidates who are featured. As contributions, the expenditures will be limited by 2 U.S.C. SS 441a(a). See 2 U.S.C. SS 441a(a)(7)(B) and compare Advisory Opinion 1981-44.

This response constitutes an advisory opinion concerning application of the Act, or regulations prescribed by the Commission, to the specific transaction or activity set forth in

your request. See 2 U.S.C. SS 437f.