| | | | |
|---|---|---|---|
|  | "Meyer, Matt" <Matt.Meyer@mail.house.gov><br>01/13/2006 05:50 PM | To<br>cc<br>bcc<br>Subject | "'coordination@fec.gov'" <coordination@fec.gov><br><br><br>Comments of BCRA Sponsors |

Attached please find comments on Notice 2005-28 from Sen. John McCain, Sen. Russ Feingold, Rep. Christopher Shays and Rep. Marty Meehan, the principal sponsors of the BCRA. A signed copy of the comments will be transmitted by fax.

The postal address for the Senators is "U.S. Senate, Washington, DC 20510" and for the Members of the House is "U.S. House of Representatives, Washington, DC 20515." The public e-mail addresses used by the members are generally not a good way to reach them directly.

If you have any questions, please contact Matt Meyer of Rep. Shays' staff at 202/225-5541. Thank you.



<<Sponsor Comments.DOC>>  Sponsor Comments.DOC

January 13, 2006

**By Electronic Mail**

Mr. Brad C. Deutsch
Assistant General Counsel
Federal Election Commission
999 E Street, NW
Washington, DC  20463

                    Re:    <u>Notice 2005–28</u>

Dear Mr. Deutsch:

      As the principal House and Senate sponsors of the Bipartisan Campaign Reform Act of 2002 ("BCRA"), we appreciate the opportunity to comment on the Commission's proposed changes to the rule governing coordination for purposes of the campaign finance laws.

      In BCRA, we included section 214 in order to repeal an earlier Commission regulation that, in our view, had far too narrowly construed the concept of "coordination."  That section of BCRA also directed the Commission to draft a new regulation on coordination that did not include the narrow and inappropriate limitation that coordination cover only situations where there is a formal collaboration or agreement between a candidate and a spender.  As Senator McCain said on the Senate floor:

> Section 214 represents a determination that the current FEC regulation is far too narrow to be effective in defining coordination in the real world of campaigns and elections and threatens to seriously undermine the soft money restrictions contained in the bill.

148 Cong.Rec. S2145 (daily ed. March 20, 2002).  Similarly, Senator Feingold noted:

> This current FEC regulation fails to cover a range of de facto and informal coordination between outside groups and candidates or parties that, if permitted, could frustrate the purposes of the bill…. To remedy this problem, the bill requires the FEC to reexamine the coordination issue and promulgate new coordination rules.  *These rules need to make more sense in the light of real life campaign practices than do the current regulations.*

2

*Id.* at. S2144-45 (emphasis added).

When the Commission undertook its post-BCRA rulemaking to implement the requirement of section 214, we submitted comments that set forth our view on what would constitute effective and appropriate regulations for the coordination standard to remedy the serious problems in the flawed regulations repealed by Congress. We attach those comments here, and re-submit them for the record in this rulemaking.

In repealing an ineffective coordination standard and directing the Commission to issue a new one, we did not intend for the Commission to issue a rule that was, in important ways, even weaker than the one Congress repealed. Yet that is what the Commission did. As the D.C. Circuit Court of Appeals said about the Commission's post-BCRA rule, "To be sure, it seems hard to imagine that Representatives and Senators voting for BCRA would have expected regulations like these." *Shays and Meehan v. FEC,* 414 F.3d 76, 98-99 (D.C. Cir. 2005). We did not.

Unfortunately, the Commission's 2002 rule promulgated after BCRA is deeply flawed. Once again, the Commission wrote a rule that would allow much coordinated activity that was clearly meant to influence an election escape any regulation at all, and thus operate entirely outside the law. One problem this time was that the Commission decided that as a matter of law no ad running more than 120 days before a primary or general election would be considered to be coordinated, no matter how coordinated in fact the ad really was, unless the ad contained express advocacy or constituted republication of campaign materials. Given that the Supreme Court in *McConnell v. FEC*, 540 U.S. 90 (2003), had just declared the express advocacy test to be "functionally meaningless," this meant, in effect, that there would be no coordination rule at all for any ad run more than 120 days before an election.

It is our experience as candidates that campaign ads are in fact run earlier than 120 days before an election – by parties, by outside groups, and by candidates themselves. Certainly there was no basis in BCRA or any other statute for the Commission to conclude to the contrary, with the effect of allowing a candidate or party to write a campaign ad, hand it over to a corporate or union spender and direct that spender where and when to run the ad, using unlimited corporate or union funds. But that is the effect of the Commission's approach. During the debate on BCRA, Senator Feingold made this very point, stressing that no ban on soft money would be effective in the absence of a strong and realistic coordination rule:

> Absent a meaningful standard for coordination, the soft money ban in the bill would be seriously undermined. In the place of outside special interests donating six-figure checks to the national parties to be spent on Federal elections, these entities could simply work in tandem with the parties and candidates to spend their own treasury funds – soft money – on federal electioneering activities.

148 Cong. Rec. S2144.

That is why Representatives Shays and Meehan brought a lawsuit to challenge this regulation, as well as numerous other regulations issued by the Commission to implement BCRA. We strongly agree with the decision of the district court and the D.C. Circuit Court of Appeals in *Shays and Meehan v. FEC,* where this rule was invalidated. Both courts recognized the serious loopholes that are once again opened up by the Commission's coordination rule.

As the D.C. Circuit said*,* the Commission's rule, which applies only a "functionally meaningless" express advocacy test for coordination outside the 120-day period, means that "the FEC has in effect allowed a coordinated communication free-for-all for much of each election cycle*." Id.* 414 F.3d at 99.

We urge the Commission to adopt a new coordination rule that will provide appropriate and realistic coverage of the ads that are subject to that rule, without infringing on other activities, such as lobbying.

For political committees, the Commission should require that all their expenditures which are coordinated with a candidate, whenever made, are covered by the coordination rule. For political committees, the statute itself defines the term "expenditure" and there is no need for any limitation on this.

As for other types of spenders, such as corporations, labor unions, other groups, individuals and 527s that are not registered as political committees, we agree that it makes sense to treat communications differently depending on how close they are made to an election. But the Commission should carefully set out rules that make sense in the real world both of legislative lobbying and political campaigns.

In Title II of BCRA, Congress identified a pre-election period (30 days before a primary, and 60 days before a general election) as a time when communications that mention candidates can be presumed to be intended to influence elections. We believe that the same reasoning applies to communications that are coordinated with a candidate. Any communication that is coordinated with a candidate, regardless of its content, should be considered a contribution to that candidate if the communication is targeted to the electorate of that candidate within the pre-election period. The fact of the coordination itself indicates that such ads can provide assistance of real value to a candidate, and will usually be run for purposes of influencing the candidate's election. For example, if a candidate asks a corporation or a labor union to run a television advertisement in the last week of a campaign commenting on an important issue in a campaign – such as social security, or medical malpractice reform, or national security – that ad should be considered a contribution to the candidate regardless of whether the candidate, or an opponent, is mentioned.

Second, a longer pre-election period should apply if a communication mentions a clearly-identified candidate, is targeted to the electorate of that candidate, and is coordinated with that candidate or that candidate's opponent. We believe that a period

starting 120 days prior to a primary and running all the way to the general election would be appropriate to capture ads that are mostly likely to be made to influence an election. For states with an early primary, there is a significant period of time after the primary and before the pre-general election period starts. Allowing ads to be coordinated with a candidate in this period, but be defined as falling outside of the coordination rule, would open up enormous opportunities for abuse and fails to recognize the realities of political advertising campaigns in an election year.

Finally, the coordination rule must cover communications that are coordinated with a candidate and made prior to the 120-day pre-primary election period if they are clearly meant to affect a future election, even if the election is some time away. Otherwise, in states with late primaries, the period not covered by the rule would essentially allow campaign contributions by entities not subject to contribution limits. For 527 groups, which have identified themselves with the IRS as "political organizations," any ad that is coordinated, targeted, and promotes, supports, attacks or opposes a candidate should be covered by this rule.

For corporations unions, other groups and individuals, we believe a different standard would be appropriate. Certainly these entities engage in lobbying campaigns that may mention officeholders or candidates. But communications that are coordinated with a candidate and targeted to that candidate's electorate should be covered by the rule if they comment on the character, qualifications, or fitness for office of the candidate or the candidate's opponent or potential opponent.

We urge the Commission to issue a new coordination rule that addresses the inadequacies of the existing rule as confirmed by the courts. Continuing litigation over the rules to implement BCRA disserves the public and those who are required to abide by the rules. We hope the Commission will take this opportunity to promulgate a rule that is consistent with the goals and purposes of the campaign finance laws.

Sincerely,


John McCain                                                          Russell D. Feingold
U.S. Senate                                                          U.S. Senate



Christopher Shays                                                    Marty Meehan
Member of Congress                                                   Member of Congress

5