called issue ads that increasingly dominate the airways during campaign time.

Although I favor public financing, we're not at the point that we can pass public financing. So what are we going to do? My preference is, we change the system with the legislation we have before us. The people want reform; the country needs it; we should do it.

Mr. NELSON of Nebraska. Mr. President, I rise today to express my opposition to the McCain-Feingold bill. To be clear, I am not opposed to the impetus behind this legislation, which is to reform our current campaign finance system. I concur with my colleagues—who support this bill—that the present system is inadequate and inherently flawed. But, unfortunately, this is where our parallel viewpoints diverge.

While I agree that the present campaign finance system is imperfect, I believe that the McCain-Feingold alternative to that system is even more so. This legislation, once enacted, likely will hurt the status quo more than it will help. And, ultimately, I predict it will foster campaign finance regression, rather than institute campaign finance reform.

From the beginning, I have worked with my colleagues to negotiate a more fair and balanced package that, I believe, would have achieved thorough reform. Key parts such as the Hagel amendment on soft money contributions and the amendment on non-severability are not included in this final bill. Had they been included, these amendments would have made the legislation much more effective and comprehensive, and consequently, much more likely to receive my support.

To be fair and consistent, certain aspects of this final bill are laudable and do have my support. I am pleased that the Snowe-Jeffords provision and the Hagel amendment regarding disclosure are included. Increased accountability and transparency for special interest groups are important to the overall reform effort. Moreover, the Wellstone amendment, which extends the Snowe-Jeffords provision to independent advocacy groups, will help remove the facades behind which these groups hide. For too long, special interest groups have funded so-called issue ads whose main objective is to distort the facts. It is encouraging that this bill, as amended, confronts that issue.

The ability of state parties to carry-out traditional activities such as voter registration, is another issue addressed by the Levin amendment, which I was pleased to join as an original co-sponsor. State and local candidates rely on get-out-the-vote efforts and voter registration activities which are usually funded by the state party. Since this campaign finance reform bill, prior to the Levin amendment, would have severely limited state parties, it became apparent that we needed to ensure that such crucial activities are not abolished as well. Without question, I am encouraged by the inclusion of this amendment. It, and the ones regarding increased disclosure, are definitive steps in the direction of genuine campaign finance reform.

That being said, any ground gained by these steps is lost through the ban on soft money and the defeat of the non-severability clause. McCain-Feingold bans soft money contributions only to the national parties. As I have said before, this measure is ineffective, an ultimately unproductive. The soft money ban in this bill will likely be more of a temporary road block than a true dead end. I believe that eventually soft money will find a detour, and it will flow into federal elections from another direction.

A more realistic approach to the unfettered flow of soft money that pollutes our current campaign finance system, would have been to include the Hagel amendment, which would have capped soft money contributions at $60,000. The Hagel measure was pragmatic and essential to real reform. With the absence of this language in the final bill, we are left with a plan than falls short on efficacy and long on futility.

Without the inclusion of a cap, instead of a ban on soft money to national parties, my support for this bill declined, but the nail on the coffin, so to speak, was the defeat of the severability clause. The non-severability amendment was characterized by its opponents as the ''poison pill'' of campaign finance reform. Quite frankly, I thing the total package before us today would have been easier to swallow if it had been included.

The non-severability amendment would have prevented the courts from striking down some provisions and leaving others. Once the courts act, it is possible that the McCain-Feingold campaign finance reform law as passed by Congress will look nothing like the McCain-Feingold finance reform law tweaked by the courts. For this reason, the severability provision only weakens the bill and extends the inequalities fostered by the present system.

My conviction that the current campaign finance system is flawed remains unchanged. Comprehensive reform is undoubtedly needed; however, I do not believe this legislation will achieve that goal. It's often been said that something is better than nothing. Well, in this instance, the reverse rings true. Nothing is better than something. Therefore, I will vote accordingly and reserve my support for a more comprehensive and equitable campaign finance reform package.

Mr. HOLLINGS. Mr. President, the thrust of McCain-Feingold was to eliminate soft money. Now, the final bill doesn't eliminate soft money but, rather, redirects it. Soft money has been taken away from the political parties and redirected to the special interests. The thrust of McCain-Feingold was to minimize the influence of the special interests. It has now become maximized. And finally, the thrust of McCain-Feingold was to eliminate the obscenity of the outrageous amounts of money that it takes in politics to be elected. The final bill now doubles this obscenity. But Senator MCCAIN has become such a symbol. McCain-Feingold has become such a message that Senators, in disregard of the substance but totally on message, will vote for it. I said at the beginning that there was no doubt that under Buckley v. Valeo, the Supreme Court would find McCain-Feingold unconstitutional. While the Court hurt us in Buckley, perhaps this time the Court will save us by finding McCain-Feingold unconstitutional. At least I am sober enough to vote no.

Mr. HATCH. Mr. President, after two weeks of floor consideration, we are now approaching the final vote on the campaign finance reform legislation. I have taken the floor on several occasions over the past two weeks to express my serious concerns with the various provisions of the bill. Given my concerns, and the failure of this body to vote to correct some of the problems, I will be voting against final passage of this well-intended, but seriously flawed legislation.

The one silver lining in the legislation that will likely pass this evening is a provision I authored that passed, which will give expedited judicial review by the Supreme Court of challenges to the constitutionality of the legislation. All of us, supporters and opponents alike, stand to gain by a prompt and definite determination of the constitutionality of many of the bill's controversial provisions. Because the harm these provisions will cause is serious and irreparable, it is imperative that we afford the Supreme Court the opportunity to pass on the constitutionality of this legislation as soon as possible.

Let me say again that I commend and respect the authors of this legislation for their attempts to address a troubling and unfortunate public perception about our political system. However, we also must respect the freedom of speech granted to every American by our Constitution. While the bill may alter or change our system of campaign finance, I think it will do little in actually reform it or making it better. In fact, McCain-Feingold, if passed and enacted into law, will, in my opinion, exacerbate the very problems that it seeks to solve.

The primary provision of McCain-Feingold essentially bans soft money by making it unlawful for national political party committees and federal candidates to solicit or receive any funds not subject to the hard money limitations of the Federal Election Campaign Act. It also nationalizes the state party structure by subjecting state parties to the regulations of the Federal Election Commission when candidates for federal office appear on the general ballot. The net result of this soft money restriction on parties will be to emasculate the present two-party system and to increase the power