**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

|                                         |     |                                      |
|-----------------------------------------|-----|--------------------------------------|
| CHRISTOPHER SHAYS and                   | )   |                                      |
| MARTIN MEEHAN,                          | )   |                                      |
|                                         | )   |                                      |
|                         Plaintiffs,     | )   |                                      |
|                                         | )   | Civil Action No. 06-CV-1247 (CKK)    |
|             v.                          | )   |                                      |
|                                         | )   | FEC EXHIBITS                         |
|                                         | )   |                                      |
| FEDERAL ELECTION COMMISSION,            | )   |                                      |
|                                         | )   |                                      |
|                         Defendant.      | )   |                                      |

_____ )

**FEDERAL ELECTION COMMISSION'S EXHIBITS
SUBMITTED IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT**

March 16, 2007

## Table of Contents

**Number:**    **Exhibit:**

1    Bipartisan Campaign Reform Act of 2001 (Introduced in Senate, Jan. 22, 2001), S.27, 107th Cong. § 214.

2    Bipartisan Campaign Finance Reform Act of 2001 (Introduced in House, Jan. 31, 2001), H.R. 380, 107th Cong. § 206.

3    Bipartisan Campaign Reform Act of 2001 (Referred to House Committee after being Received from Senate, May 22, 2001), S.27, 107th Cong. § 214.

4    Bipartisan Campaign Reform Act of 2001 (Reported in House, July 10, 2001), H.R. 2356, 107th Cong. § 214.

5    Bipartisan Campaign Reform Act of 2002 (Engrossed as Agreed to or Passed by House, Feb 14, 2002), H.R. 2356, 107th Cong. § 214.

6    Bipartisan Campaign Reform Act of 2002 (Placed on Calendar in Senate, Feb. 27), H.R. 2356, 107th Cong. § 214.

7    Advisory Opinion, 1990-5, Fed. Election Camp. Guide (CCH) ¶ 5982 (June 21, 2000).

8    Statement of Reasons of Commissioner MacDonald in MUR 4553 et al., June 21, 2000.

9    Leslie Wayne, Forbes Puts His Money and His Message on the Line in Iowa's Straw Poll, N.Y. Times, August 13, 1999.

10    AO 1984-15, [Transfer Binder] Fed. Election Camp. Guide (CCH) ¶ 5766 (May 31, 1984) (Exh. 10).

11    AO 1985-14, [Transfer Binder] Fed. Election Camp. Guide (CCH) ¶ 5819 (May 24, 1985) (Exh. 11).

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

CHRISTOPHER SHAYS and )
MARTIN MEEHAN, )
                                                            )
                            Plaintiffs, )
                                                            )    Civil Action No. 06-CV-1247 (CKK)
                    v. )
                                                            )    FEC EXHIBIT ONE
                                                            )
FEDERAL ELECTION COMMISSION, )
                                                            )
                            Defendant. )
_____ )


**FEC EXHIBIT ONE**

The Library of Congress > THOMAS Home > Bills, Resolutions > Search Results

| *THIS SEARCH* | *THIS DOCUMENT* | *GO TO* |
|---|---|---|
| Next Hit | Forward | New Bills Search |
| Prev Hit | Back | HomePage |
| Hit List | Best Sections | Help |
| | Contents Display | |

# S.27

## Bipartisan Campaign Reform Act of 2001 (Introduced in Senate)

## SEC. 214. COORDINATION WITH CANDIDATES.

(a) DEFINITION OF COORDINATION WITH CANDIDATES-

(1) SECTION 301(8)- Section 301(8) of the Federal Election Campaign Act of 1971 (2 U.S.C. 431(8)) is amended--

(A) in subparagraph (A)--

(i) by striking `or' at the end of clause (i);

(ii) by striking the period at the end of clause (ii) and inserting `; or'; and

(iii) by adding at the end the following:

`(iii) coordinated activity (as defined in subparagraph (C)).'; and

(B) by adding at the end the following:

`(C) `Coordinated activity' means anything of value provided by a person in connection with a Federal candidate's election who is or previously has been within the same election cycle acting in coordination with that candidate, or an agent of that candidate on any campaign activity in connection with a Federal election in which such candidate seeks nomination or election to Federal office (regardless of whether the value being provided is in the form of a communication that expressly advocates a vote for or against a candidate) and includes any of the following:

`(i) A payment made by a person in cooperation, consultation, or concert with, at the request or suggestion of, or pursuant to any general or particular understanding with a candidate, the

Case 1:06-cv-01247-CKK of Congress) 30-2 Filed 03/16/2007 Page 5 of 96 Page 2 of 7

candidate's authorized committee, the political party of the candidate, or an agent acting on behalf of a candidate, authorized committee, or the political party of the candidate.

`(ii) A payment made by a person for the production, dissemination, distribution, or republication, in whole or in part, of any broadcast or any written, graphic, or other form of campaign material prepared by a candidate, a candidate's authorized committee, or an agent of a candidate or authorized committee (not including a communication described in paragraph (9)(B)(i) or a communication that

expressly advocates the candidate's defeat), except materials published on a candidate's website and republished at a cost of less than $1,000.

`(iii) A payment made by a person if, in the same election cycle in which the payment is made, the person making the payment--

`(I) is serving or previously has served as--

`(a) an employee;

`(b) a fundraiser; or

`(c) an agent of the candidate or the candidate's authorized committee in an executive or policymaking capacity; or

`(II) has previously participated in discussions (other than on an incidental basis) that have been--

`(a) with the candidate, an agent of the candidate or the candidate's authorized committee, or with a political party that is coordinating with the candidate; and

`(b) about the candidate's campaign strategy and tactics, including a discussion about advertising, message, allocation of resources, fundraising, or campaign operations.

`(iv) A payment made by a person if, in the same election cycle, the person making the payment retains the professional services of any person who has provided those services in the same election cycle to a candidate (including services provided through a political committee of the candidate's political party) in connection with the candidate's pursuit of nomination for election, or election, to Federal office, including services relating to the candidate's decision to seek Federal office, and the person retained is retained to work on activities relating to that candidate's campaign .

`(D) For purposes of subparagraph (C), the term `professional services' means polling, media advice, fundraising, campaign research, political advice, or direct mail services (except for mailhouse services) in support of a candidate's pursuit of nomination for election, or election, to Federal office.

`(E) For purposes of subparagraph (C), all political committees established and maintained by a national political party (including all congressional campaign committees) and all political committees established and maintained by a State political party (including any subordinate committee of a State committee) shall be considered to be a single political committee.

`(F) COORDINATION BY A POLITICAL PARTY- When a political party committee makes any expenditure that refers to a clearly identified candidate of that party, or to the opponent of a candidate of that party, in connection with a Federal election, regardless of whether the communication expressly advocates a vote for or against the candidate, the expenditure is deemed to be made in coordination with the candidate of that party, unless the party certifies under penalty of perjury that there has been no coordination by the party.'.

(2) SECTION 315(a)(7)- Section 315(a)(7) (2 U.S.C. 441a(a)(7)) is amended by striking subparagraph (B) and inserting the following:

`(B) a coordinated activity, as described in section 301(8)(C), shall be considered to be a contribution to the candidate and an expenditure by the candidate.'.

(b) MEANING OF CONTRIBUTION OR EXPENDITURE FOR THE PURPOSES OF SECTION 316- Section 316(b)(2) of the Federal Election Campaign Act of 1971 (2 U.S.C. 441b(b)(2)) is amended by striking `shall include' and inserting `includes a contribution or expenditure, as those terms are defined in section 301, and also includes'.

## TITLE III--MISCELLANEOUS

## SEC. 301. USE OF CONTRIBUTED AMOUNTS FOR CERTAIN PURPOSES.

Title III of the Federal Election Campaign Act of 1971 (2 U.S.C. 431 et seq.) is amended by striking section 313 and inserting the following:

## `SEC. 313. USE OF CONTRIBUTED AMOUNTS FOR CERTAIN PURPOSES.

`(a) PERMITTED USES- A contribution accepted by a candidate, and any other amount received by an individual as support for activities of the individual as a holder

of Federal office, may be used by the candidate or individual--

`(1) for expenditures in connection with the campaign for Federal office of the candidate or individual;

`(2) for ordinary and necessary expenses incurred in connection with duties of the individual as a holder of Federal office;

`(3) for contributions to an organization described in section 170(c) of the Internal Revenue Code of 1986; or

`(4) for transfers to a national, State, or local committee of a political party.

`(b) PROHIBITED USE-

`(1) IN GENERAL- A contribution or amount described in subsection (a) shall not be converted by any person to personal use.

`(2) CONVERSION- For the purposes of paragraph (1), a contribution or amount shall be considered to be converted to personal use if the contribution or amount is used to fulfill any commitment, obligation, or expense of a person that would exist irrespective of the candidate's election campaign or individual's duties as a holder of Federal office, including--

`(A) a home mortgage, rent, or utility payment;

`(B) a clothing purchase;

`(C) a noncampaign-related automobile expense;

`(D) a country club membership;

`(E) a vacation or other noncampaign-related trip;

`(F) a household food item;

`(G) a tuition payment;

`(H) admission to a sporting event, concert, theater, or other form of entertainment not associated with an election campaign ; and

`(I) dues, fees, and other payments to a health club or recreational facility.'.

## SEC. 302. PROHIBITION OF FUNDRAISING ON FEDERAL PROPERTY.

Section 607 of title 18, United States Code, is amended--

(1) by striking subsection (a) and inserting the following:

`(a) PROHIBITION-

`(1) IN GENERAL- It shall be unlawful for any person to solicit or receive a

donation of money or other thing of value in connection with a Federal, State, or local election from a person who is located in a room or building occupied in the discharge of official duties by an officer or employee of the United States. It shall be unlawful for an individual who is an officer or employee of the Federal Government, including the

President, Vice President, and Members of Congress, to solicit a donation of money or other thing of value in connection with a Federal, State, or local election, while in any room or building occupied in the discharge of official duties by an officer or employee of the United States, from any person.

> `(2) PENALTY- A person who violates this section shall be fined not more than $5,000, imprisoned more than 3 years, or both.'; and

(2) in subsection (b), by inserting `or Executive Office of the President' after `Congress' .

## SEC. 303. STRENGTHENING FOREIGN MONEY BAN.

Section 319 of the Federal Election Campaign Act of 1971 (2 U.S.C. 441e) is amended--

(1) by striking the heading and inserting the following: `CONTRIBUTIONS AND DONATIONS BY FOREIGN NATIONALS'; and

(2) by striking subsection (a) and inserting the following:

`(a) PROHIBITION- It shall be unlawful for--

`(1) a foreign national, directly or indirectly, to make--

`(A) a donation of money or other thing of value, or to make an express or implied promise to make a donation, in connection with a Federal, State, or local election; or

`(B) a contribution or donation to a committee of a political party; or

`(2) for a person to solicit, accept, or receive such contribution or donation from a foreign national.'.

## SEC. 304. CODIFICATION OF BECK DECISION.

Section 8 of the National Labor Relations Act (29 U.S.C. 158) is amended by adding at the end the following:

`(h) NONUNION MEMBER PAYMENTS TO LABOR ORGANIZATION-

`(1) IN GENERAL- It shall be an unfair labor practice for any labor organization which receives a payment from an employee pursuant to an agreement that requires employees who are not members of the organization

to make payments to such organization in lieu of organization dues or fees not to establish and implement the objection procedure described in paragraph (2).

`(2) OBJECTION PROCEDURE- The objection procedure required under paragraph (1) shall meet the following requirements:

`(A) The labor organization shall annually provide to employees who are covered by such agreement but are not members of the organization--

`(i) reasonable personal notice of the objection procedure, the employees eligible to invoke the procedure, and the time, place, and manner for filing an objection; and

`(ii) reasonable opportunity to file an objection to paying for organization expenditures supporting political activities unrelated to collective bargaining, including but not limited to the opportunity to file such objection by mail.

`(B) If an employee who is not a member of the labor organization files an objection under the procedure in subparagraph (A), such organization shall--

`(i) reduce the payments in lieu of organization dues or fees by such employee by an amount which reasonably reflects the ratio that the organization's expenditures supporting political activities unrelated to collective bargaining bears to such organization's total expenditures; and

`(ii) provide such employee with a reasonable explanation of the organization's calculation of such reduction, including calculating the amount of organization expenditures supporting political activities unrelated to collective bargaining.

`(3) DEFINITION- In this subsection, the term `expenditures supporting political activities unrelated to collective bargaining' means expenditures in connection with a Federal, State, or local election or in connection with efforts to influence legislation unrelated to collective bargaining.'.

## TITLE IV--SEVERABILITY; EFFECTIVE DATE

## SEC. 401. SEVERABILITY.

If any provision of this Act or amendment made by this Act , or the application of a provision or amendment to any person or circumstance, is held to be unconstitutional, the remainder of this Act and amendments made by this Act , and the application of the provisions and amendment to any person or circumstance, shall not be affected by the holding.

## SEC. 402. EFFECTIVE DATE.

This Act and the amendments made by this Act shall take effect 30 days after the date of its enactment.

---

| *THIS SEARCH* | *THIS DOCUMENT* | *GO TO* |
|---|---|---|
| Next Hit | Forward | New Bills Search |
| Prev Hit | Back | HomePage |
| Hit List | Best Sections | Help |
| | Contents Display | |

---

THOMAS Home | Contact | Accessibility | Legal | USA.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                           )
CHRISTOPHER SHAYS and                      )
MARTIN MEEHAN,                             )
                                           )
                    Plaintiffs,            )
                                           )        Civil Action No. 06-CV-1247 (CKK)
            v.                             )
                                           )        FEC EXHIBIT TWO
                                           )
FEDERAL ELECTION COMMISSION,               )
                                           )
                    Defendant.             )
_____  )


**FEC EXHIBIT TWO**

The Library of Congress > THOMAS Home > Bills, Resolutions > Search Results

| *THIS SEARCH* | *THIS DOCUMENT* | *GO TO* |
| Next Hit | Forward | New Bills Search |
| Prev Hit | Back | HomePage |
| Hit List | Best Sections | Help |
|  | Contents Display |  |

# H.R.380

## Bipartisan Campaign Finance Reform Act of 2001 (Introduced in House)

## SEC. 206. COORDINATION WITH CANDIDATES.

(a) DEFINITION OF COORDINATION WITH CANDIDATES-

(1) SECTION 301(8)- Section 301(8) of the Federal Election Campaign Act of 1971 (2 U.S.C. 431(8)) is amended--

(A) in subparagraph (A)--

(i) by striking `or' at the end of clause (i);

(ii) by striking the period at the end of clause (ii) and inserting `; or'; and

(iii) by adding at the end the following:

`(iii) coordinated activity (as defined in subparagraph (C)).'; and

(B) by adding at the end the following:

`(C) `Coordinated activity' means anything of value provided by a person in connection with a Federal candidate's election who is (or who at any time during the same election cycle has been) acting in coordination with that candidate (or an agent of that candidate) on any campaign activity in connection with a Federal election in which such candidate seeks nomination or election to Federal office (regardless of whether the value provided is in the form of a communication which expressly advocates a vote for or against any candidate), and includes any of the following:

`(i) A payment made by a person in cooperation, consultation, or concert with, at the request or suggestion of , or pursuant to any general or particular understanding with a candidate, the

candidate's authorized committee, the political party of the candidate, or an agent acting on behalf of a candidate, authorized committee, or the political party of the candidate.

`(ii) A payment made by a person for the production, dissemination, distribution, or republication, in whole or in part, of any broadcast or any written, graphic, or other form of campaign material prepared by a candidate, a candidate's authorized committee, or an agent of a candidate or authorized committee (not including a communication described in paragraph (9)(B)(i) or a communication that expressly advocates the candidate's defeat), except that this clause shall not apply with respect to materials published on a candidate's website and republished at a cost of less than $1,000.

`(iii) A payment made by a person if, in the same election cycle in which the payment is made, the person making the payment--

`(I) is serving or has previously served as an employee, fundraiser, or agent of the candidate or the candidate's authorized committee in an executive or policymaking capacity; or

`(II) has previously participated in discussions (other than on an incidental basis) with the candidate, an agent of the candidate's authorized committee, or a committee of a political party which is coordinating with the candidate regarding the candidate's campaign strategy and tactics, including (but not limited to) advertising, message, allocation of resources, fundraising, or campaign operations.

`(iv) A payment made by a person if, in the same election cycle, the person making the payment retains the professional services of any person that has provided or is providing those services in the same election cycle to a candidate (including services provided through a political committee of the candidate's political party) in connection with the candidate's pursuit of nomination for election, or election, to Federal office, including services relating to the candidate's decision to seek Federal office, and the person retained is retained to work on activities relating to that candidate's campaign.

`(D) For purposes of subparagraph (C), the term `professional services' means polling, media advice, fundraising, campaign research or direct mail (except for mailhouse services) services in support of a candidate's pursuit of nomination for election, or election, to Federal office.

`(E) For purposes of subparagraph (C), all political committees established and maintained by a national political party (including all congressional campaign committees) and all political committees established and maintained by a State political party (including any

subordinate committee of a State committee) shall be considered to be a single political committee.'.

(2) SECTION 315(a)(7)- Section 315(a)(7) (2 U.S.C. 441a(a)(7)) is amended by striking subparagraph (B) and inserting the following:

`(B) a coordinated activity, as described in section 301(8)(C), shall be considered to be a contribution to the candidate and an expenditure by the candidate; and'.

(b) MEANING OF CONTRIBUTION OR EXPENDITURE FOR THE PURPOSES OF SECTION 316- Section 316(b)(2) of the Federal Election Campaign Act of 1971 (2 U.S.C. 441b(b)(2)) is amended by striking `shall include' and inserting `includes a contribution or expenditure, as those terms are defined in section 301, and also includes'.

## TITLE III--DISCLOSURE

# SEC. 301. PROHIBITION OF DEPOSIT OF CONTRIBUTIONS WITH INCOMPLETE CONTRIBUTOR INFORMATION.

Section 302 of Federal Election Campaign Act of 1971 (2 U.S.C. 432) is amended by adding at the end the following:

`(j) DEPOSIT OF CONTRIBUTIONS- The treasurer of a candidate's authorized committee shall not deposit, except in an escrow account, or otherwise negotiate a contribution from a person who makes an aggregate amount of contributions in excess of $200 during a calendar year unless the treasurer verifies that the information required by this section with respect to the contributor is complete.'.

# SEC. 302. AUDITS.

(a) RANDOM AUDITS- Section 311(b) of the Federal Election Campaign Act of 1971 (2 U.S.C. 438(b)) is amended--

(1) by inserting `(1) IN GENERAL- ' before `The Commission';

(2) by moving the text 2 ems to the right; and

(3) by adding at the end the following:

`(2) RANDOM AUDITS-

`(A) IN GENERAL- Notwithstanding paragraph (1), the Commission may conduct random audits and investigations to ensure voluntary compliance with this Act. The selection of any candidate for a random audit or investigation shall be based on criteria adopted by a vote of at least four members of the Commission.

`(B) LIMITATION- The Commission shall not conduct an audit or investigation of a candidate's authorized committee under subparagraph (A) until the candidate is no longer a candidate for the office sought by the candidate in an election cycle.

`(C) APPLICABILITY- This paragraph does not apply to an authorized committee of a candidate for President or Vice President subject to audit under section 9007 or 9038 of the Internal Revenue Code of 1986.'.

(b) EXTENSION OF PERIOD DURING WHICH CAMPAIGN AUDITS MAY BE BEGUN- Section 311(b) of the Federal Election Campaign Act of 1971 (2 U.S.C. 438(b)) is amended by striking `6 months' and inserting `12 months'.

## SEC. 303. REPORTING REQUIREMENTS FOR CONTRIBUTIONS OF $50 OR MORE.

Section 304(b)(3)(A) of the Federal Election Campaign Act at 1971 (2 U.S.C. 434 (b)(3)(A) is amended--

(1) by striking `$200' and inserting `$50'; and

(2) by striking the semicolon and inserting `, except that in the case of a person who makes contributions aggregating at least $50 but not more than $200 during the calendar year (or election cycle, in the case of an authorized committee of a candidate for Federal office), the identification need include only the name and address of the person;'.

## SEC. 304. USE OF CANDIDATES' NAMES.

Section 302(e) of the Federal Election Campaign Act of 1971 (2 U.S.C. 432(e)) is amended by striking paragraph (4) and inserting the following:

`(4)(A) The name of each authorized committee shall include the name of the candidate who authorized the committee under paragraph (1).

`(B) A political committee that is not an authorized committee shall not--

`(i) include the name of any candidate in its name; or

`(ii) except in the case of a national, State, or local party committee, use the name of any candidate in any activity on behalf of the committee in such a context as to suggest that the committee is an authorized committee of the candidate or that the use of the candidate's name has been authorized by the candidate.'.

## SEC. 305. PROHIBITION OF FALSE REPRESENTATION TO SOLICIT CONTRIBUTIONS.

Section 322 of the Federal Election Campaign Act of 1971 (2 U.S.C. 441h) is

amended--

(1) by inserting after `SEC. 322.' the following: `(a) IN GENERAL- '; and

(2) by adding at the end the following:

`(b) SOLICITATION OF CONTRIBUTIONS- No person shall solicit contributions by falsely representing himself or herself as a candidate or as a representative of a candidate, a political committee, or a political party.'.

## SEC. 306. SOFT MONEY OF PERSONS OTHER THAN POLITICAL PARTIES.

(a) IN GENERAL- Section 304 of the Federal Election Campaign Act of 1971 (2 U.S.C. 434) (as amended

by section 103(c) and section 204) is amended by adding at the end the following new subsection:

`(h) DISBURSEMENTS OF PERSONS OTHER THAN POLITICAL PARTIES-

`(1) IN GENERAL- A person, other than a political committee of a political party or a person described in section 501(d) of the Internal Revenue Code of 1986, that makes an aggregate amount of disbursements in excess of $50,000 during a calendar year for activities described in paragraph (2) shall file a statement with the Commission--

`(A) on a monthly basis as described in subsection (a)(4)(B); or

`(B) in the case of disbursements that are made within 20 days of an election, within 24 hours after the disbursements are made.

`(2) ACTIVITY- The activity described in this paragraph is--

`(A) Federal election activity;

`(B) an activity described in section 316(b)(2)(A) that expresses support for or opposition to a candidate for Federal office or a political party; and

`(C) an activity described in subparagraph (B) or (C) of section 316(b) (2).

`(3) APPLICABILITY- This subsection does not apply to--

`(A) a candidate or a candidate's authorized committees; or

`(B) an independent expenditure.

`(4) CONTENTS- A statement under this section shall contain such

information about the disbursements made during the reporting period as the Commission shall prescribe, including--

`(A) the aggregate amount of disbursements made;

`(B) the name and address of the person or entity to whom a disbursement is made in an aggregate amount in excess of $200;

`(C) the date made, amount, and purpose of the disbursement; and

`(D) if applicable, whether the disbursement was in support of , or in opposition to, a candidate or a political party, and the name of the candidate or the political party.'.

(b) DEFINITION OF GENERIC CAMPAIGN ACTIVITY- Section 301 of the Federal Election Campaign Act of 1971 (2 U.S.C. 431 et seq.) (as amended by section 201 (b)) is further amended by adding at the end the following:

`(21) GENERIC CAMPAIGN ACTIVITY- The term `generic campaign activity' means an activity that promotes a political party and does not promote a candidate or non-Federal candidate.'.

## SEC. 307. CAMPAIGN ADVERTISING.

Section 318 of the Federal Election Campaign Act of 1971 (2 U.S.C. 441d) is amended--

(1) in subsection (a)--

(A) in the matter preceding paragraph (1)--

(i) by striking `Whenever' and inserting `Whenever a political committee makes a disbursement for the purpose of financing any communication through any broadcasting station, newspaper, magazine, outdoor advertising facility, mailing, or any other type of general public political advertising, or whenever';

(ii) by striking `an expenditure' and inserting `a disbursement'; and

(iii) by striking `direct'; and

(B) in paragraph (3), by inserting `and permanent street address' after `name'; and

(2) by adding at the end the following:

`(c) Any printed communication described in subsection (a) shall--

`(1) be of sufficient type size to be clearly readable by the recipient of the

communication;

`(2) be contained in a printed box set apart from the other contents of the communication; and

`(3) be printed with a reasonable degree of color contrast between the background and the printed statement.

`(d)(1) Any communication described in paragraphs (1) or (2) of subsection (a) which is transmitted through radio or television shall include, in addition to the requirements of that paragraph, an audio statement by the candidate that identifies the candidate and states that the candidate has approved the communication.

`(2) If a communication described in paragraph (1) is transmitted through television, the communication shall include, in addition to the audio statement under paragraph (1), a written statement that--

`(A) appears at the end of the communication in a clearly readable manner with a reasonable degree of color contrast between the background and the printed statement, for a period of at least 4 seconds; and

`(B) is accompanied by a clearly identifiable photographic or similar image of the candidate.

`(e) Any communication described in paragraph (3) of subsection (a) which is transmitted through radio or television shall include, in addition to the requirements of that paragraph, in a clearly spoken manner, the following statement: `**XXXXXXXX** is responsible for the content of this advertisement.' (with the blank to be filled in with the name of the political committee or other person paying for the communication and the name of any connected organization of the payor). If transmitted through television, the statement shall also appear in a clearly readable manner with a reasonable degree of color contrast between the background and the printed statement, for a period of at least 4 seconds.'.

## TITLE IV--PERSONAL WEALTH OPTION

## SEC. 401. VOLUNTARY PERSONAL FUNDS EXPENDITURE LIMIT.

Title III of the Federal Election Campaign Act of 1971 (2 U.S.C. 431 et seq.), as amended by section 101, is further amended by adding at the end the following new section:

# `VOLUNTARY PERSONAL FUNDS EXPENDITURE LIMIT

`SEC. 324. (a) ELIGIBLE CONGRESSIONAL CANDIDATE-

`(1) PRIMARY ELECTION-

`(A) DECLARATION- A candidate for election for Senator or Representative in or Delegate or Resident Commissioner to the Congress is an eligible primary election Congressional candidate if the candidate files with the Commission a declaration that the candidate and the candidate's authorized committees will not make expenditures in excess of the personal funds expenditure limit.

`(B) TIME TO FILE- The declaration under subparagraph (A) shall be filed not later than the date on which the candidate files with the appropriate State officer as a candidate for the primary election.

`(2) GENERAL ELECTION-

`(A) DECLARATION- A candidate for election for Senator or Representative in or Delegate or Resident Commissioner to the Congress is an eligible general election Congressional candidate if the candidate files with the Commission--

`(i) a declaration under penalty of perjury, with supporting documentation as required by the Commission, that the candidate and the candidate's authorized committees did not exceed the personal funds expenditure limit in connection with the primary election; and

`(ii) a declaration that the candidate and the candidate's authorized committees will not make expenditures in excess of the personal funds expenditure limit.

`(B) TIME TO FILE- The declaration under subparagraph (A) shall be filed not later than 7 days after the earlier of --

`(i) the date on which the candidate qualifies for the general election ballot under State law; or

`(ii) if under State law, a primary or run-off election to qualify for the general election ballot occurs after September 1, the date on which the candidate wins the primary or runoff election.

`(b) PERSONAL FUNDS EXPENDITURE LIMIT-

`(1) IN GENERAL- The aggregate amount of expenditures that may be made in connection with an election by an eligible Congressional candidate or the candidate's authorized committees from the sources described in paragraph (2) shall not exceed $50,000.

`(2) SOURCES- A source is described in this paragraph if the source is--

`(A) personal funds of the candidate and members of the candidate's immediate family; or

`(B) proceeds of indebtedness incurred by the candidate or a member of the candidate's immediate family.

`(c) CERTIFICATION BY THE COMMISSION-

`(1) IN GENERAL- The Commission shall determine whether a candidate has met the requirements of this section and, based on the determination, issue a certification stating whether the candidate is an eligible Congressional candidate.

`(2) TIME FOR CERTIFICATION- Not later than 7 business days after a candidate files a declaration under paragraph (1) or (2) of subsection (a), the Commission shall certify whether the candidate is an eligible Congressional candidate.

`(3) REVOCATION- The Commission shall revoke a certification under paragraph (1), based on information submitted in such form and manner as the Commission may require or on information that comes to the Commission by other means, if the Commission determines that a candidate violates the personal funds expenditure limit.

`(4) DETERMINATIONS BY COMMISSION- A determination made by the Commission under this subsection shall be final, except to the extent that the determination is subject to examination and audit by the Commission and to judicial review.

`(d) PENALTY- If the Commission revokes the certification of an eligible Congressional candidate--

`(1) the Commission shall notify the candidate of the revocation; and

`(2) the candidate and a candidate's authorized committees shall pay to the Commission an amount equal to the amount of expenditures made by a national committee of a political party or a State committee of a political party in connection with the general election campaign of the candidate under section 315(d).'.

## SEC. 402. POLITICAL PARTY COMMITTEE COORDINATED EXPENDITURES.

Section 315(d) of the Federal Election Campaign Act of 1971 (2 U.S.C. 441a(d)) (as amended by section 205) is amended by adding at the end the following:

`(6) This subsection does not apply to expenditures made in connection with the general election campaign of a candidate for Senator or Representative in or Delegate or Resident Commissioner to the Congress who is not an eligible Congressional candidate (as defined in section 324(a)).'.

### TITLE V--MISCELLANEOUS

## SEC. 501. CODIFICATION OF BECK DECISION.

Section 8 of the National Labor Relations Act (29 U.S.C. 158) is amended by adding at the end the following new subsection:

`(h) NONUNION MEMBER PAYMENTS TO LABOR ORGANIZATION-

`(1) IN GENERAL- It shall be an unfair labor practice for any labor organization which receives a payment from an employee pursuant to an agreement that requires employees who are not members of the organization to make payments to such organization in lieu of organization dues or fees not to establish and implement the objection procedure described in paragraph (2).

`(2) OBJECTION PROCEDURE- The objection procedure required under paragraph (1) shall meet the following requirements:

`(A) The labor organization shall annually provide to employees who are covered by such agreement but are not members of the organization--

`(i) reasonable personal notice of the objection procedure, a list of the employees eligible to invoke the procedure, and the time, place, and manner for filing an objection; and

`(ii) reasonable opportunity to file an objection to paying for organization expenditures supporting political activities unrelated to collective bargaining, including but not limited to the opportunity to file such objection by mail.

`(B) If an employee who is not a member of the labor organization files an objection under the procedure in subparagraph (A), such organization shall--

`(i) reduce the payments in lieu of organization dues or fees by such employee by an amount which reasonably reflects the ratio that the organization's expenditures supporting political activities unrelated to collective bargaining bears to such organization's total expenditures; and

`(ii) provide such employee with a reasonable explanation of the organization's calculation of such reduction, including calculating the amount of organization expenditures supporting political activities unrelated to collective bargaining.

`(3) DEFINITION- In this subsection, the term `expenditures supporting political activities unrelated to collective bargaining' means expenditures in connection with a Federal, State, or local election or in connection with efforts to influence legislation unrelated to collective bargaining.'.

## SEC. 502. USE OF CONTRIBUTED AMOUNTS FOR CERTAIN

## PURPOSES.

Title III of the Federal Election Campaign Act of 1971 (2 U.S.C. 431 et seq.) is amended by striking section 313 and inserting the following:

# `USE OF CONTRIBUTED AMOUNTS FOR CERTAIN PURPOSES

`SEC. 313. (a) PERMITTED USES- A contribution accepted by a candidate, and any other amount received by an individual as support for activities of the individual as a holder of Federal office, may be used by the candidate or individual--

`(1) for expenditures in connection with the campaign for Federal office of the candidate or individual;

`(2) for ordinary and necessary expenses incurred in connection with duties of the individual as a holder of Federal office;

`(3) for contributions to an organization described in section 170(c) of the Internal Revenue Code of 1986; or

`(4) for transfers to a national, State, or local committee of a political party.

`(b) PROHIBITED USE-

`(1) IN GENERAL- A contribution or amount described in subsection (a) shall not be converted by any person to personal use.

`(2) CONVERSION- For the purposes of paragraph (1), a contribution or amount shall be considered to be converted to personal use if the contribution or amount is used to fulfill any commitment, obligation, or expense of a person that would exist irrespective of the candidate's election campaign or individual's duties as a holder of Federal officeholder, including--

`(A) a home mortgage, rent, or utility payment;

`(B) a clothing purchase;

`(C) a non campaign-related automobile expense;

`(D) a country club membership;

`(E) a vacation or other non campaign-related trip;

`(F) a household food item;

`(G) a tuition payment;

`(H) admission to a sporting event, concert, theater, or other form of entertainment not associated with an election campaign; and

`(I) dues, fees, and other payments to a health club or recreational facility.'.

## SEC. 503. LIMIT ON CONGRESSIONAL USE OF THE FRANKING PRIVILEGE.

Section 3210(a)(6) of title 39, United States Code, is amended by striking subparagraph (A) and inserting the following:

`(A) A Member of Congress shall not mail any mass mailing as franked mail during the 180-day period which ends on the date of the general election for the office held by the Member or during the 90-day period which ends on the date of any primary election for that office, unless the Member has made a public announcement that the Member will not be a candidate for reelection during that year or for election to any other Federal office.'.

## SEC. 504. PROHIBITION OF FUNDRAISING ON FEDERAL PROPERTY.

Section 607 of title 18, United States Code, is amended--

(1) by striking subsection (a) and inserting the following:

`(a) PROHIBITION-

`(1) IN GENERAL- It shall be unlawful for any person to solicit or receive a donation of money or other thing of value in connection with a Federal, State, or local election from a person who is located in a room or building occupied in the discharge of official duties by an officer or employee of the United States.

| THIS SEARCH | THIS DOCUMENT | GO TO |
|---|---|---|
| Next Hit | Forward | New Bills Search |
| Prev Hit | Back | HomePage |
| Hit List | Best Sections | Help |
| | Contents Display | |

THOMAS Home | Contact | Accessibility | Legal | USA.gov

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                          )
CHRISTOPHER SHAYS and                     )
MARTIN MEEHAN,                            )
                                          )
                    Plaintiffs,           )
                                          )        Civil Action No. 06-CV-1247 (CKK)
          v.                              )
                                          )        FEC EXHIBIT THREE
                                          )
FEDERAL ELECTION COMMISSION,              )
                                          )
                    Defendant.            )
_____   )


## FEC EXHIBIT THREE

The Library of Congress > THOMAS Home > Bills, Resolutions > Search Results

| *THIS SEARCH* | *THIS DOCUMENT* | *GO TO* |
|---|---|---|
| Next Hit | Forward | New Bills Search |
| Prev Hit | Back | HomePage |
| Hit List | Best Sections | Help |
|  | Contents Display |  |

# S.27

### Bipartisan Campaign Reform Act of 2001 (Referred to House Committee after being Received from Senate)

## SEC. 214. COORDINATION WITH CANDIDATES OR POLITICAL PARTIES.

(a) IN GENERAL-

(1) COORDINATED EXPENDITURE OR DISBURSEMENT TREATED AS CONTRIBUTION- Section 301(8) of the Federal Election Campaign Act of 1971 (2 U.S.C. 431(8)) is amended--

(A) by striking `or' at the end of subparagraph (A)(i);

(B) by striking `purpose.' in subparagraph (A)(ii) and inserting `purpose;';

(C) by adding at the end of subparagraph (A) the following:

`(iii) any coordinated expenditure or other disbursement made by any person in connection with a candidate's election, regardless of whether the expenditure or disbursement is for a communication that contains express advocacy; or

`(iv) any expenditure or other disbursement made in coordination with a national committee, State committee, or other political committee of a political party by a person (other than a candidate or a candidate's authorized committee) in connection with an election, regardless of whether the expenditure or disbursement is for a communication that contains express advocacy.'.

(2) CONFORMING AMENDMENT- Section 315(a)(7) of the Federal Election Campaign Act of 1971 (2 U.S.C. 441a(a)(7)) is amended by striking subparagraph (B) and inserting the following:

`(B) a coordinated expenditure or disbursement described in--

`(i) section 301(8)(C) shall be considered to be a contribution to the candidate or an expenditure by the candidate, respectively; and

`(ii) section 301(8)(D) shall be considered to be a contribution to, or an expenditure by, the political party committee, respectively; and'.

(b) DEFINITION OF COORDINATION- Section 301(8) of the Federal Election Campaign Act of 1971 (2 U.S.C. 431(8)), as amended by subsection (a), is amended by adding at the end the following:

`(C) For purposes of subparagraph (A)(iii), the term `coordinated expenditure or other disbursement' means a payment made in concert or cooperation with, at the request or suggestion of , or pursuant to any general or particular understanding with, such candidate, the candidate's authorized political committee, or their agents, or a political party committee or its agents.'.

(c) REGULATIONS BY THE FEDERAL ELECTION COMMISSION- (1) Within 90 days of the effective date of this Act, the Federal Election Commission shall promulgate new regulations to enforce the statutory standard set by this provision. The regulation shall not require collaboration or agreement to establish coordination. In addition to any subject determined by the Commission, the regulations shall address--

(A) payments for the republication of campaign materials;

(B) payments for the use of a common vendor;

(C) payments for communications directed or made by persons who previously served as an employee of a candidate or a political party;

(D) payments for communications made by a person after substantial discussion about the communication with a candidate or a political party; and

(E) the impact of coordinating internal communications by any person to its restricted class has on any subsequent `Federal election activity' as defined in section 301 of the Federal Election Campaign Act of 1971.

(2) The regulations on coordination adopted by the Federal Election Commission and published in the Federal Register at page 76138 of volume 65, Federal Register, on December 6, 2000, are repealed as of 90 days after the effective date of this Act.

(d) MEANING OF CONTRIBUTION OR EXPENDITURE FOR THE PURPOSES OF SECTION 316- Section 316(b)(2) of the Federal Election Campaign Act of 1971 (2 U.S.C. 441b(b)(2)) is amended by striking `shall include' and inserting `includes a contribution or expenditure, as those terms are defined in section 301, and also

includes'.

## TITLE III--MISCELLANEOUS

## SEC. 301. USE OF CONTRIBUTED AMOUNTS FOR CERTAIN PURPOSES.

Title III of the Federal Election Campaign Act of 1971 (2 U.S.C. 431 et seq.) is amended by striking section 313 and inserting the following:

## `SEC. 313. USE OF CONTRIBUTED AMOUNTS FOR CERTAIN PURPOSES.

`(a) PERMITTED USES- A contribution accepted by a candidate, and any other donation received by an individual as support for activities of the individual as a holder of Federal office, may be used by the candidate or individual--

`(1) for otherwise authorized expenditures in connection with the campaign for Federal office of the candidate or individual;

`(2) for ordinary and necessary expenses incurred in connection with duties of the individual as a holder of Federal office;

`(3) for contributions to an organization described in section 170(c) of the Internal Revenue Code of 1986; or

`(4) for transfers to a national, State, or local committee of a political party.

`(b) PROHIBITED USE-

`(1) IN GENERAL- A contribution or donation described in subsection (a) shall not be converted by any person to personal use.

`(2) CONVERSION- For the purposes of paragraph (1), a contribution or donation shall be considered to be converted to personal use if the contribution or amount is used to fulfill any commitment, obligation, or expense of a person that would exist irrespective of the candidate's election campaign or individual's duties as a holder of Federal office, including--

`(A) a home mortgage, rent, or utility payment;

`(B) a clothing purchase;

`(C) a noncampaign-related automobile expense;

`(D) a country club membership;

`(E) a vacation or other noncampaign-related trip;

`(F) a household food item;

`(G) a tuition payment;

`(H) admission to a sporting event, concert, theater, or other form of entertainment not associated with an election campaign; and

`(I) dues, fees, and other payments to a health club or recreational facility.'.

## SEC. 302. PROHIBITION OF FUNDRAISING ON FEDERAL PROPERTY.

Section 607 of title 18, United States Code, is amended--

(1) by striking subsection (a) and inserting the following:

`(a) PROHIBITION-

`(1) IN GENERAL- It shall be unlawful for any person to solicit or receive a donation of money or other thing of value in connection with a Federal, State, or local election from a person who is located in a room or building occupied in the discharge of official duties by an officer or employee of the United States. It shall be unlawful for an individual who is an officer or employee of the Federal Government, including the President, Vice President, and Members of Congress, to solicit or receive a donation of money or other thing of value in connection with a Federal, State, or local election, while in any room or building occupied in the discharge of official duties by an officer or employee of the United States, from any person.

`(2) PENALTY- A person who violates this section shall be fined not more than $5,000, imprisoned more than 3 years, or both.'; and

(2) in subsection (b), by inserting `or Executive Office of the President' after `Congress' .

## SEC. 303. STRENGTHENING FOREIGN MONEY BAN.

Section 319 of the Federal Election Campaign Act of 1971 (2 U.S.C. 441e) is amended--

(1) by striking the heading and inserting the following: `CONTRIBUTIONS AND DONATIONS BY FOREIGN NATIONALS'; and

(2) by striking subsection (a) and inserting the following:

`(a) PROHIBITION- It shall be unlawful for--

`(1) a foreign national, directly or indirectly, to make--

`(A) a contribution or donation of money or other thing of value, or to make an express or implied promise to make a contribution or donation, in connection with a Federal, State, or local election; or

`(B) a contribution or donation to a committee of a political party; or

`(2) for a person to solicit, accept, or receive such contribution or donation from a foreign national.'.

## SEC. 304. MODIFICATION OF INDIVIDUAL CONTRIBUTION LIMITS IN RESPONSE TO EXPENDITURES FROM PERSONAL FUNDS.

(a) INCREASED LIMITS FOR INDIVIDUALS-

(1) IN GENERAL- Section 315 of the Federal Election Campaign Act of 1971 (2 U.S.C. 441a) is amended--

(A) in subsection (a)(1), by striking `No person' and inserting `Except as provided in subsection (i), no person'; and

(B) by adding at the end the following:

`(i) INCREASED LIMIT TO ALLOW RESPONSE TO EXPENDITURES FROM PERSONAL FUNDS-

`(1) INCREASE-

`(A) IN GENERAL- Subject to paragraph (2), if the opposition personal funds amount with respect to a candidate for election to the office of Senator exceeds the threshold amount, the limit under subsection (a)(1) (A) (in this subsection referred to as the `applicable limit') with respect to that candidate shall be the increased limit.

`(B) THRESHOLD AMOUNT-

`(i) STATE-BY-STATE COMPETITIVE AND FAIR CAMPAIGN FORMULA- In this subsection, the threshold amount with respect to an election cycle of a candidate described in subparagraph (A) is an amount equal to the sum of --

`(I) $150,000; and

`(II) $0.04 multiplied by the voting age population.

`(ii) VOTING AGE POPULATION- In this subparagraph, the term `voting age population' means in the case of a candidate for the office of Senator, the voting age population of the State of the candidate (as certified under section 315(e)).

`(C) INCREASED LIMIT- Except as provided in clause (ii), for purposes of subparagraph (A), if the opposition personal funds amount is over--

`(i) 2 times the threshold amount, but not over 4 times that amount--

`(I) the increased limit shall be 3 times the applicable limit; and

`(II) the limit under subsection (a)(3) shall not apply with respect to any contribution made with respect to a candidate if such contribution is made under the increased limit of subparagraph (A) during a period in which the candidate may accept such a contribution;

`(ii) 4 times the threshold amount, but not over 10 times that amount--

`(I) the increased limit shall be 6 times the applicable limit; and

`(II) the limit under subsection (a)(3) shall not apply with respect to any contribution made with respect to a candidate if such contribution is made under the increased limit of subparagraph (A) during a period in which the candidate may accept such a contribution; and

`(iii) 10 times the threshold amount--

`(I) the increased limit shall be 6 times the applicable limit;

`(II) the limit under subsection (a)(3) shall not apply with respect to any contribution made with respect to a candidate if such contribution is made under the increased limit of subparagraph (A) during a period in which the candidate may accept such a contribution; and

`(III) the limits under subsection (d) with respect to any expenditure by a State or national committee of a political party shall not apply.

`(D) OPPOSITION PERSONAL FUNDS AMOUNT- The opposition personal funds amount is an amount equal to the excess (if any) of --

`(i) the greatest aggregate amount of expenditures from personal funds (as defined in section 304(a)(6)(B)) that an opposing candidate in the same election makes; over

`(ii) the aggregate amount of expenditures from personal funds made by the candidate with respect to the election.

`(2) TIME TO ACCEPT CONTRIBUTIONS UNDER INCREASED LIMIT-

`(A) IN GENERAL- Subject to subparagraph (B), a candidate and the candidate's authorized committee shall not accept any contribution, and a party committee shall not make any expenditure, under the increased limit under paragraph (1)--

`(i) until the candidate has received notification of the opposition personal funds amount under section 304(a)(6)(B); and

`(ii) to the extent that such contribution, when added to the aggregate amount of contributions previously accepted and party expenditures previously made under the increased limits under this subsection for the election cycle, exceeds 110 percent of the opposition personal funds amount.

`(B) EFFECT OF WITHDRAWAL OF AN OPPOSING CANDIDATE- A candidate and a candidate's authorized committee shall not accept any contribution and a party shall not make any expenditure under the increased limit after the date on which an opposing candidate ceases to be a candidate to the extent that the amount of such increased limit is attributable to such an opposing candidate.

`(3) DISPOSAL OF EXCESS CONTRIBUTIONS-

`(A) IN GENERAL- The aggregate amount of contributions accepted by a candidate or a candidate's authorized committee under the increased limit under paragraph (1) and not otherwise expended in connection with the election with respect to which such contributions relate shall, not later than 50 days after the date of such election, be used in the manner described in subparagraph (B).

`(B) RETURN TO CONTRIBUTORS- A candidate or a candidate's authorized committee shall return the excess contribution to the person who made the contribution.

`(j) LIMITATION ON REPAYMENT OF PERSONAL LOANS- Any candidate who incurs personal loans made after the date of enactment of the Bipartisan Campaign Reform Act of 2001 in connection with the candidate's campaign for election shall not repay (directly or indirectly), to the extent such loans exceed $250,000, such loans from any contributions made to such candidate or any authorized committee of such candidate after the date of such election.'.

(b) NOTIFICATION OF EXPENDITURES FROM PERSONAL FUNDS- Section 304(a)(6) of the Federal Election Campaign Act of 1971 (2 U.S.C. 434(a)(6)) is amended--

(1) by redesignating subparagraph (B) as subparagraph (E); and

(2) by inserting after subparagraph (A) the following:

`(B) NOTIFICATION OF EXPENDITURE FROM PERSONAL FUNDS-

`(i) DEFINITION OF EXPENDITURE FROM PERSONAL FUNDS- In this subparagraph, the term `expenditure from personal funds' means--

`(I) an expenditure made by a candidate using personal funds; and

`(II) a contribution or loan made by a candidate using personal funds or a loan secured using such funds to the candidate's authorized committee.

`(ii) DECLARATION OF INTENT- Not later than the date that is 15 days after the date on which an individual becomes a candidate for the office of Senator, the candidate shall file a declaration stating the total amount of expenditures from personal funds that the candidate intends to make, or to obligate to make, with respect to the election will exceed the State-by-State competitive and fair campaign formula with--

`(I) the Commission; and

`(II) each candidate in the same election.

`(iii) INITIAL NOTIFICATION- Not later than 24 hours after a candidate described in clause (ii) makes or obligates to make an aggregate amount of expenditures from personal funds in excess of 2 times the threshold amount in connection with any election, the candidate shall file a notification with--

`(I) the Commission; and

`(II) each candidate in the same election.

`(iv) ADDITIONAL NOTIFICATION- After a candidate files an initial notification under clause (iii), the candidate shall file an additional notification each time expenditures from personal funds are made or obligated to be made in an aggregate amount that exceed $10,000 amount with--

`(I) the Commission; and

`(II) each candidate in the same election.

Such notification shall be filed not later than 24 hours after the expenditure is made.

`(v) CONTENTS- A notification under clause (iii) or (iv) shall include--

`(I) the name of the candidate and the office sought by the candidate;

`(II) the date and amount of each expenditure; and

`(III) the total amount of expenditures from personal funds that the candidate has made, or obligated to make, with respect to an election as of the date of the expenditure that is the subject of the notification.

`(C) NOTIFICATION OF DISPOSAL OF EXCESS CONTRIBUTIONS- In the next regularly scheduled report after the date of the election for which a candidate seeks nomination for election to, or election to, Federal office, the candidate or the candidate's authorized committee shall submit to the Commission a report indicating the source and amount of any excess contributions (as determined under paragraph (1) of section 315(i)) and the manner in which the candidate or the candidate's authorized committee used such funds.

`(D) ENFORCEMENT- For provisions providing for the enforcement of the reporting requirements under this paragraph, see section 309.'.

(c) DEFINITIONS- Section 301 of the Federal Election Campaign Act of 1971 (2 U.S.C. 431) is amended by adding at the end the following:

`(20) ELECTION CYCLE- The term `election cycle' means the period beginning on the day after the date of the most recent election for the specific office or seat that a candidate is seeking and ending on the date of the next election for that office or seat. For purposes of the preceding sentence, a primary election and a general election shall be considered to be separate elections.

`(21) PERSONAL FUNDS- The term `personal funds' means an amount that is derived from--

   `(A) any asset that, under applicable State law, at the time the individual became a candidate, the candidate had legal right of access to or control over, and with respect to which the candidate had--

      `(i) legal and rightful title; or

      `(ii) an equitable interest;

   `(B) income received during the current election cycle of the candidate, including--

      `(i) a salary and other earned income from bona fide employment;

      `(ii) dividends and proceeds from the sale of the candidate's stocks or other investments;

      `(iii) bequests to the candidate;

      `(iv) income from trusts established before the beginning of the election cycle;

      `(v) income from trusts established by bequest after the beginning of the election cycle of which the candidate is the beneficiary;

      `(vi) gifts of a personal nature that had been customarily received by the candidate prior to the beginning of the election cycle; and

`(vii) proceeds from lotteries and similar legal games of chance; and

`(C) a portion of assets that are jointly owned by the candidate and the candidate's spouse equal to the candidate's share of the asset under the instrument of conveyance or ownership, but if no specific share is indicated by an instrument of conveyance or ownership, the value of 1/2 of the property.'.

## SEC.

| *THIS SEARCH* | *THIS DOCUMENT* | *GO TO* |
|---|---|---|
| Next Hit | Forward | New Bills Search |
| Prev Hit | Back | HomePage |
| Hit List | Best Sections | Help |
| | Contents Display | |

THOMAS Home | Contact | Accessibility | Legal | USA.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |
|---|---|
| ) | |
| CHRISTOPHER SHAYS and ) | |
| MARTIN MEEHAN, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 06-CV-1247 (CKK) |
| v. ) | |
| ) | FEC EXHIBIT 4 |
| ) | |
| FEDERAL ELECTION COMMISSION, ) | |
| ) | |
| Defendant. ) | |
| ) | |

_____

**FEC EXHIBIT FOUR**

The Library of Congress > THOMAS Home > Bills, Resolutions > Search Results

*THIS SEARCH*      *THIS DOCUMENT*      *GO TO*
Next Hit           Forward              New Bills Search
Prev Hit           Back                 HomePage
Hit List           Best Sections        Help
                   Contents Display

# H.R.2356

## Bipartisan Campaign Reform Act of 2001 (Reported in House)

## SEC. 214. COORDINATION WITH CANDIDATES OR POLITICAL PARTIES.

(a) IN GENERAL-

(1) COORDINATED EXPENDITURE OR DISBURSEMENT TREATED AS CONTRIBUTION- Section 301(8) of the Federal Election Campaign Act of 1971 (2 U.S.C. 431(8)) is amended--

(A) by striking `or' at the end of subparagraph (A)(i);

(B) by striking `purpose.' in subparagraph (A)(ii) and inserting `purpose;'; and

(C) by adding at the end of subparagraph (A) the following:

`(iii) any coordinated expenditure or other disbursement made by any person in connection with a candidate's election, regardless of whether the expenditure or disbursement is for a communication that contains express advocacy; or

`(iv) any coordinated expenditure or other disbursement made in coordination with a national committee, State committee, or other political committee of a political party by a person (other than a candidate or a candidate's authorized committee) in connection with an election, regardless of whether the expenditure or disbursement is for a communication that contains express advocacy.'.

(2) CONFORMING AMENDMENT- Section 315(a)(7) of the Federal Election Campaign Act of 1971 (2 U.S.C. 441a(a)(7)) is amended by striking subparagraph (B) and inserting the following:

`(B) a coordinated expenditure or disbursement described in--

`(i) section 301(8)(A)(iii) shall be considered to be a contribution to the candidate and an expenditure by the candidate; and

`(ii) section 301(8)(A)(iv) shall be considered to be a contribution to, and an expenditure by, the political party committee; and'.

(b) DEFINITION OF COORDINATION- Section 301(8) of the Federal Election Campaign Act of 1971 (2 U.S.C. 431(8)) is amended by adding at the end the following:

`(C) For purposes of subparagraph (A)(iii) and (iv), the term `coordinated expenditure or other disbursement' means a payment made in concert or cooperation with, at the request or suggestion of , or pursuant to any general or particular understanding with, such candidate, the candidate's authorized political committee, or their agents, or a political party committee or its agents.'.

(c) REGULATIONS BY THE FEDERAL ELECTION COMMISSION- (1) Within 90 days of the effective date of this Act, the Federal Election Commission shall promulgate new regulations to enforce the statutory standard set by section 301(8)(C) of the Federal Election Campaign Act of 1971 (as added by subsection (b)) and section 301(17)(B) of such Act (as amended by section 211). The regulations shall not require collaboration or agreement to establish coordination. In addition to any subject determined by the Commission, the regulations shall address--

(A) payments for the republication of campaign materials;

(B) payments for the use of a common vendor;

(C) payments for communications directed or made by persons who previously served as an employee of a candidate or a political party; and

(D) payments for communications made by a person after substantial discussion about the communication with a candidate or a political party.

(2) The regulations on coordination adopted by the Federal Election Commission and published in the Federal Register at page 76138 of volume 65, Federal Register, on December 6, 2000, are repealed as of 90 days after the effective date of this Act.

(d) MEANING OF CONTRIBUTION OR EXPENDITURE FOR THE PURPOSES OF SECTION 316- Section 316(b)(2) of the Federal Election Campaign Act of 1971 (2 U.S.C. 441b(b)(2)) is amended by striking `shall include' and inserting `includes a contribution or expenditure, as those terms are defined in section 301, and also includes'.

## TITLE III--MISCELLANEOUS

## SEC. 301. USE OF CONTRIBUTED AMOUNTS FOR CERTAIN PURPOSES.

Title III of the Federal Election Campaign Act of 1971 (2 U.S.C. 431 et seq.) is amended by striking section 313 and inserting the following:

## `SEC. 313. USE OF CONTRIBUTED AMOUNTS FOR CERTAIN PURPOSES.

`(a) PERMITTED USES- A contribution accepted by a candidate, and any other donation received by an individual as support for activities of the individual as a holder of Federal office, may be used by the candidate or individual--

`(1) for otherwise authorized expenditures in connection with the campaign for Federal office of the candidate or individual;

`(2) for ordinary and necessary expenses incurred in connection with duties of the individual as a holder of Federal office;

`(3) for contributions to an organization described in section 170(c) of the Internal Revenue Code of 1986; or

`(4) for transfers to a national, State, or local committee of a political party.

`(b) PROHIBITED USE-

`(1) IN GENERAL- A contribution or donation described in subsection (a) shall not be converted by any person to personal use.

`(2) CONVERSION- For the purposes of paragraph (1), a contribution or donation shall be considered to be converted to personal use if the contribution or amount is used to fulfill any commitment, obligation, or expense of a person that would exist irrespective of the candidate's election campaign or individual's duties as a holder of Federal office, including--

`(A) a home mortgage, rent, or utility payment;

`(B) a clothing purchase;

`(C) a noncampaign-related automobile expense;

`(D) a country club membership;

`(E) a vacation or other noncampaign-related trip;

`(F) a household food item;

`(G) a tuition payment;

`(H) admission to a sporting event, concert, theater, or other form of entertainment not associated with an election campaign; and

`(I) dues, fees, and other payments to a health club or recreational facility.'.

## SEC. 302. PROHIBITION OF FUNDRAISING ON FEDERAL PROPERTY.

Section 607 of title 18, United States Code, is amended--

(1) by striking subsection (a) and inserting the following:

`(a) PROHIBITION-

`(1) IN GENERAL- It shall be unlawful for any person to solicit or receive a donation of money or other thing of value in connection with a Federal, State, or local election from a person who is located in a room or building occupied in the discharge of official duties by an officer or employee of the United States. It shall be unlawful for an individual who is an officer or employee of the Federal Government, including the President, Vice President, and Members of Congress, to solicit or receive a donation of money or other thing of value in connection with a Federal, State, or local election, while in any room or building occupied in the discharge of official duties by an officer or employee of the United States, from any person.

`(2) PENALTY- A person who violates this section shall be fined not more than $5,000, imprisoned more than 3 years, or both.'; and

(2) in subsection (b), by inserting `or Executive Office of the President' after `Congress' .

## SEC. 303. STRENGTHENING FOREIGN MONEY BAN.

Section 319 of the Federal Election Campaign Act of 1971 (2 U.S.C. 441e) is amended--

(1) by striking the heading and inserting the following: `CONTRIBUTIONS AND DONATIONS BY FOREIGN NATIONALS'; and

(2) by striking subsection (a) and inserting the following:

`(a) PROHIBITION- It shall be unlawful for--

`(1) a foreign national, directly or indirectly, to make--

`(A) a contribution or donation of money or other thing of value, or to make an express or implied promise to make a contribution or donation, in connection with a Federal, State, or local election;

`(B) a contribution or donation to a committee of a political party; or

`(C) an expenditure, independent expenditure, or disbursement for an electioneering communication (within the meaning of section 304(f)(3)); or

`(2) a person to solicit, accept, or receive a contribution or donation described in subparagraph (A) or (B) of paragraph (1) from a foreign national.'.

## SEC. 304. MODIFICATION OF INDIVIDUAL CONTRIBUTION LIMITS IN RESPONSE TO EXPENDITURES FROM PERSONAL FUNDS.

(a) INCREASED LIMITS FOR INDIVIDUALS-

(1) IN GENERAL- Section 315 of the Federal Election Campaign Act of 1971 (2 U.S.C. 441a) is amended--

(A) in subsection (a)(1), by striking `No person' and inserting `Except as provided in subsection (i), no person'; and

(B) by adding at the end the following:

`(i) INCREASED LIMIT TO ALLOW RESPONSE TO EXPENDITURES FROM PERSONAL FUNDS-

`(1) INCREASE-

`(A) IN GENERAL- Subject to paragraph (2), if the opposition personal funds amount with respect to a candidate for election to the office of Senator exceeds the threshold amount, the limit under subsection (a)(1) (A) (in this subsection referred to as the `applicable limit') with respect to that candidate shall be the increased limit.

`(B) THRESHOLD AMOUNT-

`(i) STATE-BY-STATE COMPETITIVE AND FAIR CAMPAIGN FORMULA- In this subsection, the threshold amount with respect to an election cycle of a candidate described in subparagraph (A) is an amount equal to the sum of --

`(I) $150,000; and

`(II) $0.04 multiplied by the voting age population.

`(ii) VOTING AGE POPULATION- In this subparagraph, the term `voting age population' means in the case of a candidate for the office of Senator, the voting age population of the State of the candidate (as certified under section 315(e)).

`(C) INCREASED LIMIT- Except as provided in clause (ii), for purposes of subparagraph (A), if the opposition personal funds amount is over--

  `(i) 2 times the threshold amount, but not over 4 times that amount--

    `(I) the increased limit shall be 3 times the applicable limit; and

    `(II) the limit under subsection (a)(3) shall not apply with respect to any contribution made with respect to a candidate if such contribution is made under the increased limit of subparagraph (A) during a period in which the candidate may accept such a contribution;

  `(ii) 4 times the threshold amount, but not over 10 times that amount--

    `(I) the increased limit shall be 6 times the applicable limit; and

    `(II) the limit under subsection (a)(3) shall not apply with respect to any contribution made with respect to a candidate if such contribution is made under the increased limit of

subparagraph (A) during a period in which the candidate may accept such a contribution; and

  `(iii) 10 times the threshold amount--

    `(I) the increased limit shall be 6 times the applicable limit;

    `(II) the limit under subsection (a)(3) shall not apply with respect to any contribution made with respect to a candidate if such contribution is made under the increased limit of subparagraph (A) during a period in which the candidate may accept such a contribution; and

    `(III) the limits under subsection (d) with respect to any expenditure by a State or national committee of a political party shall not apply.

`(D) OPPOSITION PERSONAL FUNDS AMOUNT- The opposition personal funds amount is an amount equal to the excess (if any) of --

  `(i) the greatest aggregate amount of expenditures from personal funds (as defined in section 304(a)(6)(B)) that an opposing candidate in the same election makes; over

  `(ii) the aggregate amount of expenditures from personal funds

made by the candidate with respect to the election.

`(2) TIME TO ACCEPT CONTRIBUTIONS UNDER INCREASED LIMIT-

`(A) IN GENERAL- Subject to subparagraph (B), a candidate and the candidate's authorized committee shall not accept any contribution, and a party committee shall not make any expenditure, under the increased limit under paragraph (1)--

`(i) until the candidate has received notification of the opposition personal funds amount under section 304(a)(6)(B); and

`(ii) to the extent that such contribution, when added to the aggregate amount of contributions previously accepted and party expenditures previously made under the increased limits under this subsection for the election cycle, exceeds 110 percent of the opposition personal funds amount.

`(B) EFFECT OF WITHDRAWAL OF AN OPPOSING CANDIDATE- A candidate and a candidate's authorized committee shall not accept any contribution and a party shall not make any expenditure under the increased limit after the date on which an opposing candidate ceases to be a candidate to the extent that the amount of such increased limit is attributable to such an opposing candidate.

`(3) DISPOSAL OF EXCESS CONTRIBUTIONS-

`(A) IN GENERAL- The aggregate amount of contributions accepted by a candidate or a candidate's authorized committee under the increased limit under paragraph (1) and not otherwise expended in connection with the election with respect to which such contributions relate shall, not later than 50 days after the date of such election, be used in the manner described in subparagraph (B).

`(B) RETURN TO CONTRIBUTORS- A candidate or a candidate's authorized committee shall return the excess contribution to the person who made the contribution.

`(j) LIMITATION ON REPAYMENT OF PERSONAL LOANS- Any candidate who incurs personal loans made after the date of enactment of the Bipartisan Campaign Reform Act of 2001 in connection with the candidate's campaign for election shall not repay (directly or indirectly), to the extent such loans exceed $250,000, such loans from any contributions made to such candidate or any authorized committee of such candidate after the date of such election.'.

(b) NOTIFICATION OF EXPENDITURES FROM PERSONAL FUNDS- Section 304(a)(6) of the Federal Election Campaign Act of 1971 (2 U.S.C. 434(a)(6)) is amended--

(1) by redesignating subparagraph (B) as subparagraph (E); and

(2) by inserting after subparagraph (A) the following:

`(B) NOTIFICATION OF EXPENDITURE FROM PERSONAL FUNDS-

> `(i) DEFINITION OF EXPENDITURE FROM PERSONAL FUNDS- In this subparagraph, the term `expenditure from personal funds' means--

>> `(I) an expenditure made by a candidate using personal funds; and

>> `(II) a contribution or loan made by a candidate using personal funds or a loan secured using such funds to the candidate's authorized committee.

> `(ii) DECLARATION OF INTENT- Not later than the date that is 15 days after the date on which an individual becomes a candidate for the office of Senator, the candidate shall file a declaration stating the total amount of expenditures from personal funds that the candidate intends to make, or to obligate to make, with respect to the election that will exceed the State-by-State competitive and fair campaign formula with--

>> `(I) the Commission; and

>> `(II) each candidate in the same election.

> `(iii) INITIAL NOTIFICATION- Not later than 24 hours after a candidate described in clause (ii) makes or obligates to make an aggregate amount of expenditures from personal funds in excess of 2 times the threshold amount in connection with any election, the candidate shall file a notification with--

>> `(I) the Commission; and

>> `(II) each candidate in the same election.

> `(iv) ADDITIONAL NOTIFICATION- After a candidate files an initial notification under clause (iii), the candidate shall file an additional notification each time expenditures from personal funds are

made or obligated to be made in an aggregate amount that exceed $10,000 with--

>> `(I) the Commission; and

>> `(II) each candidate in the same election.

Such notification shall be filed not later than 24 hours after the expenditure is made.

> `(v) CONTENTS- A notification under clause (iii) or (iv) shall include--

>> `(I) the name of the candidate and the office sought by the candidate;

>> `(II) the date and amount of each expenditure; and

`(III) the total amount of expenditures from personal funds that the candidate has made, or obligated to make, with respect to an election as of the date of the expenditure that is the subject of the notification.

`(C) NOTIFICATION OF DISPOSAL OF EXCESS CONTRIBUTIONS- In the next regularly scheduled report after the date of the election for which a candidate seeks nomination for election to, or election to, Federal office, the candidate or the candidate's authorized committee shall submit to the Commission a report indicating the source and amount of any excess contributions (as determined under paragraph (1) of section 315(i)) and the manner in which the candidate or the candidate's authorized committee used such funds.

`(D) ENFORCEMENT- For provisions providing for the enforcement of the reporting requirements under this paragraph, see section 309.'.

(c) DEFINITIONS- Section 301 of the Federal Election Campaign Act of 1971 (2 U.S.C. 431), as amended by section 101(a), is further amended by adding at the end the following:

`(25) ELECTION CYCLE- The term `election cycle' means the period beginning on the day after the date of the most recent election for the specific office or seat that a candidate is seeking and ending on the date of the next election for that office or seat. For purposes of the preceding sentence, a primary election and a general election shall be considered to be separate elections.

`(26) PERSONAL FUNDS- The term `personal funds' means an amount that is derived from--

`(A) any asset that, under applicable State law, at the time the individual became a candidate, the candidate had legal right of access to or control over, and with respect to which the candidate had--

`(i) legal and rightful title; or

`(ii) an equitable interest;

`(B) income received during the current election cycle of the candidate, including--

`(i) a salary and other earned income from bona fide employment;

`(ii) dividends and proceeds from the sale of the candidate's stocks or other investments;

`(iii) bequests to the candidate;

`(iv) income from trusts established before the beginning of the election cycle;

`(v) income from trusts established by bequest after the beginning of

the election cycle of which the candidate is the beneficiary;

`(vi) gifts of a personal nature that had been customarily received by the candidate prior to the beginning of the election cycle; and

`(vii) proceeds from lotteries and similar legal games of chance; and

`(C) a portion of assets that are jointly owned by the candidate and the candidate's spouse equal to the candidate's share of the asset under the instrument of conveyance or ownership, but if no specific share is indicated by an instrument of conveyance or ownership, the value of 1/2 of the property.'.

## SEC.

| THIS SEARCH | THIS DOCUMENT | GO TO |
|---|---|---|
| Next Hit | Forward | New Bills Search |
| Prev Hit | Back | HomePage |
| Hit List | Best Sections | Help |
| | Contents Display | |

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| CHRISTOPHER SHAYS and MARTIN MEEHAN, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 06-CV-1247 (CKK) |
| | ) | FEC EXHIBIT FIVE |
| FEDERAL ELECTION COMMISSION, | ) | |
| Defendant. | ) | |

_____


## FEC EXHIBIT FIVE

*THIS SEARCH*   *THIS DOCUMENT*   *GO TO*
Next Hit        Forward           New Bills Search
Prev Hit        Back              HomePage
Hit List        Best Sections     Help
                Contents Display

# H.R.2356

**Bipartisan Campaign Reform Act of 2002 (Engrossed as Agreed to or Passed by House)**

## SEC. 214. COORDINATION WITH CANDIDATES OR POLITICAL PARTIES.

(a) IN GENERAL- Section 315(a)(7)(B) of the Federal Election Campaign Act of 1971 (2 U.S.C. 441a(a)(7)(B)) is amended--

> (A) by redesignating clause (ii) as clause (iii); and

> (B) by inserting after clause (i) the following new clause:

`(ii) expenditures made by any person (other than a candidate or candidate's authorized committee) in cooperation, consultation, or concert, with, or at the request or suggestion of , a national, State, or local committee of a political party, shall be considered to be contributions made to such party committee; and'.

(b) REPEAL OF CURRENT REGULATIONS- The regulations on coordinated communications paid for by persons other than candidates, authorized committees of candidates, and party committees adopted by the Federal Election Commission and published in the Federal Register at page 76138 of volume 65, Federal Register, on December 6, 2000, are repealed as of the date by which the Commission is required to promulgate new regulations under subsection (c) (as described in the second sentence of section 402(c)).

(c) REGULATIONS BY THE FEDERAL ELECTION COMMISSION- The Federal Election Commission shall promulgate new regulations on coordinated communications paid for by persons other than candidates, authorized committees of candidates, and party committees. The regulations shall not require agreement or formal collaboration to establish coordination. In addition to any subject determined by the Commission, the regulations shall address--

> (A) payments for the republication of campaign materials;

(B) payments for the use of a common vendor;

(C) payments for communications directed or made by persons who previously served as an employee of a candidate or a political party; and

(D) payments for communications made by a person after substantial discussion about the communication with a candidate or a political party.

(d) MEANING OF CONTRIBUTION OR EXPENDITURE FOR THE PURPOSES OF SECTION 316- Section 316(b)(2) of the Federal Election Campaign Act of 1971 (2 U.S.C. 441b(b)(2)) is amended by striking `shall include' and inserting `includes a contribution or expenditure, as those terms are defined in section 301, and also includes'.

## TITLE III--MISCELLANEOUS

# SEC. 301. USE OF CONTRIBUTED AMOUNTS FOR CERTAIN PURPOSES.

Title III of the Federal Election Campaign Act of 1971 (2 U.S.C. 431 et seq.) is amended by striking section 313 and inserting the following:

# `SEC. 313. USE OF CONTRIBUTED AMOUNTS FOR CERTAIN PURPOSES.

`(a) PERMITTED USES- A contribution accepted by a candidate, and any other donation received by an individual as support for activities of the individual as a holder of Federal office, may be used by the candidate or individual--

`(1) for otherwise authorized expenditures in connection with the campaign for Federal office of the candidate or individual;

`(2) for ordinary and necessary expenses incurred in connection with duties of the individual as a holder of Federal office;

`(3) for contributions to an organization described in section 170(c) of the Internal Revenue Code of 1986; or

`(4) for transfers to a national, State, or local committee of a political party.

`(b) PROHIBITED USE-

`(1) IN GENERAL- A contribution or donation described in subsection (a) shall not be converted by any person to personal use.

`(2) CONVERSION- For the purposes of paragraph (1), a contribution or donation shall be considered to be converted to personal use if the contribution or amount is used to fulfill any commitment, obligation, or expense of a person that would exist irrespective of the candidate's election

campaign or individual's duties as a holder of Federal office, including--

`(A) a home mortgage, rent, or utility payment;

`(B) a clothing purchase;

`(C) a noncampaign-related automobile expense;

`(D) a country club membership;

`(E) a vacation or other noncampaign-related trip;

`(F) a household food item;

`(G) a tuition payment;

`(H) admission to a sporting event, concert, theater, or other form of entertainment not associated with an election campaign; and

`(I) dues, fees, and other payments to a health club or recreational facility.'.

## SEC. 302. PROHIBITION OF FUNDRAISING ON FEDERAL PROPERTY.

Section 607 of title 18, United States Code, is amended--

(1) by striking subsection (a) and inserting the following:

`(a) PROHIBITION-

`(1) IN GENERAL- It shall be unlawful for any person to solicit or receive a donation of money or other thing of value in connection with a Federal, State, or local election from a person who is located in a room or building occupied in the discharge of official duties by an officer or employee of the United States. It shall be unlawful for an individual who is an officer or employee of the Federal Government, including the President, Vice President, and Members of Congress, to solicit or receive a donation of money or other thing of value in connection with a Federal, State, or local election, while in any room or building occupied in the discharge of official duties by an officer or employee of the United States, from any person.

`(2) PENALTY- A person who violates this section shall be fined not more than $5,000, imprisoned more than 3 years, or both.'; and

(2) in subsection (b), by inserting `or Executive Office of the President' after `Congress'.

## SEC. 303. STRENGTHENING FOREIGN MONEY BAN.

Section 319 of the Federal Election Campaign Act of 1971 (2 U.S.C. 441e) is amended--

(1) by striking the heading and inserting the following: `CONTRIBUTIONS AND DONATIONS BY FOREIGN NATIONALS'; and

(2) by striking subsection (a) and inserting the following:

`(a) PROHIBITION- It shall be unlawful for--

`(1) a foreign national, directly or indirectly, to make--

`(A) a contribution or donation of money or other thing of value, or to make an express or implied promise to make a contribution or donation, in connection with a Federal, State, or local election;

`(B) a contribution or donation to a committee of a political party; or

`(C) an expenditure, independent expenditure, or disbursement for an electioneering communication (within the meaning of section 304(f)(3)); or

`(2) a person to solicit, accept, or receive a contribution or donation described in subparagraph (A) or (B) of paragraph (1) from a foreign national.'.

## SEC. 304. MODIFICATION OF INDIVIDUAL CONTRIBUTION LIMITS IN RESPONSE TO EXPENDITURES FROM PERSONAL FUNDS.

(a) INCREASED LIMITS FOR INDIVIDUALS- Section 315 of the Federal Election Campaign Act of 1971 (2 U.S.C. 441a) is amended--

(1) in subsection (a)(1), by striking `No person' and inserting `Except as provided in subsection (i), no person'; and

(2) by adding at the end the following:

`(i) INCREASED LIMIT TO ALLOW RESPONSE TO EXPENDITURES FROM PERSONAL FUNDS-

`(1) INCREASE-

`(A) IN GENERAL- Subject to paragraph (2), if the opposition personal funds amount with respect to a candidate for election to the office of Senator exceeds the threshold amount, the limit under subsection (a)(1) (A) (in this subsection referred to as the `applicable limit') with respect to that candidate shall be the increased limit.

`(B) THRESHOLD AMOUNT-

  `(i) STATE-BY-STATE COMPETITIVE AND FAIR CAMPAIGN FORMULA- In this subsection, the threshold amount with respect to an election cycle of a candidate described in subparagraph (A) is an amount equal to the sum of --

    `(I) $150,000; and

    `(II) $0.04 multiplied by the voting age population.

  `(ii) VOTING AGE POPULATION- In this subparagraph, the term `voting age population' means in the case of a candidate for the office of Senator, the voting age population of the State of the candidate (as certified under section 315(e)).

`(C) INCREASED LIMIT- Except as provided in clause (ii), for purposes of subparagraph (A), if the opposition personal funds amount is over--

  `(i) 2 times the threshold amount, but not over 4 times that amount--

    `(I) the increased limit shall be 3 times the applicable limit; and

    `(II) the limit under subsection (a)(3) shall not apply with respect to any contribution made with respect to a candidate if such contribution is made under the increased limit of subparagraph (A) during a period in which the candidate may accept such a contribution;

  `(ii) 4 times the threshold amount, but not over 10 times that amount--

    `(I) the increased limit shall be 6 times the applicable limit; and

    `(II) the limit under subsection (a)(3) shall not apply with respect to any contribution made with respect to a candidate if such contribution is made under the increased limit of subparagraph (A) during a period in which the candidate may accept such a contribution; and

  `(iii) 10 times the threshold amount--

    `(I) the increased limit shall be 6 times the applicable limit;

    `(II) the limit under subsection (a)(3) shall not apply with respect to any contribution made with respect to a candidate if such contribution is made under the increased limit of

subparagraph (A) during a period in which the candidate may accept such a contribution; and

`(III) the limits under subsection (d) with respect to any expenditure by a State or national committee of a political party shall not apply.

`(D) OPPOSITION PERSONAL FUNDS AMOUNT- The opposition personal funds amount is an amount equal to the excess (if any) of --

`(i) the greatest aggregate amount of expenditures from personal funds (as defined in section 304(a)(6)(B)) that an opposing candidate in the same election makes; over

`(ii) the aggregate amount of expenditures from personal funds made by the candidate with respect to the election.

`(2) TIME TO ACCEPT CONTRIBUTIONS UNDER INCREASED LIMIT-

`(A) IN GENERAL- Subject to subparagraph (B), a candidate and the candidate's authorized committee shall not accept any contribution, and a party committee shall not make any expenditure, under the increased limit under paragraph (1)--

`(i) until the candidate has received notification of the opposition personal funds amount under section 304(a)(6)(B); and

`(ii) to the extent that such contribution, when added to the aggregate amount of contributions previously accepted and party expenditures previously made under the increased limits under this subsection for the election cycle, exceeds 110 percent of the opposition personal funds amount.

`(B) EFFECT OF WITHDRAWAL OF AN OPPOSING CANDIDATE- A candidate and a candidate's authorized committee shall not accept any contribution and a party shall not make any expenditure under the increased limit after the date on which an opposing candidate ceases to be a candidate to the extent that the amount of such increased limit is attributable to such an opposing candidate.

`(3) DISPOSAL OF EXCESS CONTRIBUTIONS-

`(A) IN GENERAL- The aggregate amount of contributions accepted by a candidate or a candidate's authorized committee under the increased limit under paragraph (1) and not otherwise expended in connection with the election with respect to which such contributions relate shall, not later than 50 days after the date of such election, be used in the manner described in subparagraph (B).

`(B) RETURN TO CONTRIBUTORS- A candidate or a candidate's authorized committee shall return the excess contribution to the person

who made the contribution.

`(j) LIMITATION ON REPAYMENT OF PERSONAL LOANS- Any candidate who incurs personal loans made after the effective date of the Bipartisan Campaign Reform Act of 2002 in connection with the candidate's campaign for election shall not repay (directly or indirectly), to the extent such loans exceed $250,000, such loans from any contributions made to such candidate or any authorized committee of such candidate after the date of such election.'.

(b) NOTIFICATION OF EXPENDITURES FROM PERSONAL FUNDS- Section 304(a)(6) of the Federal Election Campaign Act of 1971 (2 U.S.C. 434(a)(6)) is amended--

(1) by redesignating subparagraph (B) as subparagraph (E); and

(2) by inserting after subparagraph (A) the following:

`(B) NOTIFICATION OF EXPENDITURE FROM PERSONAL FUNDS-

`(i) DEFINITION OF EXPENDITURE FROM PERSONAL FUNDS- In this subparagraph, the term `expenditure from personal funds' means--

`(I) an expenditure made by a candidate using personal funds; and

`(II) a contribution or loan made by a candidate using personal funds or a loan secured using such funds to the candidate's authorized committee.

`(ii) DECLARATION OF INTENT- Not later than the date that is 15 days after the date on which an individual becomes a candidate for the office of Senator, the candidate shall file a declaration stating the total amount of expenditures from personal funds that the candidate intends to make, or to obligate to make, with respect to the election that will exceed the State-by-State competitive and fair campaign formula with--

`(I) the Commission; and

`(II) each candidate in the same election.

`(iii) INITIAL NOTIFICATION- Not later than 24 hours after a candidate described in clause (ii) makes or obligates to make an aggregate amount of expenditures from personal funds in excess of 2 times the threshold amount in connection with any election, the candidate shall file a notification with--

`(I) the Commission; and

`(II) each candidate in the same election.

`(iv) ADDITIONAL NOTIFICATION- After a candidate files an initial notification under clause (iii), the candidate shall file an additional notification each time expenditures from personal funds are made or obligated to be made in an

aggregate amount that exceed $10,000 with--

`(I) the Commission; and

`(II) each candidate in the same election.

Such notification shall be filed not later than 24 hours after the expenditure is made.

`(v) CONTENTS- A notification under clause (iii) or (iv) shall include--

`(I) the name of the candidate and the office sought by the candidate;

`(II) the date and amount of each expenditure; and

`(III) the total amount of expenditures from personal funds that the candidate has made, or obligated to make, with respect to an election as of the date of the expenditure that is the subject of the notification.

`(C) NOTIFICATION OF DISPOSAL OF EXCESS CONTRIBUTIONS- In the next regularly scheduled report after the date of the election for which a candidate seeks nomination for election to, or election to, Federal office, the candidate or the candidate's authorized committee shall submit to the Commission a report indicating the source and amount of any excess contributions (as determined under paragraph (1) of section 315(i)) and the manner in which the candidate or the candidate's authorized committee used such funds.

`(D) ENFORCEMENT- For provisions providing for the enforcement of the reporting requirements under this paragraph, see section 309.'.

(c) DEFINITIONS- Section 301 of the Federal Election Campaign Act of 1971 (2 U.S.C. 431), as amended by section 101(b), is further amended by adding at the end the following:

`(25) ELECTION CYCLE- The term `election cycle' means the period beginning on the day after the date of the most recent election for the specific office or seat that a candidate is seeking and ending on the date of the next election for that office or seat. For purposes of the preceding sentence, a primary election and a general election shall be considered to be separate elections.

`(26) PERSONAL FUNDS- The term `personal funds' means an amount that is derived from--

`(A) any asset that, under applicable State law, at the time the individual became a candidate, the candidate had legal right of access to or control over, and with respect to which the candidate had--

`(i) legal and rightful title; or

`(ii) an equitable interest;

`(B) income received during the current election cycle of the candidate, including--

> `(i) a salary and other earned income from bona fide employment;

> `(ii) dividends and proceeds from the sale of the candidate's stocks or other investments;

> `(iii) bequests to the candidate;

> `(iv) income from trusts established before the beginning of the election cycle;

> `(v) income from trusts established by bequest after the beginning of the election cycle of which the candidate is the beneficiary;

> `(vi) gifts of a personal nature that had been customarily received by the candidate prior to the beginning of the election cycle; and

> `(vii) proceeds from lotteries and similar legal games of chance; and

`(C) a portion of assets that are jointly owned by the candidate and the candidate's spouse equal to the candidate's share of the asset under the instrument of conveyance or ownership, but if no specific share is indicated by an instrument of conveyance or ownership, the value of 1/2 of the property.'.

## SEC.

| THIS SEARCH | THIS DOCUMENT | GO TO |
|-------------|---------------|-------|
| Next Hit | Forward | New Bills Search |
| Prev Hit | Back | HomePage |
| Hit List | Best Sections | Help |
| | Contents Display | |

THOMAS Home | Contact | Accessibility | Legal | USA.gov

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
CHRISTOPHER SHAYS and          )
MARTIN MEEHAN,             )
                             )
           Plaintiffs,    )
                             )    Civil Action No. 06-CV-1247 (CKK)
      v.                  )
                             )    FEC EXHIBIT SIX
                             )
FEDERAL ELECTION COMMISSION,   )
                             )
           Defendant.   )
_____ )

## FEC EXHIBIT SIX

The Library of Congress > THOMAS Home > Bills, Resolutions > Search Results

| *THIS SEARCH* | *THIS DOCUMENT* | *GO TO* |
|---|---|---|
| Next Hit | Forward | New Bills Search |
| Prev Hit | Back | HomePage |
| Hit List | Best Sections | Help |
| | Contents Display | |

# H.R.2356

**Bipartisan Campaign Reform Act of 2002 (Placed on Calendar in Senate)**

## SEC. 214. COORDINATION WITH CANDIDATES OR POLITICAL PARTIES.

(a) IN GENERAL- Section 315(a)(7)(B) of the Federal Election Campaign Act of 1971 (2 U.S.C. 441a(a)(7)(B)) is amended--

(A) by redesignating clause (ii) as clause (iii); and

(B) by inserting after clause (i) the following new clause:

`(ii) expenditures made by any person (other than a candidate or candidate's authorized committee) in cooperation, consultation, or concert, with, or at the request or suggestion of , a national, State, or local committee of a political party, shall be considered to be contributions made to such party committee; and'.

(b) REPEAL OF CURRENT REGULATIONS- The regulations on coordinated communications paid for by persons other than candidates, authorized committees of candidates, and party committees adopted by the Federal Election Commission and published in the Federal Register at page 76138 of volume 65, Federal Register, on December 6, 2000, are repealed as of the date by which the Commission is required to promulgate new regulations under subsection (c) (as described in the second sentence of section 402(c)).

(c) REGULATIONS BY THE FEDERAL ELECTION COMMISSION- The Federal Election Commission shall promulgate new regulations on coordinated communications paid for by persons other than candidates, authorized committees of candidates, and party committees. The regulations shall not require agreement or formal collaboration to establish coordination. In addition to any subject determined by the Commission, the regulations shall address--

(A) payments for the republication of campaign materials;

(B) payments for the use of a common vendor;

(C) payments for communications directed or made by persons who previously served as an employee of a candidate or a political party; and

(D) payments for communications made by a person after substantial discussion about the communication with a candidate or a political party.

(d) MEANING OF CONTRIBUTION OR EXPENDITURE FOR THE PURPOSES OF SECTION 316- Section 316(b)(2) of the Federal Election Campaign Act of 1971 (2 U.S.C. 441b(b)(2)) is amended by striking `shall include' and inserting `includes a contribution or expenditure, as those terms are defined in section 301, and also includes'.

## TITLE III--MISCELLANEOUS

# SEC. 301. USE OF CONTRIBUTED AMOUNTS FOR CERTAIN PURPOSES.

Title III of the Federal Election Campaign Act of 1971 (2 U.S.C. 431 et seq.) is amended by striking section 313 and inserting the following:

# `SEC. 313. USE OF CONTRIBUTED AMOUNTS FOR CERTAIN PURPOSES.

`(a) PERMITTED USES- A contribution accepted by a candidate, and any other donation received by an individual as support for activities of the individual as a holder of Federal office, may be used by the candidate or individual--

`(1) for otherwise authorized expenditures in connection with the campaign for Federal office of the candidate or individual;

`(2) for ordinary and necessary expenses incurred in connection with duties of the individual as a holder of Federal office;

`(3) for contributions to an organization described in section 170(c) of the Internal Revenue Code of 1986; or

`(4) for transfers to a national, State, or local committee of a political party.

`(b) PROHIBITED USE-

`(1) IN GENERAL- A contribution or donation described in subsection (a) shall not be converted by any person to personal use.

`(2) CONVERSION- For the purposes of paragraph (1), a contribution or donation shall be considered to be converted to personal use if the contribution or amount is used to fulfill any commitment, obligation, or expense of a person that would exist irrespective of the candidate's election

campaign or individual's duties as a holder of Federal office, including--

`(A) a home mortgage, rent, or utility payment;

`(B) a clothing purchase;

`(C) a noncampaign-related automobile expense;

`(D) a country club membership;

`(E) a vacation or other noncampaign-related trip;

`(F) a household food item;

`(G) a tuition payment;

`(H) admission to a sporting event, concert, theater, or other form of entertainment not associated with an election campaign; and

`(I) dues, fees, and other payments to a health club or recreational facility.'.

## SEC. 302. PROHIBITION OF FUNDRAISING ON FEDERAL PROPERTY.

Section 607 of title 18, United States Code, is amended--

(1) by striking subsection (a) and inserting the following:

`(a) PROHIBITION-

`(1) IN GENERAL- It shall be unlawful for any person to solicit or receive a donation of money or other thing of value in connection with a Federal, State, or local election from a person who is located in a room or building occupied in the discharge of official duties by an officer or employee of the United States. It shall be unlawful for an individual who is an officer or employee of the Federal Government, including the President, Vice President, and Members of Congress, to solicit or receive a donation of money or other thing of value in connection with a Federal, State, or local election, while in any room or building occupied in the discharge of official duties by an officer or employee of the United States, from any person.

`(2) PENALTY- A person who violates this section shall be fined not more than $5,000, imprisoned more than 3 years, or both.'; and

(2) in subsection (b), by inserting `or Executive Office of the President' after `Congress'.

## SEC. 303. STRENGTHENING FOREIGN MONEY BAN.

Section 319 of the Federal Election Campaign Act of 1971 (2 U.S.C. 441e) is amended--

(1) by striking the heading and inserting the following: `CONTRIBUTIONS AND DONATIONS BY FOREIGN NATIONALS'; and

(2) by striking subsection (a) and inserting the following:

`(a) PROHIBITION- It shall be unlawful for--

`(1) a foreign national, directly or indirectly, to make--

`(A) a contribution or donation of money or other thing of value, or to make an express or implied promise to make a contribution or donation, in connection with a Federal, State, or local election;

`(B) a contribution or donation to a committee of a political party; or

`(C) an expenditure, independent expenditure, or disbursement for an electioneering communication (within the meaning of section 304(f)(3)); or

`(2) a person to solicit, accept, or receive a contribution or donation described in subparagraph (A) or (B) of paragraph (1) from a foreign national.'.

## SEC. 304. MODIFICATION OF INDIVIDUAL CONTRIBUTION LIMITS IN RESPONSE TO EXPENDITURES FROM PERSONAL FUNDS.

(a) INCREASED LIMITS FOR INDIVIDUALS- Section 315 of the Federal Election Campaign Act of 1971 (2 U.S.C. 441a) is amended--

(1) in subsection (a)(1), by striking `No person' and inserting `Except as provided in subsection (i), no person'; and

(2) by adding at the end the following:

`(i) INCREASED LIMIT TO ALLOW RESPONSE TO EXPENDITURES FROM PERSONAL FUNDS-

`(1) INCREASE-

`(A) IN GENERAL- Subject to paragraph (2), if the opposition personal funds amount with respect to a candidate for election to the office of Senator exceeds the threshold amount, the limit under subsection (a)(1) (A) (in this subsection referred to as the `applicable limit') with respect to that candidate shall be the increased limit.

`(B) THRESHOLD AMOUNT-

　`(i) STATE-BY-STATE COMPETITIVE AND FAIR CAMPAIGN FORMULA- In this subsection, the threshold amount with respect to an election cycle of a candidate described in subparagraph (A) is an amount equal to the sum of --

　　`(I) \$150,000; and

　　`(II) \$0.04 multiplied by the voting age population.

　`(ii) VOTING AGE POPULATION- In this subparagraph, the term `voting age population' means in the case of a candidate for the office of Senator, the voting age population of the State of the candidate (as certified under section 315(e)).

`(C) INCREASED LIMIT- Except as provided in clause (ii), for purposes of subparagraph (A), if the opposition personal funds amount is over--

　`(i) 2 times the threshold amount, but not over 4 times that amount--

　　`(I) the increased limit shall be 3 times the applicable limit; and

　　`(II) the limit under subsection (a)(3) shall not apply with respect to any contribution made with respect to a candidate if such contribution is made under the increased limit of subparagraph (A) during a period in which the candidate may accept such a contribution;

　`(ii) 4 times the threshold amount, but not over 10 times that amount--

　　`(I) the increased limit shall be 6 times the applicable limit; and

　　`(II) the limit under subsection (a)(3) shall not apply with respect to any contribution made with respect to a candidate if such contribution is made under the increased limit of subparagraph (A) during a period in which the candidate may accept such a contribution; and

　`(iii) 10 times the threshold amount--

　　`(I) the increased limit shall be 6 times the applicable limit;

　　`(II) the limit under subsection (a)(3) shall not apply with respect to any contribution made with respect to a candidate if such contribution is made under the increased limit of

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
)
CHRISTOPHER SHAYS and                     )
MARTIN MEEHAN,                            )
                                          )
                    Plaintiffs,           )
                                          )        Civil Action No. 06-CV-1247 (CKK)
          v.                              )
                                          )        FEC EXHIBIT SEVEN
                                          )
FEDERAL ELECTION COMMISSION,              )
                                          )
                    Defendant.            )
_____ )


**FEC EXHIBIT SEVEN**

# Federal Election Commission Advisory Opinion Number 1990-5

Back to Federal Election Commission Advisory Opinions Search Page

Federal Election Commission Main Page

April 27, 1990

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

ADVISORY OPINION 1990-5

Margaret R. Mueller
8848 Music Street
Novelty, Ohio 44072

Dear Ms. Mueller:

This responds to your letters dated March 12, 1990, and March 24,
1990, requesting an advisory opinion concerning the application of
the Federal Election Campaign Act of 1971, as amended ("the Act"), and
Commission regulations to publication of a newsletter discussing
public policy issues during your campaign for Federal office.

You state that you are a Republican candidate for the U.S. House
of Representatives in the 11th District of Ohio, and that you also ran
for that seat in 1986 and 1988.1/ Since March of 1989, Music Street
Publishing Company, which you own, has been publishing a monthly
newsletter called "SPEAKOUT!" You state the newsletter is intended to
provide a non-partisan forum for persons whom you met during the 1988
campaign for Congress to speak out on community and governmental
problems and issues of general public interest.

Articles appearing in the newsletter have included opinion pieces
(including many written by you) dealing with different issues of
public concern, such as drug use, taxes, toxic waste cleanup and other
environmental matters, and, in particular, Congressional term
limitation. Some articles specifically refer to problems in the 11th
Congressional District or the northeast corner of Ohio.2/ You write

----------

1/ Your Statement of Candidacy and a Statement of
Organization for the 1990 election campaign were received
by the Clerk of the House on March 27, 1990. It appears
from your filings that your principal campaign committee
for the 1986 and 1988 elections will continue to function

as your principal campaign committee for 1990.

2/ For example, the February, 1990, issue contains an article on the growing of marijuana in the district entitled "11th District Shocker," and a questionnaire which includes a question making reference to toxic waste dumps in the 11th District.

monthly editorials expressing your views that are intended to encourage differing responses. Newsletters also contain humor pieces, lists of little known facts, investment advice and other miscellaneous information, and most issues have also included a notice of a SPEAKOUT! meeting to be held each month.

The newsletter has contained several articles regarding Congressional term limitation that were reprinted from other sources and headlined with the title of an organization named "Coalition to End the Permanent Congress."3/ You have also published an article soliciting donations to the group and an editorial written by you endorsing the group's positions on issues. You say you wish to continue to use the name of the organization in the newsletter.

You state that newsletter publication has been funded by your personal funds and through the sale of advertisements.4/ According to the newsletters' masthead, a subscription may be purchased at a price of $20 for 12 monthly issues.

You say you "want to keep the paper going because it is just catching on after a year," and that you would continue publishing the newsletter regardless of whether you are elected to Congress. You state that, during the present campaign, you will "keep it nonpartisan and probably emphasize local and state issues so the paper does not get clouded with federal issues which might be related to my running." It appears, therefore, that you wish to continue your publication as an activity unrelated to the campaign.

You ask whether you may continue publishing the newsletter during your 1990 campaign for Congress. Your request raises the question of whether the Commission considers operating expenses of publishing your newsletter to be expenditures for the purpose of influencing a Federal election under the Act and, therefore, whether payments for such expenses by any person constitute contributions to a Federal candidate under the Act. 2 U.S.C. Sc431(8)(A)(i) and Sc431(9)(A)(i); 11 CFR

----------

3/ You describe the organization, of which you are a board member, as a bipartisan group advocating the limiting of Congressional tenure to 12 years, outlawing political action committees and cutting the franking privilege. You state that the Coalition "has no money to support any candidate"

but "would favor anyone who would End the Permanent
Congress." The Commission assumes from your description
that the Coalition is not engaged in supporting the
election or defeat of specific Federal candidates and is
not a "political committee" under the Act.

4/ You state that "no big corporations" have placed ads and
that the advertisers have been small businesses. A review of
the newsletters submitted by you indicates that a number of
advertisements have been paid for by corporations.

100.7(a)(1) and 100.8(a)(1).5/ Your inquiry presents the Commission
with the difficult task of reconciling your status as a candidate for
Federal office with the assertedly nonpartisan nature of your proposed
newsletter publication and distribution activity.

The Commission has frequently considered whether particular
activities involving the participation of a Federal candidate, or
communications referring to a Federal candidate, result in a
contribution to or expenditure on behalf of such a candidate under the
Act. The Commission has determined that financing such activities
will result in a contribution to or expenditure on behalf of a
candidate if the activities involve (i) the solicitation, making or
acceptance of contributions to the candidate's campaign, or (ii)
communications expressly advocating the nomination, election or defeat
of any candidate. Advisory Opinions 1988-27, 1986-37, 1986-26,
1982-56, 1981-37, 1980-22, 1978-56, 1978-15, 1977-54 and 1977-42. The
Commission has also indicated that the absence of solicitations for
contributions or express advocacy regarding candidates will not
preclude a determination that an activity is "campaign-related."
Advisory Opinions 1988-27, 1986-37, 1986-26, 1984-13 and 1983-12.

In prior opinions, the Commission has concluded that contributions
or expenditures for Federal candidates would not result in
circumstances involving candidates serving as chairpersons of
political, charitable and issue advocacy organizations (Advisory
Opinions 1978-56, 1978-15, and 1977-54, respectively), a candidate
appearance endorsing a candidate for local office in television
advertisements (Advisory Opinion 1982-56), and a candidate hosting a
radio public affairs program (Advisory Opinion 1977-42). The
Commission has rarely faced the question of whether candidate
involvement is campaign-related, however, in the factual context of
activity sponsored or funded by the candidate personally.6/

----------
5/ The publication of a newsletter or small newspaper
raises the issue of application of the exemption from
treatment as an expenditure or contribution for
newspapers, magazines or other regularly published
periodicals ("press exemption"). 2 U.S.C.
Sc431(9)(B)(i); 11 CFR 100.7(b)(2) and 100.8(b)(2). See

Advisory Opinion 1980-109. The express statutory language of the exemption, however, excludes publications owned by the candidate. By its own terms, the "press exemption" would not be applicable to your newsletter under the facts you have presented.

6/ Advisory Opinion 1978-72 involved a candidate who proposed to publish and sell pamphlets, on a nationwide basis, that set out his views on several philosophical questions. The Commission concluded that receipts from sales of the pamphlets would not constitute contributions under the Act, nor would payments by the candidate be expenditures, as long as the contents of the pamphlets, and advertising for them, did not include solicitations for the candidate's campaign or express advocacy of the election or defeat of any clearly identified

In Advisory Opinion 1983-12, the Commission reviewed a group's proposal to produce and air television commercials that included footage of particular U.S. Senators, comments about a Senator's record in office and a message congratulating the citizens of the appropriate state for having elected their Senator. The Commission observed in that opinion:

... the Commission has recognized that even though certain appearances and activities by candidates may have election related aspects and may indirectly benefit their election campaigns, payments by non-political committee entities to finance such activity will not necessarily be deemed to be for the purpose of influencing an election.

The Commission distinguished its prior opinions to conclude, however, that the portion of the proposed activity involving participation of candidates or their campaigns in providing the film footage would render advertisements produced and aired in cooperation with the candidates contributions for the purpose of influencing those candidates' elections under the Act. Several factual elements presented in that request were signficant in the Commission reaching its conclusion: the requestor was a political committee actively engaged in making contributions to or expenditures on behalf of candidates; the content of the proposed advertising messages made reference to the Senators' previous election and the voters' role in electing a praiseworthy officeholder; the ads were to be run during the time period preceding the 1984 elections; and the activity in question "[did] not appear to have any specific and significant non-election related aspects that might distinguish it from election influencing activity." Compare Advisory Opinion 1984-13 (Congressional candidates of one political party invited to speak at a meeting of an incorporated trade association).

The significance of candidate involvement in activity for which an inference of campaign purpose could be drawn was also noted by the Commission in Advisory Opinion 1988-22, involving proposed newsletter activities by a partisan organization. The Commission described the following legal consequences of activity undertaken in coordination with a candidate's campaign:

If statements, comments or references regarding clearly identified candidates appear in the newsletter and are made with the

----------
(Footnote 6 continued from previous page)
candidate. The Commission viewed receipts from the endeavor as "earned business income," and noted the requestor's assertion that "very little of the proceeds or political effect would be applicable to [his] local campaign."

cooperation, consultation or prior consent of, or at the request or suggestion of, the candidates or their agents, regardless of whether such references contain "express advocacy" or solicitations for contributions, then the payment for allocable costs incurred in making the communications will constitute "expenditures" by [the organization] and "in-kind contributions" to the identified candidates. 2 U.S.C. Sc441a(a)(7)(B) ... As presented by your proposed and sample newsletters, reportable "in-kind contributions" to candidates would include those instances where, in coordination with candidates, newsletters contained substantive statements generally favoring a candidate or criticizing his opponent or contained references to a candidate's campaign events in a scheduling feature. The Commission bases its conclusion on the presumption that the financing of a communication to the general public, not within the "press exemption," that discusses or mentions a candidate in an election-related context and is undertaken in coordination with the candidate or his campaign is "for the purpose of influencing a federal election." See Advisory Opinion 1983-12. Such a communication made in coordination with a candidate presumptively confers "something of value" received by the candidate so as to constitute an attributable "contribution," even though the value of the benefit so conferred may be relatively minor.

Given the nature and purposes of your
organization as described in your request, it
is unlikely that such a presumption of a
"purpose of influencing a Federal election"
could be rebutted with reference to newsletter
activity undertaken in coordination with
Federal candidates. Compare Advisory Opinions
1982-56 and 1978-56.

Here, publication of the newsletter has been originated,
sponsored, implemented and funded by you, a current candidate for
Federal office. SPEAKOUT! was apparently inspired by your experiences
as a previous candidate for Congress. It is sent primarily to persons
whom you encountered during your prior campaign, many of whom may be
potential supporters of your candidacy. Persons involved in your
campaign for Congress are also apparently involved in publishing your
newsletters. The contents of the newsletters include articles
concerning public policy issues that may broadly be related to local
and national political concerns, including the makeup of Congress.
Therefore, any reference to or discussion of your candidacy or
campaign in the newsletter, or presentation of policy issues or
opinions closely associated with you or your campaign, would be
inevitably perceived by readers as promoting your candidacy, and
viewed by the Commission as election-related and subject to the Act.

Editions of the newsletters that you have distributed thus far do
not mention your candidacy or campaign for Congress, and, taken alone,
may not reveal an apparent or objectively recognizable "purpose to
influence" your Congressional race or any particular election to
Federal office.7/ The content of the newsletters does suggest other
significant purposes of informing the public about current issues of
public interest and encouraging discussion of such issues.8/ Although
these purposes are not inherently election-related activity and
publication of your newsletter is an ongoing enterprise, continued
publication of the newsletter since you have become a candidate could
potentially be used to advance your candidacy.

The Commission concludes that the expenses incurred in the
publication and distribution of your proposed newsletters would be
considered expenditures for the purpose of influencing your election
to Congress if: (1) direct or indirect reference is made to the
candidacy, campaign or qualifications for public office of you or your
opponent; (2) articles or editorials are published referring to your
views on public policy issues, or those of your opponent, or referring
to issues raised in the campaign, whether written by you or anyone

----------

7/ You submitted a copy of a March, 1990, issue which was
printed but not distributed. This issue contained a front
page article announcing your 1990 candidacy for Congress and
featuring your picture, and a full-page article written by

your husband advocating your candidacy. The article
announcing your candidacy contains a statement of your
platform that refers to the Coalition to End the
Permanent Congress. You state that you had 10,000 copies
of this issue printed, but that you sent none out and threw
them away. Instead, you sent out an issue that contained
no references to your candidacy.

8/ Disseminating information and expressing viewpoints
about issues of public policy and community interest are, of
course, strongly protected elements of free speech under
the First Amendment. Buckley v. Valeo, 424 U.S. 1,
42, n. 50 (1976). The U.S. Supreme Court has upheld the
jurisdiction of the FECA in regulating the financing of
similar speech when engaged in by candidates for Federal
office, or groups supporting Federal candidates, "for the
purpose of influencing a Federal election." 2 U.S.C.
Sc431(9)(A)(i); see Buckley, supra, at 46-7, n. 53.
Although the Commission cannot ignore a campaign-related
purpose for types of activity for which no other purpose is
plausible, neither can it impute such purpose to
Constitutionally protected activity lacking an identifiable
nexus to support of a candidate.

else;9/ or (3) distribution of the newsletter is expanded
significantly
beyond its present audience, or in any manner that otherwise indicates
utilization of the newsletter as a campaign communication. The
Commission concludes that each edition of the newsletter should be
viewed separately and in its entirety in determining whether a
newsletter would be considered an expenditure for your campaign. Any
campaign-related content within a particular edition would render
expenses of publishing that edition a campaign expenditure.10/

Publication and distribution of issue content newsletters on an
ongoing basis, and absent the elements described above, would not be
viewed as conferring recognizable benefit or value upon your campaign
for Congress sufficient to invoke the jurisdiction of the Act. The
Commission would not necessarily view continued distribution of this
type of newsletter as campaign-related activity, constituting
expenditures under the Act, however, simply because you have been
identified with its creation or serve as its editor, or because your
name continues to be identified on its masthead as its editor.
Advisory Opinions 1978-56, 1978-15 and 1977-54. See also Advisory
Opinion 1985-38.

You may, of course, publish campaign-related editions of the
newsletter as an activity of the campaign. Your committee would then
assume the costs for that newsletter edition, either directly making
the payments to the providers of goods and services for the newsletter
or paying the Music Street Publishing Company for the expenses in

publishing that issue. In order to avoid a prohibited corporate
contribution by the publishing company, the committee must make its
payments to the publishing company within a commercially reasonable
time. Payments for the production and circulation of the newsletter
would be operating expenditures of your campaign committee and
reported as such. In addition, payments for advertising space in
campaign-related newsletters would be contributions to the campaign
and, if made from a corporate source, would be prohibited. 2 U.S.C.
Sc441b; 11 CFR 114.2. See Advisory Opinion 1985-39.

This response constitutes an advisory opinion concerning

----------
9/ For example, publication of articles or editorials about
the issue of Congressional term limitation or related to the
Coalition to End the Permanent Congress would be considered
campaign-related, due to your focus upon that issue in your
campaign for Congress and your candidacy's association with
that organization.

10/ The Commission considered an alternative analysis under
which only those portions of a particular newsletter issue
that might be viewed as campaign-related would be
allocable as a campaign expenditure. The Commission
distinguished that allocation approach, due to your
involvement in the entirety of the newsletter operation.
Compare Advisory Opinions 1988-22, 1981-3 and 1978-46
(publishing of newsletters by partisan organization or
party committees).

application of the Act or regulations prescribed by the Commission to
the specific transaction or activity set forth in your request. See 2
U.S.C. Sc437f.

Sincerely,

(signed)

Lee Ann Elliott
Chairman for the
Federal Election Commission

Enclosures (AOs 1988-27, 1988-22, 1986-37, 1986-26, 1985-39,
1985-38, 1984-13, 1983-12, 1982-56, 1981-37,
1981-3, 1980-109, 1980-22, 1978-72, 1978-56,
1978-46, 1978-15, 1977-54, and 1977-42)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

CHRISTOPHER SHAYS and
MARTIN MEEHAN,

                Plaintiffs,

       v.

FEDERAL ELECTION COMMISSION,

                Defendant.
_____

)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 06-CV-1247 (CKK)

FEC EXHIBIT EIGHT

# FEC EXHIBIT EIGHT

In the Matter of

| | | |
|---|---|---|
| Dole for President, Inc. and Robert J. Dole, | ) | |
| as treasurer; Dole/Kemp '96, Inc., and | ) | |
| Robert J. Dole, as treasurer; Republican | ) | MURs 4553 and 4671 |
| National Committee and Alec Poitevint, as | ) | |
| treasurer; Senator Robert J. Dole | ) | |
| | | |
| The Clinton/Gore '96 Primary Committee, Inc. | ) | |
| and Joan Pollitt, as treasurer; The Democratic | ) | |
| National Committee, and Carl Pensky, as | ) | MUR 4713 |
| treasurer; President William J. Clinton; and | ) | |
| Harold M. Ickes, Esquire | | |
| | | |
| The Clinton/Gore '96 Primary Committee, Inc. | ) | |
| and Joan Pollitt, as treasurer; the Democratic | ) | |
| National Committee, and Carol Pensky, as | ) | |
| treasurer; President William J. Clinton; Vice | ) | MURs 4407 and 4544 |
| President Albert Gore, Jr.; and Clinton/Gore | ) | |
| '96 General Committee, Inc., and Joan Pollitt, | ) | |
| as treasurer | ) | |

## STATEMENT OF REASONS

### VICE CHAIRMAN DANNY L. McDONALD

#### I.

The central issue deliberated in the above-cited matters involved various advertisements produced, distributed, aired and paid for by the Republican National Committee (RNC) and the Democratic National Committee (DNC) during the 1996 presidential election cycle. Specifically at issue was whether these national party committees had improperly coordinated the ads in question with their presumptive presidential nominees and, by doing so, made excessive in-kind contributions to these candidates using prohibited non-federal funds in violation of the Federal Election Campaign Act ("the Act"). The General Counsel's recommendations to the Commission were to find reason to believe violations of the Act occurred and to pursue enforcement actions in these matters.

#### II.

The history of these matters at the Commission is long, fragmented and confusing involving various externally-generated complaints, internally-generated statutory audit matters, and essentially two separate and distinct Commissions. My esteemed colleague,

Commissioner Scott E. Thomas, has recounted this tortured history masterfully in his Statement of Reasons issued on May 25, 2000. *See* Statement of Reasons of Commissioner Scott E. Thomas for MURs 4553 and 4671, 4713, 4407 and 4544 at 2-5. As such, this statement merely summarizes the essential information.

Initially, I joined my colleagues in voting unanimously to approve reason-to-believe findings in these matters on February 10, 1998.[1] My votes were based on the underlying law and the Commission's deliberations in Advisory Opinions 1984-15[2] and 1985-14[3]. The then-Commission voted to pursue enforcement actions for possible violations of the Act against the Democratic and Republican parties and the Clinton/Gore and the Dole/Kemp campaigns for giving and accepting excessive contributions through so-called issue ads.

During the intervening time between my initial and most recent votes in these matters, however, circumstances at the Commission changed substantially. First and foremost, the composition of the Commission changed when three new commissioners joined the FEC in the fall of 1998. Next, there were significant developments regarding the two legal standards upon which the original findings were based. On June 24, 1999, four Commissioners, Elliott, Mason, Sandstrom and Wold, issued a Statement of Reasons objecting to the use of the shorthand reference "electioneering message" contained in Advisory Opinion 1985-14, Fed. Elec. Camp. Fin. Guide (CCH Transfer Binder), ¶ 5819 at 11,185, and noting that the "electioneering message" phrase never appeared at all in Advisory Opinion 1984-15, Fed. Elec. Camp. Fin. Guide (CCH Transfer Binder), ¶ 5766.[4] Their Statement of Reasons disavowed the use of "electioneering message" as a legal standard for determining whether a communication was created "for the purpose of influencing" a federal election but provided no guidance as to what test or tests should be used instead.[5] Further, on August 2, 1999, the United States District Court for the District of Columbia issued its opinion in Federal Election Commission v. The Christian Coalition, 52 F. Supp.2d 45 (D.D.C 1999). It suggested a definition of coordination far

---

[1] With respect to MURs 4553, 4671, 4407 and 4544, I voted to find reason-to-believe that the national parties made, and the Clinton and Dole campaigns received, in-kind contributions in violation of the Act.

[2] Fed. Elec. Camp. Fin. Guide (CCH Transfer Binder), ¶ 5766.

[3] Fed. Elec. Camp. Fin. Guide (CCH Transfer Binder), ¶ 5819 at 11,185.

[4] Statement of Reasons of Vice Chairman Wold and Commissioners Elliott, Mason, and Sandstrom On the Audits of "Dole for President Committee, Inc." (Primary), "Clinton/Gore '96 Primary Committee, Inc.," "Dole/Kemp '96, Inc." (General), "Dole/Kemp '96 Compliance Committee, Inc." (General), "Clinton/Gore '96 General Committee, Inc.," and "Clinton/Gore '96 General Election Legal and Compliance Fund," at 1, footnote 2.

[5] My colleagues did not purport to supersede Advisory Opinions 1985-14 and 1984-15, but instead disagreed with the phrasing of the legal analysis contained in the two opinions. *See* Statement for the Record in Audits of 1996 Clinton/Gore and Dole/Kemp Campaigns of Chairman Scott E. Thomas and myself at 5.

different than currently found in the statute or Commission regulations. On September 22, 1999, the same four Commissioners decided not to appeal that decision.

Finally, two rulemakings are underway in various pending stages at the Commission that potentially impact these circumstances: (1) the "Coordination" rulemaking seeks to devise a legal standard or standards for addressing coordination dealing with party and non-party committees; and (2) the "Soft-Money" rulemaking seeks to develop standards governing the raising and spending of soft money by national party committees. All of these developments created confusion at the Commission and rendered what previously was relatively well-settled law into unsettled legal tests and standards unsuitable to base reason-to-believe findings upon in these matters.

On January 11, 2000, the General Counsel submitted First General Counsel's Reports regarding MUR 4969 (Dole), MUR 4713 and MUR 4970 (Clinton) to the Commission for consideration.[6] The Commission did not approve the General Counsel's recommendations regarding party issue ads and split 3-3 as to the 1996 ads, with Commissioners Mason, Thomas and Wold supporting the reason-to-believe recommendations in the Dole and Clinton matters, while Commissioners Elliott, Sandstrom and myself opposed.[7] Accordingly, these votes did not reflect a split along party lines.

---

[6] Statement of Reasons of Commissioner Scott E. Thomas for MURs 4553 and 4671, 4713, 4407 and 4544 at 4 ("Because the composition of the Commission had changed, the General Counsel made fresh "reason-to-believe" recommendations, rather than "probable cause to believe" recommendations based on the earlier unanimous findings.").

[7] Specifically, with respect to MUR 4969 regarding the 1996 advertisements, the Commission split 3-3 on whether to find reason to believe the RNC violated 2 U.S.C. § 441a(a)(2)(A) by making excessive contributions; 2 U.S.C. §441b(a) and 11 C.F.R. § 102.5(b) by improperly using prohibited contributions; and 2 U.S.C. §434(b)(4) by improper reporting. The Commission split 3-3 on whether there was reason to believe the Dole Committee violated 2 U.S.C. § 441a(f) by knowingly accepting excessive contributions; 2 U.S.C. § 441b(a) by knowingly accepting prohibited contributions; 2 U.S.C. §§ 441a(b)(1)(A) and 441a(f), and 26 U.S.C. § 9035(a) by exceeding the overall expenditure limitation; and 2 U.S.C. §§ 434(b)(2)(C) and 434(b)(4), and 11 C.F.R. §§ 104.13(a)(1) and 104.13(a)(2) by improper reporting. The Commission also split 3-3 on whether Senator Dole violated 2 U.S.C. § 441a(f) by knowingly accepting excessive contributions; 2 U.S.C. § 441b(a) by knowingly accepting prohibited contributions; and 2 U.S.C. §§ 441a(b)(1)(A) and 441a(f), and 26 U.S.C. § 9035(a) by exceeding the overall expenditure limitation.

Similarly, with respect to the 1996 advertisements, the Commission split 3-3 on whether to find reason to believe the DNC violated 2 U.S.C. § 441a(a)(2)(A) for making excessive contributions; 2 U.S.C. §441b(a) and 11 C.F.R. § 102.5(b) for improperly using prohibited contributions; and 2 U.S.C. §434(b)(4) for improper reporting. With respect to the Primary Committee, the Commission split 3-3 on whether there was reason to believe the Committee violated 2 U.S.C. § 441a(f) for knowingly accepting excessive contributions; 2 U.S.C. § 441b(a) for knowingly accepting prohibited contributions; 2 U.S.C. §§ 441a(b)(1)(A) and 441a(f), and 26 U.S.C. § 9035(a) for exceeding the overall expenditure limitation; and 2 U.S.C. §§ 434(b)(2)(C) and 434(b)(4), and 11 C.F.R. §§ 104.13(a)(1) and 104.13(a)(2) for improper reporting. The Commission also split 3-3 on whether President Clinton violated 2 U.S.C. § 441a(f) for knowingly accepting excessive contributions; 2 U.S.C. § 441b(a) for knowingly accepting prohibited contributions; and 2 U.S.C. §§ 441a(b)(1)(A) and 441a(f), and 26 U.S.C. § 9035(a) for exceeding the overall expenditure limitation.

### III.

As the record indicates, I did not vote to approve the Office of the General Counsel's recommendations regarding the party issue ads. My disagreement with the General Counsel and some of my colleagues was based on two factors: the unsettled state of the law and the apparent inconsistent application of the law governing whether the ads were made "for the purpose of influencing" an election and whether those ads were improperly coordinated.

First, because recent Commission actions hurled the relatively well-settled law governing advertisements into disarray, there appears to be no discernible legal standard on which to base a reason-to-believe finding in these matters. Second, inconsistent application of the law by some of my colleagues on the other side has left the Commission vulnerable to a charge of arbitrary enforcement if it were to proceed on cases like these. As a result, the regulated community is left with little, if any, idea as to what standard the Commission will apply in reviewing their activity. Given the unsettled nature of the law combined with the inconsistent application of the law, I declined to find violations occurred in these matters.

### IV.

I understand and appreciate the criticism of my colleague, Commissioner Scott E. Thomas. He appropriately notes I have always joined the affirming Commissioners supporting reason-to-believe findings for similar party ads coordinated and made "for the purpose of influencing" an election. *See* Statement of Reasons of Commissioner Scott E. Thomas for MURs 4553 and 4671, 4713, 4407 and 4544 at 17. Likewise, I agree my votes rejecting the General Counsel's recommendations, in part, were based on my view the law has been confused and subsequently applied inconsistently by my colleagues on the other side of the aisle.[8] *Id.* at 17.

The Statement of Reasons issued by Commissioner Thomas correctly sets forth the specific legal and factual details of one of the most egregious examples, in my view, of the inconsistent application of law. In MUR 4378, Commissioners Mason and Wold refused to find violations against the National Republican Senatorial Committee and the Republican senate campaign of Montanans for Rehberg based on the theory the so-called issue ads aired during 1996 were for lobbying purposes. On the other hand, the same two

---

However, with respect to the 1995 party advertisements, the Commission failed to approve the General Counsel's reason-to-believe recommendations on the above statutory violations by a 2-4 vote, with Commissioners Mason and Wold supporting the findings and Commissioners Elliott, Sandstrom, Thomas, and myself opposed.

[8] Because my Republican colleagues routinely oppose making reason-to-believe finding in these matters, the Commission has split numerous times on whether advertisements constitute in-kind contributions from national party committees to the presidential committees or to specific candidates. Those Commission split votes send mixed and confusing messages to the regulated community regarding the enforceability of these matters.

Commissioners supported finding violations for similar ads aired in 1995 and 1996 by the DNC and the RNC and the Clinton/Gore campaign and the Dole/Kemp campaign. They said at the table that the degree of coordination in the Dole and Clinton MURs was much greater than in prior examples.

## V.

Given the unsettled nature of the law and the apparent inconsistent application of the law governing whether ads are made "for the purpose of influencing" an election and improperly coordinated, I respectfully, and correctly, declined to find that reason-to-believe violations of the Act occurred in these matters.

6-21-00
Date

Danny L. McDonald
Vice-Chairman

5

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| | ) | |
| CHRISTOPHER SHAYS and | ) | |
| MARTIN MEEHAN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 06-CV-1247 (CKK) |
| v. | ) | |
| | ) | FEC EXHIBIT NINE |
| | ) | |
| FEDERAL ELECTION COMMISSION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

_____


**FEC EXHIBIT NINE**

# The New York Times
nytimes.com

---

August 13, 1999

# Forbes Puts His Money and His Message on the Line in Iowa's Straw Poll

**By LESLIE WAYNE**

Aboard his high-tech bus, watching the corn fields whiz by, Steve Forbes is wheeling into town squares all over Iowa these days in search of respect as a Presidential contender.

Mr. Forbes -- publisher, politician and patrician -- is a blur of nonstop motion, rolling around the rural landscape at the rate of four to six cities a day, 180 events in four weeks. He is seeking enough support -- and spending whatever it takes -- to make a respectable showing in the Republican straw poll here on Saturday, a prize that confers headline status even though it is no real test of voter sentiment.

Accompanied by an entourage in two shiny big buses equipped with the latest satellite and digital gear, Mr. Forbes is banking on a decent enough showing to justify the $10 million he has spent on his message of conservative morals, politics and economics, themes his advisers say resonate best in rural America.

For all his money, in fact, Mr. Forbes is often seen here as being a regular guy, as he travels the byways from Grundy Center to Marengo, Pella to Monona.

"I back everything he said," said William Baretich, a retired high school principal who showed up at a Forbes event this week in Eagle Grove. "So far as I am concerned, his wealth is a plus. I have no idea how he got it, but he's got a good business sense and we need someone with his expertise to run the Government because it's probably the biggest corporation of them all."

Alone among the Presidential candidates to foot his own bill, Mr. Forbes, chief executive of the business magazine Forbes, whose net worth is estimated at $440 million to $500 million, said he would spend whatever it took to be competitive with Gov. George W. Bush of Texas. Mr. Forbes spent more than $35 million on his failed Presidential bid in 1996. Mr. Bush has raised more than $36 million, and both candidates have opted out of the campaign finance system and its limits on spending.

"Be assured," Mr. Forbes, 52, said, without being specific, in a back-of-the-bus interview, "I will spend enough to be very competitive."

In Iowa, what he is buying, besides lots of radio and television advertisements, is organization, which is what really counts in the nearly 25-year-old Iowa straw vote. His campaign entourage has been pulling up to American Legion and Elks halls in hundreds of quiet Iowa towns, the sound system on the buses blaring Mr. Forbes's presence like a political music man. While the scenes can be charmingly old-fashioned, the buses are anything but.

Inside, they look like something from a James Bond movie set. A squadron of clean-cut young men, all in identical khaki pants and blue polo shirts emblazoned with the Forbes logo, operate from a hidden high-tech world of laptops, digital laser printers and satellite phones, and make use of three cellular telephone line connections and two dedicated lines for modem use from any town square. Also in the entourage are a bevy of young women in khaki skirts and white polo shirts with the Forbes logo, who hand out Forbes materials, as well as a separate small crew of men in khaki pants and gray polos with a Forbes Iowa logo, who are local supporters.

All the gadgetry is intended to create grass-roots support, and what it means is this: Names and phone numbers written on cards handed out at the events are put into the campaign data bank before the bus reaches the next town; Anyone who wants a picture taken with the candidate gets a color laser copy of the photo before the campaign event is over, and any photos taken can be instantaneously put onto the Forbes campaign Web site, which has received 35 million hits, the Forbes staff said, and drawn 25,000 volunteers on line.

"We're using the Wal-Mart strategy," said K. B. Forbes, the campaign's Iowa press secretary, who is no relation to the candidate. "We are hitting the rural areas first. We're finding the activists who are attracted to Mr. Forbes. All the other candidates are focusing on the chiefs, the elites. We're focusing on the Indians, the grass-roots activists."

This weekend will be the first test of whether Mr. Forbes's messages really do resonate here.

In his endless stream of gatherings, typically attracting 40 to 80 people, Mr. Forbes offers a stump speech that attacks abortion, Washington-as-usual politics and the recent interest rate increase by the Federal Reserve Chairman, Alan Greenspan, while extolling a flat 15 percent income tax, higher military spending and greater choice in school and health care selection.

He has loosened up his speaking style, and, while he still appears to be more the banker than the politician, his words are greeted with respectful interest and standing ovations in this politically conservative region. His reference to the "infernal revenue service" is a standard laugh-getter, with his designation of Washington officeholders as "critters looking for the honey pot" of money.

Cora Goodman liked what she heard when Mr. Forbes appeared in Gundy Center, her hometown, this week. "We need a leader to carry on the Reagan policies," Ms. Goodman said. "His idea for a flat tax is honest and simple, and he's not a Washington politician."

John Whalen of Eldora said, "We're in a world of hurt here, and we've got to get the Government out of things, whether it's farming or Medicare. He's right on those issues."

The Iowa straw poll has been criticized as a way for the local Republican Party to gather publicity and dollars -- everyone who votes in it must pay a $25 entry fee and voting must be done in person here in Ames. As a result, candidates like Mr. Forbes pick up the $25 fee for supporters and try to get as many people as they can to come to Ames on a hot summer weekend to vote in a poll that is not binding.

It is a contest where money matters, and Mr. Forbes is pouring on his resources: His aides say they have lined up 85 buses to transport potential voters -- for a total of about 4,000 people in a contest where 10,000 to 15,000 are expected to vote. To attract supporters, Mr. Forbes is offering them a barbecue party in Ames beneath two air-conditioned tents where the country music singer Ronnie Milsap and the inspirational singer Debby Boone will entertain.

Case 1:06-cv-01247-CKK    Document 30-2    Filed 03/16/2007    Page 80 of 96

Such spending, especially from so wealthy a man, is not troublesome to some here.

Catherine Broer of Iowa Falls, who said she typically voted Democratic, said Mr. Forbes's wealth "was one of the reasons why he intrigues me."

"He's willing to risk his personal fortune in this endeavor," Ms. Broer said.

Keith Schwebke, also of Iowa Falls, said: "His wealth does give him the ability to compete with the Bushes. Yet he still comes across as a common guy I could go up and talk to."

While Mr. Forbes may be dismissed by some as indulging in the political fantasies of a rich man, he sees himself as a man with a message. He contends that the Republican Party has failed when it offers candidates who are long on image but short on policy substance.

"There can be no victory without a message," he said. "Right now, my party is rallied around one candidate," he said, referring to Mr. Bush. "But those who want real change will come more and more to this campaign."

In contrast to his slow start in 1996, Mr. Forbes came out early and aggressively this time, and is sustained by the belief that the party establishment will no longer shrug off his candidacy if he does well in early party caucuses.

Mr. Forbes is spending his money on television, radio and newspaper advertisements and direct mail and phone banks in crucial early states like Iowa, New Hampshire, Arizona and California. As a measure of how the candidate is doing, his campaign likes to pull out a headline from The Fairfield Ledger which said: "Forbes, author of the flat tax, sings to the choir in Fairfield."

Copyright 2007 The New York Times Company | Home | Privacy Policy | Search | Corrections | XML | Help | Con

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |
|---|---|
| CHRISTOPHER SHAYS and MARTIN MEEHAN, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| FEDERAL ELECTION COMMISSION, | ) ) ) |
| Defendant. | ) ) ) |

Civil Action No. 06-CV-1247 (CKK)

FEC EXHIBIT NINE

**FEC EXHIBIT TEN**

# Federal Election Commission Advisory Opinion Number 1984-15

Back to Federal Election Commission Advisory Opinions Search Page

Federal Election Commission Main Page

May 31, 1984
CERTIFIED MAIL
RETURN RECEIPT REQUESTED
ADVISORY OPINION 1984-15
E. Mark Braden
Republican National Committee
Dwight D. Eisenhower Republican Center
310 First Street, S.E.
Washington, D.C. 20003
Dear Mr. Braden:
This responds to your letter of April 2, 1984, requesting an
advisory opinion concerning application of the Federal Election
Campaign Act of 1971, as amended ("the Act"), and Commission
regulations to disbursements by the Republican National Committee
for a proposed national television advertising program.
You state that the Republican National Committee 1/ intends
to undertake a national television advertising program. In your
request you included two proposed scripts for the television
advertisements. In a script on the subject of the Federal budget
deficit, the video opens with the U.S. Capitol and fades to an
image of one of the current Democratic presidential candidates.
The audio portion begins with the candidate's comments about the
deficit. An announcer then interjects: "That's what you said.
But look what you've done ... ."An animated graph then depicts
a rise in deficits during the candidate's tenure in Congress.
The advertisement concludes with the statement: "Act today to
preserve tomorrow. Vote Republican."

1/ The Republican National Committee ("RNC") is a qualified,
multi-candidate political committee and the national committee of
the Republican Party. See 2 U.S.C. SS 431(4), SS 431(14), and
SS 441a(a)(4).

In the second script, the video opens with a portrait of a
current candidate for the Democratic presidential nomination with
the camera slowly zooming in on the portrait and then holding the
image. The audio portion identifies the candidate by name and
states that he "said he'd bring new ideas and morality to
government. But look at the list of the new ideas." The audio
continues with a "long list of inconsistencies of the candidate"
and sums up with these questions: "This is moral leadership?
These are new ideas?" Both the video and the audio conclude with
the statement: "Vote Republican."
You state that the Republican National Committee intends to
produce and air this advertising program prior to and after the
nomination of a Democratic candidate for President. You request
an opinion concerning the treatment of the disbursements by the
Republican National Committee for the production and placement of
general electronic media advertisements using these or similar
scripts. Your request specifically raises five questions:

(1) how should disbursements by the Republican
National Committee for its proposed national television
program be reported to the Commission?
(2) would these disbursements count against the
expenditure limitations of 2 U.S.C. SS 441a(d)?
(3) is the characterization of these disbursements
affected by the timing of the broadcast of these
advertisements either before or after the Democratic
presidential nomination?
(4) would the characterization of these disbursements
be affected by an express statement of the purpose of the
advertisements as letting a particular Democratic
candidate's own words be used against him?
(5) would the characterization of these disbursements
be affected by a statement of the advertisement's
purpose as the defeat of the Democratic Party's candidates
generally without identifying as a purpose the defeat of any
specific candidate?

To facilitate a proper analysis, these questions are answered in
a slightly altered sequence.
Because these contemplated expenditures would relate to an
election for Federal office, they would be governed by the Act,
and thus reportable. Under the Act, a national party committee

The wave of the future [Picture of
could be an oil spill giant oil-derrick
if Cong. X has his way!in ocean ruins
the lovely
picture]
Text
List of X's
contributions from oil
industry
[Same couple
on beach]
Back Cover
8 1/2 x 11
Don't be fooled by Republican
rhetoric. Save our coastal
environment.
Let Congressman X know how you
feel.
[In some scripts, the text closes
with "Vote Democratic".]

You seek to determine whether DCCC's expenditures for these
planned communications must be considered attributable
contributions or expenditures under 11 CFR 106.1 and Advisory
Opinion 1984-15. You have presented several specific questions:
1. Would broadcast advertisements and other general public
communications (e.g. direct mail, leaflets, etc.) that
specifically identify Republican congressmen and criticize their
records, require allocation under 11 CFR 106.1(a) and AO 1984-15?
Does the answer depend on whether the communications contain
reference to "elections" or any "express advocacy" language?
2. Would broadcast advertisements and other general public
communications that criticize the activities and record of
Republican congressmen as a class require allocation under 11 CFR
106.1(a) and AO 1984-15 to the individual Democratic candidates,
when ultimately nominated by the Democratic Party?
3. Does the answer to question 2 differ if DCCC directs
these "generic" critiques to selected congressional districts?
DCCC's payments for these communications are reportable
expenditures for the purpose of influencing Federal elections,
and the sources of the funds used by DCCC to make these
expenditures are subject to the limitations and prohibitions of
the Act. See 2 U.S.C. SS 434, SS 441a, SS 441b, SS 441c, SS 441e, and

may report disbursements in one of eight categories. See 2
U.S.C. SS 434(b)(4); 11 CFR 104.3(b)(1), and FEC Form 3X.2/ Four
reporting categories --transfers to affiliated committees, loans,
loan repayments, offsets -- are clearly not applicable to your
request. The "operating expenditures" category includes
disbursements for such expenses as polling, travel, phone banks,
catering, media, rent, personnel, overhead, fund-raising,
training seminars, registration and get-out-the-vote drives, and
other day-to-day costs that are not made on behalf of a clearly
identified candidate and cannot be directly attributable to that
candidate. See 11 CFR 104.3(b)(3)(i), 106.1(c), and 110.8(e).
The amount of these expenditures is not subject to any
limitations. See Advisory Opinion 1975-87. The Commission
concludes, however, that expenditures for the television
advertisements proposed in this request are not, with one
possible exception, the type of expenditures that are properly
reportable as "operating expenditures."

The remaining reporting categories are contributions to
political committees, coordinated party expenditures, and other
disbursements. The reporting category for contributions to
political committees includes disbursements to a candidate and
his or her authorized campaign committees. See 11 CFR
104.3(b)(3)(v). This category also covers in-kind contributions.
11 CFR 100.7(a)(1)(iii). For a multi-candidate political
committee, a $5,000 limitation applies to contributions to a
candidate and his or her authorized campaign committees with
respect to any election for Federal office. 2 U.S.C.
SS 441a(a)(2); 11 CFR 110.2(a)(1). Coordinated party expenditures
are expenditures by the national committee of a political party
in connection with the general election campaign of any candidate
for President of the United States who is affiliated with that
party. 2 U.S.C. SS 441a(d)(2). The amount of these expenditures
is subject to a specific dollar limitation. Id. The "other
disbursements" category covers disbursements not otherwise
reportable under the other categories. 11 CFR 104.3(b)(3)(ix).
No dollar limitation applies to these disbursement.3/

The threshold question concerns whether the timing of the
broadcast of the RNC's proposed television advertisements, either
before or after the Democratic presidential nomination, would
affect the characterization of RNC expenditures for these
advertisements: either as contributions to a candidate or as
coordinated party expenditures. Although timing is relevant, the
Commission does not view the timing of the broadcasts as

controlling how expenditures for the advertisements should be
treated for limitation and reporting purposes. First, with
regard to viewing the expenditures as contributions to a


2/ Also, a national party committee is incapable of making
independent expenditures. See Advisory Opinion 1980-119.
3/ To the extent that disbursements for the proposed television
advertisement relate to any election for Federal office, they
cannot be made with funds from prohibited sources. See Advisory
Opinions 1978-46 and 1978-10. See also Advisory Opinion 1982-5.


candidate, Commission regulations contemplate that contributions
may be received with respect to the general election before the
date of the primary election or nomination. See 11 CFR 102.9(e).
Second, the Commission notes that nothing in the Act, its
legislative history, Commission regulations, or court decisions
indicates that coordinated party expenditures must be restricted
to the time period between nomination and the general election.
The Act refers to expenditures "in connection with the
general election campaign... ." Where a candidate appears
assured of a party's presidential nomination, the general
election campaign, at least from the political party's
perspective, may begin prior to the formal nomination. Thus,
national party expenditures in connection with that campaign are
possible. Furthermore, because the national party committee
rather than the candidate or his principal campaign committee
makes these expenditures, whether a specific nominee has been
chosen, or a candidate assured of nomination, at the time the
expenditures are made, is immaterial.4/ Although consultation
or coordination with the candidate is permissible, it is not
required. See Advisory Opinion 1975-120. The Act gives a
national party committee only one coordinated party expenditure
limit with respect to the presidential general election
campaign.5/ To permit expenditures made prior to nomination but
with the purpose and effect of influencing the outcome of the
presidential general election to escape this limitation would be
inconsistent with the purpose and intent of 2 U.S.C. SS 441a(d).
See generally Advisory Opinion 1975-72. Therefore, the proper
analytical focus is whether the expenditures for the television
advertisements proposed in this request are made for the purpose


4/ Significantly, SS 441a(d) does not by its terms refer to
candidates for Federal office as the party's nominees; it refers

to such candidates only as those who are "affiliated with" the political party. By contrast, in other contexts where Congress was concerned with the status of Federal office candidates as regards political party activity, it has explicitly referred to "nominees of" the political party. See 2 U.S.C. SS SS 431(8)(B)(x), (8)(B)(xii), (9)(B)(viii) and (9)(B)(ix), which exempt certain State and local committee activities "on behalf of nominees of" the party from limitation as a contribution or party expenditure. Also, see 2 U.S.C. SS 432(e)(3)(A) which refers to the presidential candidate "nominated" by a political party, and 2 U.S.C. SS 441a(a)(7), SS 441a(b)(2) which both refer to the candidate of a political party "for election" to the office of President.

5/ This provision sets a single limitation for coordinated party expenditures for President at the national level. Therefore, if disbursements for these proposed advertisements were made by the national senatorial or congressional campaign committees, such disbursements would be allocable to the single expenditure limitation of 2 U.S.C. SS 441a(d)(2). See generally Advisory Opinions 1980-119 and 1976-108.


of influencing the outcome of the general election for President of the United States. See 2 U.S.C. SS 431(8)(A)(i), SS 431(9)(A)(i), and SS 441a(d)(2). There is no question that expenditures for these advertisements after the nominating conventions would be expenditures in connection with the presidential general election campaign.6/ This responds to question three.

In your request, you state that the proposed television advertisements will show the image or portrait of one of the current Democratic presidential candidates. They will quote statements by that candidate about the budget deficit or government morality and depict his record relating to those statements. Each advertisement concludes with a visual and audio appeal to "Vote Republican." These advertisements will be broadcast to the general public. The proposed advertisements will prominently display visual images of a current candidate for the Democratic Party's presidential nomination and will emphasize verbal statements by or about such candidate. The advertisements will question or challenge the candidate's statements, position, or record. They will conclude with a partisan statement to "Vote Republican." The clear import and purpose of these proposed advertisements is to diminish support for any Democratic Party presidential nominee and to garner support for whoever may be the

eventual Republican Party nominee. These advertisements relate
primarily, if not solely, to the office of President of the
United States and seek to influence a voter's choice between the
Republican Party presidential candidate and any Democratic Party
nominee in such a way as to favor the choice of the Republican
candidate. The only election which will pose such a choice is
the presidential general election. These advertisements
effectively advocate the defeat of a clearly identified candidate
in connection with that election and thus have the purpose of
influencing the outcome of the general election for President of
the United States. See generally Advisory Opinion 1978-46.
Therefore, expenditures for these advertisements benefit the
eventual Republican presidential candidate and are made with
respect to the presidential general election and in connection
with the presidential general election campaign.7/
As such, these expenditures are only reportable either as
contributions or as coordinated party expenditures. Thus, the
Republican National Committee could report expenditures for these

6/ Although not explicitly stated in your request, the Commission
assumes that such advertisements would feature the Presidential
nominee of the Democratic Party.
7/ The addition of a statement of purpose as described in
question four reinforces the characterization of these
advertisements as relating to the presidential general election.
This footnote responds to question four.

advertisements, up to a maximum of $5,000, as an in-kind
contribution to the Republican presidential candidate with
respect to the 1984 general election. However, if the Republican
presidential candidate in the 1984 general election chooses to
accept public funding pursuant to 26 U.S.C. SS 9001 et seq., he may
not accept contributions, except for certain limited exceptions
that are not applicable here. See 26 U.S.C. SS 9003(b)(2); 11 CFR
9003.2(a)(2). Accordingly, in such circumstances the Republican
National Committee could not report expenditures for these
advertisements as an in-kind contribution to the Republican
presidential candidate. Instead, it could then only report these
expenditures as coordinated party expenditures pursuant to
2 U.S.C. SS 441a(d)(2) on Schedule F of FEC Form 3X. See generally
Advisory Opinions 1978-89 and 1978-46. This responds to
questions one and two.
Your fifth question does not state whether the proposed

advertisement would refer to all Democratic presidential candidates without identifying any specific candidate or to all Democratic candidates for all Federal offices without identifying any specific candidate or office. If the reference is to all Democratic presidential candidates generally, the characterization of the advertisements and the reporting requirements for the disbursements would remain unchanged from that set forth above. If, however, the reference is to all Democratic candidates generally without identifying (by visual image or audio content) any specific candidate or office, the disbursements would not then be attributable to any candidate or to any campaign for any particular Federal office. Instead, they would be characterized as advertisements promoting the Republican Party over the Democratic Party and to encourage voters to support the Republican Party generally. As such, the disbursements for such advertising would not be reportable as contributions to any specific candidate or as coordinated party expenditures in connection with any specific general election campaign for President, Senator, or Representative. See Advisory Opinions 1978-46 and 1975-87. Such disbursements would be reportable as operating expenditures of the Republican National Committee that are generally related to Federal elections although not on behalf of any clearly identified candidate for Federal office, nor directly attributable to such a candidate. See 11 CFR 104.3(b)(3)(i) and 106.1(c).

This response constitutes an advisory opinion concerning application of the Act, or regulations prescribed by the Commission, to the specific transaction or activities set forth in your request. See 2 U.S.C. SS 437f.

P.S. Commissioners Aikens and Elliott voted against approval of this opinion and will file dissenting opinions at a later date.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
CHRISTOPHER SHAYS and          )
MARTIN MEEHAN,             )
)
          Plaintiffs,      )
)    Civil Action No. 06-CV-1247 (CKK)
      v.               )
)    FEC EXHIBIT TEN
)
FEDERAL ELECTION COMMISSION,   )
)
          Defendant.    )
_____ )


# FEC EXHIBIT ELEVEN

# Federal Election Commission Advisory Opinion Number 1985-14

Back to Federal Election Commission Advisory Opinions Search Page

Federal Election Commission Main Page

May 30, 1985
CERTIFIED MAIL
RETURN RECEIPT REQUESTED
ADVISORY OPINION 1985-14
Robert F. Bauer, Esq.
Perkins, Coie, Stone, Olsen & Williams
1110 Vermont Avenue, N.W.
Washington, D.C. 20005
Dear Mr. Bauer:
This responds to your letters of March 18 and April 9, 1985,
requesting an advisory opinion on behalf of the Democratic
Congressional Campaign Committee ("DCCC"), concerning application
of the Federal Election Campaign Act of 1971, as amended ("the
Act"), and Commission regulations to the allocation and reporting
of expenditures for certain political advertisements.
DCCC is registered with the Commission as a party-related,
multicandidate political committee. You state that DCCC is
"[o]rganized and operated by Democratic members of the House of
Representatives" and "functions broadly as a national party
organization in support of Democratic candidates to the House, as
well as other public offices around the country." You state that
DCCC plans to initiate a program involving criticism of the
records of individual Republican members of the House of
Representatives and of the activities of Republican Members of
Congress as a class. Some of these Republican members may not be
announced candidates for the 1986 elections, while some will have
qualified as candidates pursuant to the Act. See 2 U.S.C.
SS 431(2).
You state that DCCC plans to focus its program in 20-100
selected congressional districts but may expand it to include all
districts represented by Republicans. You add that DCCC's
program will have "the clear purpose of influencing voter
perceptions of these candidates with a view toward weakening

their positions as candidates for re-election in 1986." You
state that some of the proposed communications will refer to the
next or the last election, while other communications will
criticize a congressman's record without any reference to any
election or without any express advocacy language. These
communications will include television and radio broadcasts,
newspaper and other print advertising, and direct mail brochures.
You propose to produce and disseminate these communications
currently and in September 1985.1/

In this context, you have provided the scripts for radio and
television broadcasts and the text for a direct mail brochure:

1/ Your request indicates a schedule of April and September
1985, but you also note that this proposed schedule as to April
will be adjusted depending on the timing of the Commission's
response to your request.

"PLIERS AND TOILET SEATS"(Radio/TV)
Democratic Congressional
Campaign Committee
Background: Loud laughter and applause
Voice No. 1: What's going on? What's so funny?
Voice No. 2: (laughing intermittently): Oh, that's the
President getting a good laugh from the crowd in Washington, the
Republicans in Congress. He says we should take care of the farm
crisis by keeping the grain (begins to burst into uncontrolled
laughter)-- and exporting the farmers!!!
Voice No. 1: (with anger): That's not funny at all; this
farm crisis is real and endangering the very existence of family
farms. People are really suffering.
Voice No. 1: Who cares? The Republicans sure don't. So
just join the crowd and have a good laugh.
Announcer: But it is not a laughing matter. The President
and his Republican supporters in Congress are enjoying this joke
at the expense of the American farmer--but the last laugh is on
you and on your children. And while the Republicans are breaking
every election-year promise they ever made to the American
farmer, they just look on and smile when multi-billion dollar
defense contractors charge you--the taxpayer--$_____for a pair
of pliers and $_____for a toilet seat. That's the real
joke.
(Pause)
Announcer: Let your Republican Congressman know that you

don't think this is funny.
(Or, in some ads: Let the Republicans in Congress know what
you think about their sense of humor.)
[In some scripts, the text closes with "Vote Democratic"]


"Crumbling Foundation" (Radio/TV)
Democratic Congressional
Campaign Committee
Sound: A crumbling, cracking sound of something "giving away."
Announcer (with sound in background): You read the
newspaper nowadays and what do you find: stories about
collapsing banks, people in a panic over the loss of their
savings, federal and state government coming up with rescue plans
and bailouts.
(Sound in background get louder)
Announcer: It all sounds too familiar, like 1932, but it's
not then. It's now. And it's real.
(Sound in background increases in volume)
Announcer: The President and his Republican allies in
Congress are all smiles, they tell us not to worry. But under
their leadership, the budget deficit grows to monstrous
proportions, Wall Street is nervous, the dollar begins to show
signs of weakness.
(Sound comes to fore, very loud and then replaced by a moment of
silence)
Announcer: We've seen all this before: let's make sure it
doesn't happen again. Let your Republican Congressman (or in
some ads, the Republicans in Congress) know that their
irresponsible management of the nation's economy must end--before
it's too late.
[In some scripts, the text closes with "Vote Democratic"]


SAMPLE MAILER
17 x 22/One Fold
Front Face
8 1/2 x 11
Bulk mail
Wave of the future?
[dye-cut; beautiful sunset;
couple walking in ocean
surf/beach]
Inside Fold
17 x 22

SS 441f. Your questions relate to whether these expenditures are attributable to a specific candidate or candidates and, thus, subject to the Act's limitations on those contributions or expenditures made by DCCC.

You state that there may be no Democratic candidate, either announced or qualified under the Act, in the congressional districts selected to receive DCCC's proposed communications. Thus, the Commission assumes that DCCC's expenditures for these communications will not be made in cooperation or consultation with any candidate.2/ Instead, the Commission views your request as limited to the situation where expenditures for these communications are made without any consultation or cooperation, or any request or suggestion of, candidates seeking election to the House of Representatives in the selected districts.

In this context, the Act's limitations at 2 U.S.C. SS 441a(d) become relevant since the Commission has stated that expenditures pursuant to 2 U.S.C. SS 441a(d) may be made without consultation or coordination with any candidate and may be made before the party's general election candidates are nominated.

2/ See 2 U.S.C. SS 441a(a)(7)(B)(i); 11 CFR 104.3(b) and 104.13(a).

See Advisory Opinion 1984-15.3/ This section permits "the national committee of a political party" to make additional expenditures, subject to certain specific dollar limitations, "in connection with the general election campaign of a candidate for" the House of Representatives "who is affiliated with such party." 2 U.S.C. SS 441a(d)(3).4/ A national committee of a political party, as defined at 2 U.S.C. SS 431(14), may designate the party's congressional campaign committee as its agent for purposes of making these expenditures, if such designation occurs before the designee committee makes the expenditures. See 11 CFR 110.7(a)(4); FEC v. Democratic Senatorial Campaign Committee, 454 U.S. 27, 28-29 (1981); First General Counsel's Report, MUR 1460.5/

In Advisory Opinion 1984-15, the Commission considered the application of the limitations of 2 U.S.C. SS 441a(d) to expenditures for political advertising similar to DCCC's proposed communications. There, the Commission concluded that the limitations of SS 441a(d) would apply where the communication both (1) depicted a clearly identified candidate and (2) conveyed an electioneering message. See also Advisory Opinion 1978-46.

Under the Act and regulations, a candidate is clearly identified
if his or her name or likeness appears or if his or her identity
is apparent by unambiguous reference. 2 U.S.C. SS 431(18); 11 CFR
106.1(d). Electioneering messages include statements "designed
to urge the public to elect a certain candidate or party."
United States v. United Auto Workers, 352 U.S. 567, 587 (1957);
see Advisory Opinion 1984-62.


3/ This interpretation is consistent with the reporting
requirements.Expenditures made under SS 441a(d) and 11 CFR 110.7
are reported as expenditures by the committee making them.
11 CFR 104.3(b)(3)(viii). The candidate on whose behalf such
expenditures are made, however, does not report these
expenditures as contributions. 11 CFR 104.3(a)(3)(iii).
4/ Party political committees are incapable of making
independent expenditures. 11 CFR 110.7(a)(5) and (b)(4);
Advisory Opinions 1984-15 and 1980-119; General Counsel's Report,
MUR 273.
5/ For purposes of this advisory opinion, the Commission assumes
that DCCC is or will be the designated agent of the national
committee of the Democratic Party for the purpose of making
expenditures pursuant to 2 U.S.C. SS 441a(d)(3). This expenditure
limitation is in addition to the limitation on contributions by
DCCC pursuant to 2 U.S.C. SS 441a(a)(2)(A). See 11 CFR
110.7(b)(3); H.R. Rep. No. 1057, 94th Cong., 2d Sess. 59 (1976),
reprinted in Legislative History of the Federal Election Campaign
Act Amendments of 1976, 1053 (GPO 1977).
Both the "Pliers and Toilet Seats" and the "Crumbling
Foundation" scripts offer two alternative taglines: one
referring to "your Republican Congressman" and one referring to
"the Republicans in Congress." You further state that some
scripts will also close with a "Vote Democratic" statement. The
Commission concludes that DCCC's expenditures for its proposed
radio and television advertisements (with scripts as set forth in
this opinion) that use the tagline, "the Republicans in
Congress," either with or without the "Vote Democratic" statement
(or other electioneering message), will not be subject to the
Act's limitations. In addition, the Commission concludes that
DCCC's expenditures for its proposed advertisements that use the
tagline, "your Republican Congressman," without the "Vote
Democratic" statement, will also not be subject to the Act's
limitations. Instead DCCC may report these expenditures as
operating expenditures. See 11 CFR 104.3(b). These conclusions

also apply where the advertisements are directed to only selected congressional districts.

With respect to DCCC expenditures for the proposed radio and television advertisements that use the tagline, "your Republican Congressman," together with the "Vote Democratic" statement, the Commission considered alternative responses but on a tie vote was unable to agree whether such expenditures would or would not be subject to the Act's limitations and attributable pursuant to 11 CFR 106.1. See 11 CFR 112.4(a).

With regard to DCCC's proposed sample mailer, the Commission assumes that its references to "Cong. X" indicate that a specific congressman will be identified by name. The Commission also assumes that the mailer's dissemination may include part or all of the district represented by the identified congressman. The Commission concludes that DCCC's expenditures for producing and disseminating the mailer either with or without the "Vote Democratic" statement will be subject to the Act's limitations and attributable pursuant to 11 CFR 106.1.

You have indicated that DCCC's proposed program is for the purpose of influencing the 1986 election process and that these activities will be scheduled for approximately the next month and for September 1985. The Commission emphasizes that this opinion is limited to the timetable you have specified and does not address the implementation of the same or a similar program at some later date.

The Commission notes the foregoing discussion responds to the three questions you presented in your letter dated March 18, 1985.

This response constitutes an advisory opinion concerning application of the Act, or regulations prescribed by the Commission, to the specific transaction or activities set forth in your request. See 2 U.S.C. SS 437f.