IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Christopher Shays,<br><br>                          Plaintiff,<br><br>v.<br><br>United States Federal Election Commission,<br><br>                          Defendant. | Civil Action No. 06-1247 (CKK) |

**PLAINTIFF'S MOTION TO ENFORCE JUDGMENT**

**Introduction**

Plaintiff Christopher Shays hereby moves the Court for an order enforcing its September 12, 2007, judgment remanding to defendant Federal Election Commission regulations dealing with coordinated communications and federal election activity, with instructions to "act promptly" to bring its regulations into compliance with BCRA and the Court's opinion and order "in light of the impending 2008 elections." 508 F. Supp. 2d 10 (D.D.C. 2007); Mem. Op. at 94. Nearly two months have passed since the remand order issued, and the Commission has not lifted a finger to initiate new rulemaking proceedings. Instead, the Commission has merely filed a notice of appeal and issued a press release informing the regulated community that "[a]bsent further instructions from the courts, the Commission's current regulations remain in effect until they are revised or repealed." Anstaett Decl. Ex. 1.[1] By failing to take any action to bring itself

---

[1] References to the "Anstaett Decl." are to the Declaration of David L. Anstaett in Support of Plaintiff's Motion to Enforce Judgment, filed concurrently herewith.

into compliance with the Court's judgment, the Commission has effectively granted itself a stay pending appeal of the remand order—precisely the relief this Court denied the Commission when it first invalidated the rules at issue here in 2004. Given that the 2008 election cycle is well underway, the need for expedition is plain. Accordingly, plaintiff respectfully requests that the Court again order the Commission to immediately take the steps necessary to have new, fully compliant coordination and federal election activity regulations ready for prompt implementation after the expiration of its appeals process.

## The Parties' Meet-and Confer Efforts

Pursuant to Local Civil Rule 7(m), counsel for plaintiff has spoken by telephone and corresponded with counsel for the Commission in a good faith effort to determine whether the Commission opposes the relief sought in this motion and to narrow any areas of disagreement. On October 3, 2007, Plaintiff's counsel asked in writing to meet-and-confer with the Commission regarding how it intended to bring itself into compliance with the Court's September 12, 2007 opinion and order. *See* Anstaett Decl. Ex. 2. Following an October 11 conference call, Plaintiff's counsel again wrote the Commission on October 24, 2007, asking for "a prompt written indication" of its plans including a "specific schedule" for complying with the Court's instructions on remand. Anstaett Decl. Ex. 3. Having received no satisfactory response, Plaintiff's counsel wrote the Commission again on November 2, 2007, informing it that Plaintiff intended to file a motion to enforce given the Commission's failure to take *any* steps to initiate rulemaking proceedings. *See* Anstaett Decl. Ex. 4. Plaintiff indicated that the Commission's inaction violated both this Court's September 12, 2007 order requiring prompt action on remand and the Court's 2004 order describing the Commission's obligation to take the steps necessary to

have new, fully compliant regulations ready for immediate implementation after the expiration of its appeals process.[2]

The Commission ultimately responded on November 5, 2007.  *See* Anstaett Decl. Ex. 5, at 2 (Letter from the Commission's counsel to Plaintiff's counsel).  It described several pending projects unrelated to this case "that must be completed as early as possible given their impact on the ongoing 2008 election campaigns," apparently missing the irony that in BCRA, Congress imposed strict statutory deadlines on the Commission so that the regulations at issue in this litigation would be in place for the *2004* election campaigns.  The Commission refused to give Plaintiff any indication of the schedule it contemplates for conducting the remand proceedings ordered by this Court, contending that it is "unaware of any requirement from the Court that we provide you with such an advance schedule."  *Id*.  Finally, the Commission maintained that it was "unable at this time to indicate whether [it] opposes" the instant motion pursuant to LCvR 7(m) "because [Plaintiff] has not identified" the relief he is seeking.  *Id.* at 3.  As discussed *infra*, this remarkable assertion is the latest manifestation of the "'business-as-usual' tactics and request[s] for delay" that the Commission has resorted to throughout this litigation.  340 F. Supp. 2d at 41.  Given the parties' correspondence and Plaintiff's explicit reliance on this Court's orders requiring the Commission to "act promptly in light of the impending 2008 elections" and with "reasonable expediency" so that it "may have new, fully compliant regulations ready for immediate implementation after the expiration of its appeals process," the Commission cannot plausibly claim ignorance regarding the relief sought by Plaintiff.

---

[2] *See Shays v. FEC*, 340 F. Supp. 2d 39, 51 (D.D.C. 2004) (denying Commission's motion for stay pending appeal).

**Background**

When BCRA became law in March, 2002, Congress "reluctantly" decided it would be impractical to roll out the reforms enacted in that legislation during the 2002 election cycle, but expected that they would be "implemented in a certain and sure fashion for the 2004 elections."[3] To that end, Congress imposed tight deadlines during which the Commission was to promulgate regulations carrying out the statute's various titles. *See* BCRA § 402(c). More than three years ago, this Court invalidated a number of the resulting regulations, denied the Commission's motion for a stay pending appeal and ordered the Commission to proceed with dispatch on remand, noting both the agency's track record of "handsitting, inaction, and needless delay" and the urgency of having BCRA-compliant regulations "in place by the 2006 election cycle."[4] Specifically, the Court ordered the Commission to proceed so that it would have "new, fully compliant regulations ready for *immediate implementation* after the expiration of its appeals process." 340 F. Supp. 2d at 51-52 (emphasis added).

That Order was issued in October, 2004. The Commission did not even *initiate* a new coordination rulemaking until December 2005, two months after its rehearing petition was denied by the Court of Appeals and fourteen months after it had been ordered to proceed expeditiously by this Court. The still-flawed regulations that emerged from that belated rulemaking process were again invalidated by this Court in September 2007, as were additional rules dealing with voter registration and get-out-the-vote activities (so-called "federal election

---

[3] 148 Cong. Rec. S2142 (daily ed. Mar. 20, 2002) (statement of Sen. McCain); *see also id.* (statement of Sen. Feingold).

[4] *See* 337 F. Supp. 2d 28 (D.D.C. Sept. 18, 2004), *motion for stay denied*, 340 F. Supp. 2d 39, 52 (D.D.C. Oct. 19, 2004) ("*Shays I*"), *aff'd*, 414 F.3d 76 (D.C. Cir. Jul. 15, 2005), *reh'g denied*, Oct. 21, 2005 ("*Shays I Appeal*").

activity"). In remanding the illegal coordination and federal election activity rules to the Commission yet again, the Court "assume[d] that, on remand, the Commission will act promptly, in light of the impending 2008 elections." Mem. Op. at 94. Plaintiff brings this motion to enforce because the Commission's response to the Court's September 2007 order has been anything but prompt. Indeed, it has been virtually non-existent.

### Legal Standards

"A motion to enforce judgment is the usual method for requesting a court to interpret its own judgment" and "'should be utilized to compel compliance with a prior decision.'" *Heartland Hosp. v. Thompson*, 328 F. Supp. 2d 8, 11 (D.D.C. 2004) (citations omitted). Such a motion is appropriate "[i]n cases of judicial review of administrative agency decisions where the case is remanded to the agency for explanation of its challenged rule." *Id.*; *cf. UAW v. OSHA*, 37 F.3d 665, 671 (D.C. Cir. 1994) (denying motion to enforce judgment where agency had adequately explained its regulation on remand). A motion to enforce judgment will be granted "when a prevailing plaintiff demonstrates that a defendant has not complied with a judgment entered against it." *Heartland Hosp.*, 328 F. Supp. 2d at 11 (citing *Pub. Citizen, Inc. v. Dep't of Educ.*, 292 F. Supp. 2d 1 (D.D.C. 2003)).

Even where "the Court has determined that it lacks jurisdiction to go beyond identifying the FEC's errors of law in [its] defective regulations," the Commission is nonetheless obligated to "conduct proceedings consistent with the Court's opinion and remand in order to assuage its abrogation of both congressional intent and the public interest." 340 F. Supp. 2d at 41. Under such circumstances, the Commission "is duty-bound to revisit the underpinnings of its regulations with *reasonable expediency*." *Id.* at 41 n.1 (emphasis added); *see also* Mem. Op. at 94 ("The Court assumes that, on remand, the Commission will act promptly, in light of the

impending 2008 elections."). Delay only serves to "further deepen the injury to [the] public interest." 340 F. Supp. 2d at 53.

### Argument

Plaintiff and the Commission "have traversed this well-traveled road before." *Id.* at 52. After this Court struck down the initial versions of the Commission regulations at issue in this case (as well as many others), the Commission sought a stay of the Court's order pending appeal. The Court denied the stay motion, declining "to stamp the Commission's 'business-as-usual' tactics and request for delay with the judicial imprimatur of approval." *Id.* at 41. Instead, the Court ordered the Commission to take the steps necessary to "have new, fully compliant regulations ready for *immediate implementation* after the expiration of its appeals process," noting that during the pendency of its appeal the Commission could "issue draft or proposed rules, solicit comments on its proposed rules from the public, and hold open hearings discussing these comments and the new draft rules." *Id.* at 50-51 (emphasis added). By taking the steps necessary to have compliant rules ready for immediate implementation after appeal, the Commission would "mitigate against the injury to both Plaintiffs and [the] public" without running the risk of possibly mooting its appeal through the actual enactment and enforcement of new regulations. *Id.* at 53. Likewise, the Court found "meritless" the Commission's argument that it would be irreparably harmed by expending agency resources on new rulemaking proceedings when its existing rules might yet be vindicated by the Court of Appeals. *Id.* at 48-49. ("The mere fact that a commission spends its initial resources acting as a super-legislature

disregarding congressional intent does not insulate it from a later court order directing the reconsideration of its faulty regulations.").[5]

Rather than again moving the Court for a stay, this time the Commission has effectively granted itself precisely that relief by failing to establish any timetable—much less an expedited one—for correcting its illegal regulations. But as this Court held in *Shays I*, the Commission does not have the option of simply proceeding at its customary languid pace. As this Court observed, an agency's obligation on remand "is much like a district court's duty to issue a new ruling upon reversal by an appellate court" in that the agency "is duty-bound to revisit the underpinnings of its regulations with *reasonable expediency*." *Id.* at 41 n.1 (emphasis added). That duty is particularly pressing where, as here, the 2008 election cycle is well underway and significant evidence in the administrative record demonstrates that the Commission's current flawed coordination rules inexplicably authorize substantial coordinated advertising that poses a genuine "risk of corruption," but which is subject to "virtually no regulation at all." Mem. Op. at 46-55. As the D.C. Circuit put it in the *Shays I Appeal*, the Commission "has in effect allowed a coordinated communication free-for-all for much of each election cycle." 414 F.3d at 100. Yet the Commission's failure to act in the face of repeated judicial rebukes indicates that it is content to leave that state of affairs in place for a *third* election cycle following BCRA's effective date.

As for the Commission's illegal federal election activity rules, they leave entirely unregulated a large "gray area" of conduct that "Congress could constitutionally regulate, and indeed intended to regulate in BCRA." Mem. Op. at 84-85. But even though the Commission's

---

[5] The Court also found that both the balance of harms between the parties and the public interest weighed against granting a stay, such that the Commission "failed to meet *any* of the four factors necessary to establish the 'extraordinary remedy' of a judicial stay." 340 F. Supp. 2d at 52, 54 (emphasis in original).

invalidated regulations "create 'a significant risk of actual and apparent corruption,'" Mem. Op. at 86 (quoting *McConnell v. FEC*, 540 U.S. 93, 168 (2003)), it has taken no steps whatsoever to revise them.

In 2002 Congress imposed tight deadlines on the Commission to promulgate regulations implementing BCRA's provisions. The Commission was given 90 days to promulgate regulations implementing the statute's Title I soft money provisions (including the federal election activity regulations at issue here), and a 270-day deadline for all other provisions. *See* BCRA § 402(c). Under these circumstances—some five years after BCRA became law—the Commission cannot simply stand by idly and do nothing to correct its flawed regulations as the peak of the 2008 election cycle approaches. *Cf. Sierra Club v. Thomas*, 828 F.2d 783, 797 (D.C. Cir. 1987) (in assessing allegations of agency delay, courts "look to see whether Congress has imposed any applicable deadlines or otherwise exhorted swift deliberation concerning the matter . . . or whether the statutory scheme implicitly contemplates timely final action"); *Pub. Citizen Health Research Group v. FDA*, 740 F.2d 21, 34 (D.C. Cir. 1984) ("[T]he reasonableness of the delay must be judged in the context of the statute which authorizes the agency's action.") (internal quotations and citation omitted). Accordingly, as in *Shays I*, the Court should not countenance the Commission's continued delay, which threatens "to thwart the very essence of the wide-sweeping system of reform enacted by Congress for another interminable period of years." 340 F. Supp. 2d at 52.

**Conclusion**

For the reasons set forth above and in plaintiff's earlier submissions, the Court should order the Commission to promptly take the steps necessary to have new, fully compliant coordination and federal election activity regulations ready for immediate implementation after the expiration of its appeals process.

Dated this 7th day of November, 2007.

Respectfully submitted,

/s/ Michelle M. Umberger

| | |
|---|---|
| Roger M. Witten (Bar No. 163261)<br>WILMER CUTLER PICKERING<br>   HALE AND DORR LLP<br>399 Park Avenue<br>New York, New York  10022<br>(212) 230-8800 | Charles G. Curtis, Jr. (*pro hac vice*)<br>Michelle M. Umberger (Bar No. 480620)<br>David L. Anstaett (*pro hac vice*)<br>Lissa R. Koop (*pro hac vice*)<br>HELLER EHRMAN LLP<br>One East Main Street, Suite 201<br>Madison, Wisconsin  53703<br>(608) 663-7460 |
| Randolph D. Moss (Bar No. 417749)<br>WILMER CUTLER PICKERING<br>   HALE AND DORR LLP<br>1875 Pennsylvania Avenue, N.W.<br>Washington, D.C.  20006<br>(202) 663-6000 | Fred Wertheimer (Bar No. 154211)<br>DEMOCRACY 21<br>1825 Eye Street, N.W., Suite 400<br>Washington, D.C.  20006<br>(202) 429-2008 |
| Donald J. Simon (Bar No. 256388)<br>SONOSKY, CHAMBERS, SACHSE,<br>   ENDRESON & PERRY LLP<br>1425 K Street, N.W., Suite 600<br>Washington, D.C.  20005<br>(202) 682-0240 | *Attorneys for Plaintiff Christopher Shays* |