UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CHRISTOPHER SHAYS, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 06-CV-1247 (CKK) |
| v. | ) ) | |
| FEDERAL ELECTION COMMISSION, | ) ) | RESPONSE TO MOTION TO ENFORCE JUDGMENT |
| Defendant. | ) ) ) | |

**DEFENDANT FEDERAL ELECTION COMMISSION'S RESPONSE TO
PLAINTIFF'S MOTION TO ENFORCE JUDGMENT**

After failing in his attempt to have the Court actively supervise the Federal Election Commission's actions on remand in this case, plaintiff has now filed a motion — three weeks and one day after the Commission appealed the Court's decision in this case — to "enforce" the judgment, claiming that the Commission is already in violation of the Court's remand order. Plaintiff's motion is unnecessary because the Commission does not dispute the need for it to make preparations for new regulations during the pendency of the appeal. At the same time, the motion is improper to the extent that it suggests the Commission has violated the Court's order or implies that the Court should order further relief, such as dictating a schedule to the Commission. The Court has already rejected plaintiff's request that the Court retain jurisdiction. The Court concluded that its "inquiry [wa]s at an end" under "settled principles of administrative law" and the case should simply be remanded. *Shays v. FEC* ("*Shays III*"), 508 F. Supp. 2d 10, 70 (D.D.C. Sept. 12, 2007). Nothing has transpired that requires a different result now.

Although the Commission is presently engaged in three major rulemakings necessitated by either an act of Congress or a Supreme Court decision, the Commission indicated to plaintiff during the meet and confer that the Commission will nevertheless "take procedural steps leading towards the drafting of proposed regulations" while the appeal is pending. Letter from Kolker to Curtis & Simon at 1, Nov. 5, 2007 [Docket #40-8 at 2] (quoting *Shays v. FEC* ("*Shays I Stay Opin.*"), 340 F. Supp. 2d 39, 54 (D.D.C 2004)).

## BACKGROUND

In the *Shays I* litigation, plaintiff Christopher Shays, a Member of the United States House of Representatives, sought review of a number of regulations promulgated by the Federal Election Commission ("Commission" or "FEC") to implement the Bipartisan Campaign Reform Act of 2002 ("BCRA"), Pub. L. No. 107-155.[1] *See Shays v. FEC* ("*Shays I*"), 337 F. Supp. 2d 28 (D.D.C. 2004). This Court remanded the case to the Commission for further proceedings regarding nineteen regulations but denied plaintiff's request that the Commission be required to begin new rulemaking within fifteen days of the Court's order, file with the Court periodic reports regarding the activities on remand, and remain under the jurisdiction of the Court. *Id.* at 129-30. The Court found that there was no "basis for granting Plaintiffs' request for relief" and that it was "up to the agency to determine how to proceed next — not for the Court to decide or monitor." *Id.* at 130 (internal quotation omitted).

The Commission voted to appeal the Court's decision with respect to five of the regulations at issue and moved for a stay pending appeal. The Court denied the motion to stay but did not require the Commission to promulgate final regulations during the appeal because of

---

[1]    Former U.S. Representative Martin Meehan was also a plaintiff in the *Shays I* litigation and, until recently, in the instant case. Because he has resigned from Congress, this action is now brought solely by Congressman Shays. *Shays III*, 508 F. Supp. 2d at 18 n.2.

the potential that the appeal would be mooted. *Shays I Stay Opin.*, 340 F. Supp. 2d at 49-51. Instead, the Court held that while the appeal was pending "the Commission should take procedural steps leading towards the drafting of proposed regulations" with "'reasonable efficiency.'" *Id.* at 54.  The actions the Commission could choose to take, the Court noted, included "issu[ing] drafts of proposed rules, solicit[ing] comments on its proposed rules from the public, and hold[ing] open hearings discussing these comments and the new draft rules . . ." *Id.* at 51.

While the appeal was pending, the Commission took significant steps to provide new explanations or revise the regulations that had been remanded, handling the nineteen regulations in nine different rulemakings.  By the time the Commission's petition for rehearing was denied on October 21, 2005, the Commission had issued notices of proposed rulemaking for eight of the nine rulemakings, had received public comments on seven of the nine rulemakings, and had held hearings (or found that a hearing was not necessary) for seven of the nine rulemakings.  *See generally http://www.fec.gov/pages/bcra/rulemakings/rulemakings_bcra.shtml*.  While the Commission's appeal was pending, the Commission thus "took significant steps in the interim" and prepared for the possibility of new regulations "with reasonable expediency." *Shays I Stay Opin.*, 340 F. Supp. 2d at 50-51.

The D.C. Circuit affirmed this Court's judgment in *Shays I*, providing additional and, in some cases, different guidance for the remand to the Commission. *Shays v. FEC*, 414 F.3d 76, 82, 105 (D.C. Cir. 2005).  The Commission worked diligently both while the appeal was pending and after the decision came down; it issued the nine notices of proposed rulemaking in a span of eleven months — between February 2, 2005, and December 14, 2005 — and issued nine sets of

3

revised explanations or regulations in a span of less than a year — from June 30, 2005 to June 8, 2006. *Id.*

In July 2006 the Plaintiff brought suit challenging five of the new Commission regulations, those governing "coordinated communications" (11 C.F.R. §§ 109.21(c) & (d)), "Federal election activity" (11 C.F.R. §§ 100.24(a)(2) & (a)(3)), and the solicitations of nonfederal funds by federal officeholders and candidates at state party fundraising events (11 C.F.R. § 300.64(b)). On September 12, 2007, this Court remanded to the Commission four of the challenged regulations governing coordinated communications and federal election activity for further action consistent with the Court's opinion: the coordinated communication content regulation (11 C.F.R. § 109.21(c)); the firewall and common vendor regulation (11 C.F.R. § 109.21(d)); the definition of "voter registration activity (11 C.F.R. § 100.24(a)(2)); and the definition of "get-out-the-vote activity" (11 C.F.R. § 100.24(a)(3)). Explaining that "when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end [and] the case must be remanded to the agency for further action consistent with the correct legal standards," the Court once again rejected plaintiff's request that it (1) enjoin the operation of the relevant regulations, (2) order the Commission to commence expedited rulemaking proceedings and adopt interim regulations to apply during the pendency of the rulemaking proceeding, and (3) retain jurisdiction over the case. *Shays III*, 508 F. Supp. 2d at 70 (citing to *Shays I*). The Court also noted its assumption that, "on remand, the Commission will act promptly, in light of the impending 2008 elections." *Id.* On October 16, 2007, a little more that one month after this Court's September 12 remand, and almost a month before the deadline to do so, the Commission filed its notice of appeal.

4

Following an October 11, 2007, teleconference meet and confer, plaintiff's counsel wrote to the Commission on October 24, 2007, asking for a "specific schedule" for the Commission's proceedings on remand but failing to notify the Commission of the relief plaintiff planned to seek in a motion under Local Rule 7(m).  Letter from Curtis & Simon to Kolker, Oct. 24, 2007 [Docket #40-5].  The Commission responded on November 5, 2007, assuring plaintiff's counsel that the Commission will "take procedural steps leading towards the drafting of proposed regulations during the pendency of its appeal," just as the Commission successfully handled preparations for possible new regulations during the *Shays I* appeal.  The Commission also described to plaintiff's counsel the Commission's current docket, including, *inter alia*, three major expedited rulemaking proceedings necessitated by acts of Congress or a Supreme Court decision.  Plaintiff nevertheless filed the pending motion on November 7, 2007.

The Commission has sought an expedited schedule for the appeal in this matter, just as it did in *Shays I*.  On November 20, 2007, the parties filed a joint motion to expedite consideration of the cross-appeals, complete with a stipulated briefing schedule.  *See Shays v. FEC*, No. 07-5360, *appeal docketed* (D.C. Cir. Oct. 31, 2007).

**ARGUMENT**

I. **THE COMMISSION HAS NOT VIOLATED THE COURT'S JUDGMENT, AND PLAINTIFF'S "MOTION TO ENFORCE" IS UNNECESSARY**

Plaintiff implies in his motion that the Commission has already violated the Court's remand order.  Because only two months have passed since the Court's decision, that could only be true if the Court had issued an order compelling specific Commission action by a date shortly after the Court's decision.  The Court rejected precisely such a remedy in *Shays I* after plaintiff requested that the Commission be ordered to commence rulemaking proceedings within fifteen days.  337 F. Supp. 2d at 130.  Similarly, the Court denied plaintiff's request in this case that the

5

Commission be required to adopt interim regulations and commence expedited rulemaking proceedings. 508 F. Supp. 2d at 70.

The lack of a stay pending appeal and the need for the Commission to prepare for the implementation of new regulations are undisputed. The Court remanded the case to the Commission with the expectation that the Commission will act "promptly." *Shays III*, 508 F. Supp. 2d at 71. Now that the parties have filed cross-appeals, the parties agree that the principles announced in this Court's *Shays I* stay opinion are applicable.[2] The Commission thus informed plaintiff's counsel that the Commission will "'take procedural steps leading towards the drafting of proposed regulations' during the pendency of its appeal . . . ." Letter from Kolker to Curtis & Simon at 1, Nov. 5, 2007 [Docket #40-8 at 2] (quoting *Shays I Stay Opin.*, 340 F. Supp. 2d at 54). When this Court denied the Commission's motion for a stay pending appeal in *Shays I*, it stressed that the Commission need only "take significant steps in the interim before the Court of Appeals issues its ruling on this matter" but need not issue final rules, so as not to moot its appeal. *Id*.

As it did during the *Shays I* appeal, the Commission will prepare for possible new regulations during the appeal process. The Commission's competing priorities have, however, precluded the kind of immediate action to revise the regulations or explanations sought by plaintiff. Those competing priorities include three major rulemakings, two necessitated by the Honest Leadership and Open Government Act of 2007 ("HLOGA"), Pub. L. 110-81, 121 Stat. 735, and another by *FEC v. Wisconsin Right to Life, Inc. ("WRTL")*, 127 S. Ct. 2652 (2007).

---

[2]   Plaintiff's proposed order would require the Commission "to promptly take the steps necessary to have new fully compliant coordination and federal election activity regulations ready for immediate implementation after the expiration of its appeals process." Although the Court imposed no such requirement in the judgment in this case that plaintiff is supposedly moving to "enforce," the Commission does not dispute that, consistent with *Shays I*, it must take significant steps during the appeal to prepare for possible new regulations.

6

These rulemakings need to be handled expeditiously in light of their impact on the ongoing 2008 election campaigns.

On September 14, 2007, the President signed HLOGA, which included two significant amendments to the Federal Election Campaign Act ("FECA"), 2 U.S.C. §§ 431-455. The first provision of HLOGA that amends the FECA and is currently the subject of an important Commission rulemaking governs the rates and timing of payment for non-commercial campaign travel on aircraft. *See* Candidate Travel, 72 Fed. Reg. 59,953 (Oct. 23, 2007) (to be codified at 11 C.F.R. pts. 100, 113, 9004, 9034). Section 601 of the new law restricts, and in some cases prohibits, the expenditure of campaign funds by candidates for federal office for non-commercial travel aboard aircraft. The new law became effective the day it was signed. § 601(b), 121 Stat. at 775. The Commission adopted a Notice of Proposed Rulemaking on October 18, 2007, which, *inter alia*, proposes to add a new provision to its regulations governing the expenditures of campaign funds by candidates for federal office and their authorized political committees. The Commission received comments on the proposed rules and intends to vote on final rules implementing the new travel restrictions before the end of December. *See* Press Release, FEC Issues Notice of Proposed Rulemaking on Candidate Travel, Definition of Leadership PAC, Oct. 18, 2007, *http://www.fec.gov/press/press2007/20071018travel.shtml*.

The other provision of HLOGA that amends the FECA is also the subject of a Commission rulemaking, and it requires the disclosure of information regarding certain bundled contributions. Section 204 of HLOGA, 121 Stat. at 744-46, requires certain political committees to disclose information about each lobbyist and registrant, and political committees established by them, that forwards or is credited with raising two or more bundled contributions aggregating in excess of $15,000 during a specific period of time. *See* Reporting Contributions Bundled by

Lobbyists, Registrants and the PACs of Lobbyists and Registrants, 72 Fed. Reg. 62,600 (November 6, 2007) (to be codified at 11 C.F.R. pts. 100, 104).  Section 204(a)(i)(5) requires the Commission to finalize its regulations implementing this provision within six months of HLOGA's enactment.  121 Stat. at 745.  The Commission adopted a Notice of Proposed Rulemaking on October 30, 2007, which, *inter alia*, proposes to amend the Commission's regulations governing reports by political committees and other persons.  Reporting Contributions Bundled by Lobbyists, 72 Fed. Reg. 62,600.  The public comment period on the proposed rules is open until November 30, and the Commission intends to hold a public hearing in time to meet its statutory deadline for issuing final rules.  *Id*.

      The third major rulemaking in which the Commission is currently engaged was necessitated by the Supreme Court's decision in *WRTL*.  The Supreme Court held that FECA's prohibition on the use of corporate and union treasury funds for "electioneering communications" is unconstitutional as applied to certain communications.  *Id*.  The Commission adopted a Notice of Proposed Rulemaking on August 23, 2007, seeking public comment on the effect of the Court's decision on the Commission's rules governing corporate and union funding of electioneering communications, the definition of electioneering communication, and the reporting of electioneering communications.  *See* Electioneering Communications, 72 Fed. Reg. 50,261 (Aug. 31, 2007) (to be codified at 11 C.F.R. pts. 100, 104, 114).  The Commission received 25 comments and held two days of hearings on the proposed rules on October 17 and 18.  The comments received by the Commission, as well as the testimony taken during the two days of hearings, evinced divergent views on the thorny First Amendment questions that must be resolved as a result of the *WRTL* decision.  The Commission intends to promulgate a rule and adopt an Explanation & Justification interpreting the Court's decision by mid-December

8

in an effort to have clear rules in place during as much of the ongoing 2008 election cycle as possible. Press Release, Commission to Conduct Rulemaking Following Supreme Court Ruling, July 19, 2007, *http://www.fec.gov/press/press2007/20070719rule.shtml.*[3]

Contrary to plaintiff's suggestion, the Commission has given no indication that it will take no action on the remanded regulations during the appeal, and its expedited work on the regulations described above does not constitute a violation of the Court's order in this case. Although the Commission is not prepared to announce its future rulemaking schedule at this time given the crush of rulemaking and other pressing work that is under way, the Commission expects to announce its specific rulemaking priorities to the public in January 2008. The new year is now less than six weeks away.

Although plaintiff suggests (Motion 4-5) that the Commission's response to this Court's 2004 remand order was inadequate, the record demonstrates that the Commission in fact undertook "the procedural steps leading towards the drafting of the proposed regulations" suggested by the Court while the matter was before the D.C. Circuit. *Shays I Stay Opin.*, 340 F. Supp. 2d at 51. When the Commission's petition for rehearing was denied on October 21, 2005, the Commission had issued notices of proposed rulemaking for eight of the nine rulemakings that followed on remand, had received public comments on seven of the nine rulemakings, and had held hearings (or found that a hearing was not necessary) for seven of the nine rulemakings. *See generally http://www.fec.gov/pages/bcra/rulemakings /rulemakings_bcra.shtml*. By June of 2006, the Commission had issued final rules revising all of the remanded regulations or issuing new explanations. *Id*. In sum, while the Commission's

---

[3]   The Commission is also presently attempting to complete a rulemaking begun earlier this year on jointly financed party/candidate "hybrid" ads, on which the major parties spent more than $50 million in the last presidential election. *See* Hybrid Communications, 72 Fed. Reg. 26,569 (May 10, 2007) (to be codified at 11 C.F.R. pt. 106).

9

appeal was pending, the Commission "took significant steps in the interim" and prepared for the possibility of new regulations "with reasonable expediency." *Id*. at 50-51. Particularly in light of that past compliance, there is no reason to accept plaintiff's speculation, just two months after the Court's current remand, that the Commission will not take the procedural steps necessary to prepare for the possibility of revised regulations after the expiration of the appeals process.

## II. THE COURT SHOULD CONTINUE TO REJECT PLAINTIFF'S ATTEMPT TO REORDER THE COMMISSION'S PRIORITIES

The true import of plaintiff's motion appears to be not to enforce the Court's actual order, but rather to dictate the Commission's priorities to make the actions taken on remand the agency's top priority. As the D.C. Circuit has explained, however, "[u]nder settled principles of administrative law, when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action, consistent with the correct legal standards." *County of Los Angeles v. Shalala*, 192 F.3d 1005, 1011 (D.C. Cir. 1999) (quoting *PPG Indus., Inc. v. United States*, 52 F.3d 363, 365 (D.C. Cir. 1995)). Accordingly, as this Court has explained, "it is up to the agency to determine how to proceed next — not for the Court to decide or monitor." *Hawaii Longline Ass'n v. Nat'l Marine Fisheries Serv.*, 281 F. Supp. 2d 1, 38 (D.D.C. 2003). The Court has made this clear to plaintiff twice now, rejecting similar requests for the Court to dictate the precise timing of the Commission's actions and to oversee those actions aggressively. *Shays I*, 337 F. Supp. 2d at 130; *Shays III*, 508 F. Supp. 2d at 70. We have indeed "'traversed this well-traveled road before,'" Mot. at 6 (quoting *Shays I Stay Opin.*, 340 F. Supp. 2d at 52), but it is a different road than the one to which plaintiff refers.[4]

---

[4] Plaintiff's motion in effect seeks reconsideration of the Court's remedy holding. Plaintiff has not, however, made any attempt to meet the threshold showing for reconsideration. *See*

Sound policy considerations animate the reluctance of courts to dictate remand schedules to agencies generally and, in particular, support the Court's reluctance in this case. Courts generally do not impose particular timelines on agencies in recognition of the fact that doing so forces agencies to reorder their priorities. As the D.C. Circuit has cautioned, "a court is in general ill-suited to review the order in which an agency conducts its business [and] we are properly hesitant to upset an agency's priorities by ordering it to expedite one specific action, and thus to give it precedence over others." *Sierra Club v. Thomas*, 828 F.2d 783, 797 (D.C. Cir. 1987). The reluctance stems from well-established concerns about separation of powers and an agency's unique understanding of its own capabilities and priorities:

> This division between the administrative and judicial provinces preserves a sphere of discretion for the agency, which alone is cognizant of the many demands on it, its limited resources, and the most effective structuring and timing of proceedings to resolve those competing demands. An agency is allowed to be master of its own house, lest effective agency decisionmaking not occur in any proceeding . . .

*Natural Resources Defense Council, Inc. v. SEC*, 606 F.2d 1031, 1055-56 (D.C. Cir. 1979); *see also In re Barr Laboratories, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991) ("[W]e have no basis for reordering agency priorities. The agency is in a unique — and authoritative — position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way.").

Plaintiff's request for judicial oversight of the Commission's schedule would have precisely the negative effect against which the D.C. Circuit has warned. The Commission has

---

*Emory v. Sec'y of the Navy*, 819 F.2d 291, 293 (D.C. Cir. 1987) (motions to reconsider treated as motions to alter or amend a judgment under Rule 59(e)); *Ciralsky v. Cent. Intelligence Agency*, 355 F.3d 661, 671 (D.C. Cir. 2004) (motions under Rule 59(e) granted only in the event of "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice"). Plaintiff would in any event be unable to make such a showing for there is no reason for the Court to reconsider its rejection of his requested remedies.

many duties and obligations under the Act, including not only the promulgation of regulations — — like those currently required by Acts of Congress and a Supreme Court decision, *see supra* pp. 7-9 — but also enforcement investigations (*see* 2 U.S.C. § 437g), advisory opinions (*see* 2 U.S.C. § 437f), expedited publication of required federal campaign finance reports from all candidates and political committees (*see* 2 U.S.C. § 438(a)(4), 438a), and auditing political committees (*see* 2 U.S.C. § 438(b)).  Further expediting revision of the regulations on appeal in this matter would cause the Commission to reorder its priorities at the expense of the other pending obligations.  "Given that Congress provides [the Commission] with finite resources, the agency cannot avoid setting priorities among them."  *Sierra Club*, 828 F.2d at 798.

The Commission does not dispute that the Court has ordered it to "act promptly, in light of the impending 2008 elections."  But in light of the cross-appeals and the Commission's other expedited responsibilities, including congressionally mandated rulemakings that must be completed in advance of the appellate resolution of this case, reasonable expedience may require the Commission to prepare for the end of the appeal somewhat differently than plaintiff would apparently prefer.  There is, however, no basis for plaintiff's claim that the Commission has somehow violated the Court's judgment or for plaintiff's request for additional relief.

## CONCLUSION

For the foregoing reasons, the Court should deny plaintiff's motion.

Respectfully submitted,

/s/Thomasenia P. Duncan
Thomasenia P. Duncan
General Counsel

                    David Kolker
                    Associate General Counsel

                    Kevin Deeley
                    Acting Assistant General Counsel

                    Vivien Clair
                    Gregory J. Mueller
                    Steve N. Hajjar
                    Attorneys


                    FOR THE DEFENDANT
                    FEDERAL ELECTION COMMISSION
                    999 E Street, NW
                    Washington, D.C. 20463
                    (202) 694-1650
November 21, 2007          (202) 219-0260 (fax)